UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOES 16, 29, 79, 82, AND 84 individually and on behalf of all similarly situated,<br><br>         Class Plaintiffs,<br><br>   v.<br><br>COLUMBIA UNIVERSITY; THE NEW YORK PRESBYTERIAN HOSPITAL; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; ROBERT HADDEN, an individual; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA CORNELL NETWORK PHYSICIANS, INC.; SLOANE HOSPITAL FOR WOMEN;<br>        Defendants. | Case No.:<br>**CLASS ACTION**<br>**COMPLAINT FOR:**<br>**1. Title IX 20 U.S.C. § 1681**<br>**2. COMMITTING AND ENABLING GENDER VIOLENCE**<br>**3. COMMITTING AND ENABLING SEXUAL HARASSMENT, PREDATORY GROOMING, SEXUAL EXPLOITATION AND SEXUAL ABUSE**<br>**4. COMMITTING AND ENABLING CRIMINAL and CIVIL SEXUAL BATTERY**<br>**5. VIOLATION OF NY CPL §§ 130.00-130.96 SEX OFFENSES AND VIOLATION OF NY CPLR § 214-g, CHILD VICTIM ACT**<br>**6. COMMITTING AND ENABLING CRIMINAL and CIVIL SEXUAL ASSAULT**<br>**7. UNFAIR BUSINESS PRACTICES**<br>**8. COMMITTING AND ENABLING NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>**9. COMMITTING AND ENABLING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**10. CONSTRUCTIVE FRAUD**<br>**11. COMMITTING AND ENABLING SEXUAL ASSAULT AND/OR RAPE OF PLAINTIFFS**<br>**12. NEGLIGENT SUPERVISION**<br>**13. VIOLATION OF MANDATORY REPORTING LAWS**<br>**14. NEGLIGENT HIRING, RETENTION and RATIFICATION**<br>**15. FAILURE TO WARN, TRAIN or EDUCATE**<br>**16. GROSS NEGLIGENCE, WANTON, WILLFUL and RECKLESS CONDUCT**<br>**17. INVASION OF PRIVACY**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Jane Does 16, 29, 79, 82, and 84 ("Plaintiffs") are victims of a sexual battery. These women therefore are entitled to protect their respective identities in this public filing by not disclosing their names. Plaintiffs, individually and on behalf of all others similarly situated, make the following allegations based upon information and belief, except as to those allegations specifically pertaining to each individual Plaintiff and their counsel, which are based on personal knowledge. Plaintiffs bring this action for restitution and monetary damages against defendants, Columbia University, The New York Presbyterian Hospital, Columbia Presbyterian Medical Center, Columbia University Medical Center, Columbia-Presbyterian Medical Center, East Side Associates, Robert Hadden, The Trustees of Columbia University in the City of New York, Columbia University College of Physicians and Surgeons, Presbyterian Hospital Physician Services Organization, Inc., Columbia Cornell Network Physicians, Inc., Sloane Hospital for Women (collectively, "COLUMBIA" or "COLUMBIA defendants"), and Robert Hadden, and Does 1 through 100 (collectively, "Defendants"), demanding a trial by jury.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are thousands of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and Defendants are citizens of a state different from that of Plaintiffs and members of the Class.

2.      Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

## GENERAL ALLEGATIONS AS TO THE PARTIES

3.      This action seeks to vindicate the rights of women who were sexually exploited, abused, harassed and molested at the hands of serial sexual predator defendant ROBERT HADDEN (hereinafter referred to as "HADDEN"), while they were patients at defendant COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (hereinafter referred to as "CORP. ENTITIES"), under the supervision management and/or control of the THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY (hereinafter referred to as "TRUSTEES" and/or "CORP. ENTITIES"), and their medical facilities, hospitals, offices and/or clinics.

4.      While attending defendant "CORP. ENTITIES" medical facilities, Plaintiffs were forced to repeatedly seek medical treatment from defendant-sexual predator ROBERT HADDEN, due to the fact that "CORP. ENTITIES", their agents, servants, employees, chaperones, other doctors, and supervisors, repeatedly and actively concealed, conspired, and enabled, the sexual exploitation and abuse being committed by defendant ROBERT HADDEN. ROBERT HADDEN used this position of trust and authority to sexually exploit and serially sexually abuse Plaintiffs on countless occasions by engaging in deviant sexual acts that included, but are not limited to: grooming, sexually exploiting, fondling, ogling, penetrating and groping Plaintiffs' bodies and genitalia for

3

no medical purpose; forcing Plaintiffs to strip naked; groping and/or fondling Plaintiffs' breasts; digitally penetrating Plaintiffs' vaginas; digitally penetrating Plaintiffs' anuses, grooming Plaintiffs for further exploitation and sexual abuse; making sexually inappropriate remarks and deviant statements to plaintiffs in an effort to lower their boundaries and break-down their defenses; performing inappropriate and sexually abusive "mole checks"; spreading open Plaintiffs' anal crevices so he could leer at their bodies and anuses for his own deviant sexual gratification; increasing the level of inappropriate statements and sexual exploitation and abuse of Plaintiffs over time; evading, manipulating and/or intimidating medical chaperones and/or university personnel; performing serial vaginal examinations for no medical purpose, performing serial Pap smears as an excuse to access and penetrate their vaginas for his own deviant sexual gratification and pleasure, sexually exploiting female patients to satisfy his own prurient and deviant sexual desires, and surreptitiously licking countless patients' vaginas during the performance of phony, and medically unnecessary, vaginal examinations and Pap smears.

5.      Despite the fact that medical chaperones, nurses, supervisors, administrators, doctors and other hospital personnel were aware of the sexual exploitation and abuse being perpetrated by ROBERT HADDEN, dating back to at least the 1990's, Defendant "CORP. ENTITIES", their TRUSTEES, their medical facilities, offices, clinics, and their agents, servants, and/or employees, actively and deliberately - and inexplicably - concealed ROBERT HADDEN's sexual abuse for decades, and continued to grant ROBERT HADDEN unfettered access to vulnerable, unsuspecting, pregnant and non-pregnant female patients at COLUMBIA UNIVERSITY MEDICAL CENTER and their related entities, all in a deceitful and disdainful attempt to protect Defendants COLUMBIA UNIVERSITY, its TRUSTEES, and affiliated and related CORP. ENTITIES' reputation, their status amongst other Ivy League institutions, their status amongst

other universities and hospitals in New York and nationally, and their own corporate and financial interests.

### ALLEGATIONS AS TO MINOR PLAINTIFFS
### (REPRESENTATIVE MINOR PLAINTIFFS #16, #29)

6.      This case is being filed anonymously because of the extremely sensitive nature of the conduct involved and damages suffered by minor and adult Plaintiffs and others similarly situated.

### JANE DOE #16

7.      Plaintiff JANE DOE #16 was born in 1994, and currently resides in the State of California. JANE DOE #16 was a gynecology patient of defendants (and/or to be named Defendants) including: COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #16 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

8.      Plaintiff JANE DOE #16 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities for what was supposed to be gynecologic care and treatment between approximately 2009 and 2012. At the time of the visit JANE DOE #16 was a full-time high-school student and a minor under the laws of the State of New York. Further, ROBERT HADDEN was the physician who had

delivered JANE DOE #16 a decade earlier. ROBERT HADDEN was well aware of this fact and used this relationship with both the patient, and her mother, as leverage in order to carry out his scheme of sexual exploitation and sexual abuse of the minor child, JANE DOE #16.

9.       Beginning with JANE DOE #16's initial office visit as a gynecology patient, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse. During the visits, ROBERT HADDEN assailed JANE DOE #16 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her mother, appearance, body, sexual history, and sexual activity. Questioning JANE DOE #16 about her virginity and eliciting intimate and inappropriate details about how close she has gotten to experiencing sexual intercourse with a male. ROBERT HADDEN's approach to grooming JANE DOE #16 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive.

10.      While ROBERT HADDEN was actively and verbally breaking down JANE DOE #16's boundaries, he forced JANE DOE #16 to answer questions about herself, her school, and her mother; and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her unclothed body, breasts and vagina. While ogling and groping JANE DOE #16's unclothed body, ROBERT HADDEN continued to engage in idle chatter about wholly medically irrelevant information.

11.      A Chaperone was present in the room at the beginning of the visit and during the verbal and physical exploitation and assaults, and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #16. During this initial visit, ROBERT HADDEN directed JANE DOE #16 to remove all of her clothes and "get on all fours" on the table. While

being posed naked and on all fours, ROBERT HADDEN proceeded to perform a prolonged, medically-inappropriate, unnecessary and unwarranted breast examination, prolonged, medically-inappropriate, unnecessary, and unwarranted vaginal examination, and a prolonged and medically-inappropriate exploration of a rash around JANE DOE #16's pubic area, all the while as JANE DOE #16 was being posed on her hands and knees naked before ROBERT HADDEN, who then proceeded to rub both of his ungloved hands up and down her body, groped her body, spread her buttocks, examined the crevices of the most intimate parts of her body, and spread her vagina as he leered into all of her private areas. All the while, ROBERT HADDEN would continue to engage in idle chatter about JANE DOE #16, her body, and her lack of sexual activity, in furtherance of ROBERT HADDEN's never-ending pedophiliac-grooming and sexual exploitation of this minor-female patient. During the serial, prolonged, medically-inappropriate unnecessary and unwarranted vaginal examinations that ROBERT HADDEN performed at both visits, ROBERT HADDEN would penetrate JANE DOE #16 by inserting his fingers into JANE DOE #16's vagina. All of these so-called "examinations" were done in a deviant and sexual manner solely for ROBERT HADDEN's own prurient, deviant, and lecherous sexual gratification.

12.     During the second visit, ROBERT HADDEN learned that JANE DOE #16 had just recently lost her virginity. At the time, JANE DOE #16 had only one-boyfriend/partner, and very little experience with sex or sexual activity. Despite her age and lack of sexual experience, ROBERT HADDEN instructed JANE DOE #16 that a vaginal examination and PAP Smear was necessary. During this exploitative and abusive visit, ROBERT HADDEN spent a long time doing the medically unnecessary and inappropriate PAP Smear and vaginal examination. Because of her young age, and due to the fact that ROBERT HADDEN was the first gynecologist that JANE DOE #16 saw, this didn't seem abnormal simply because JANE DOE #16 had nothing to compare it to.

Following the abusive and exploitative vaginal examination, JANE DOE #16 did not return to defendant ROBERT HADDEN.

13.     ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them - especially as a minor who was literally brought into this world into the hands of ROBERT HADDEN who had delivered her as a baby just 16-years earlier. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his own depraved-benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

14.     These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him

8

get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

15.     For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other female patients referenced above. One by licking her vagina during a purported vaginal examination - which was the second time that the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hands.

16.     Because Defendant "CORP. ENTITIES"' Chaperones stood by silently and watched - and also actively participated in the sexual exploitation, abuse, and cover-up of ROBERT HADDEN's serial sexual exploitation and abuse by failing to prevent or stop ROBERT HADDEN - JANE DOE #16 reasonably believed that ROBERT HADDEN must have been conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT

HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"'

chaperones' first-hand observation of the abuse and ROBERT HADDEN's history of evading their

observation by telling the Chaperones to leave the room, and "CORP. ENTITIES" prior reports

about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents,

partners, servants and employees actively concealed JANE DOE #16's abuse and ROBERT

HADDEN's sexually exploitative behavior, and inexplicably continued to allow ROBERT

HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER,

NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female and

minor-female patient populations. Based on the words and conduct of each of the defendants, their

agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further,

plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked

the capacity to deal with, and confront, the important legal issues and rights herein until the present.

17.     Further, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE

TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and

defendant "CORP. ENTITIES" continue to collude with ROBERT HADDEN to permit and enable

ROBERT HADDEN to apply for, obtain, and maintain certain "disability benefits" which allow

ROBERT HADDEN to receive financial compensation while enjoying what may otherwise be

considered a "paid, early retirement" from the practice of medicine. Defendants' collective

complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after

sexually, and feloniously, abusing countless female patients over the course of two-decades is

worthy of criminal prosecution, and intense public scrutiny. Particularly in this day and age, the

use of either Corporate or State taxpayer-dollars for the financial benefit of a convicted sexual

predator seems like the exact kind of thing that would be a notable and newsworthy story. Further,

ROBERT HADDEN's sexual exploitation, pedophilia, and sexual abuse of minor-female patients should be the subject of a comprehensive State investigation and criminal prosecution.

18.     Further, all the while, HADDEN ogled and fondled Jane Doe #16's naked body.  While this was happening, HADDEN posed the girl as if she were part of his sick, private, pornographic sexual performance. Further, HADDEN'S conduct was in violation of NY CPL §§ 130.00-130.96 Sex Offenses and violation of NY CPLR § 214-g, NY Child Victim Act.

**JANE DOE #29**

19.     Plaintiff JANE DOE #29 was born in 1990, and currently resides in the State of Ohio. JANE DOE #29 was a gynecology patient of defendants (and/or to be named Defendants) including: COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #29 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

20.     Plaintiff JANE DOE #29 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities for what was supposed to be gynecologic care and treatment between approximately 2005 and 2012. At the time of the visit JANE DOE #29 was a full-time high-school student and a minor

under the laws of the State of New York. ROBERT HADDEN was well aware of this fact and used his position of power and authority as leverage in order to carry out his scheme of sexual exploitation and sexual abuse of the minor child, JANE DOE #29.

21.     Beginning with JANE DOE #29's initial office visit as a gynecology patient, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse. During the visits, ROBERT HADDEN assailed JANE DOE #29 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her family, as well as her appearance, body, sexual history, and sexual activity. Questioning JANE DOE #29 about her virginity and eliciting intimate and inappropriate details about how close she has gotten to experiencing sexual intercourse with a male. ROBERT HADDEN's approach to grooming JANE DOE #29 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive.

22.     While ROBERT HADDEN was actively and verbally breaking down JANE DOE #29's boundaries, he forced JANE DOE #29 to answer questions about herself, her school, and her family; and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her unclothed body, breasts and vagina. While ogling and groping JANE DOE #29's unclothed body, ROBERT HADDEN continued to engage in idle chatter about wholly medically irrelevant information.

23.     A Chaperone was present in the clinic but then would leave the examining room during the verbal and physical exploitation and assaults. Despite the fact the chaperones witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, nothing was done to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #29. During this initial visit, ROBERT HADDEN directed JANE DOE #29 to remove all of her clothes and when

nobody was present proceeded to question her about whether or not she masturbated. ROBERT

HADDEN then proceeded to give JANE DOE #29 wholly unwanted and unsolicited tips about

how she could masturbate herself.

24.     ROBERT HADDEN then instructed JANE DOE #29 to expose her bare buttock so that he

could administer an HPV injection into her. When JANE DOE #29 returned to defendants medical

facility for her second injection with a nurse - not ROBERT HADDEN - JANE DOE #29 asked if

she should remove her pants to receive the injection. Upon making this inquiry, the nurse looked

at her as if she were nuts. JANE DOE #29 then proceeded to have a discussion with the nurse

about the fact that ROBERT HADDEN required her to remove her pants so he could administer

the first HPV injection into her naked buttock. Upon learning of this information, the nurse offered

no support to JANE DOE #29 and did nothing other than make JANE DOE #29 confused and feel

like JANE DOE #29, herself, had done or said something wrong. These actions and statements

made by defendants' nurse in defense of ROBERT HADDEN caused JANE DOE #29 to question

her own judgment and forbear from any further reporting or inquiry, medical or legal, into what

was done to her.

25.     The statements, actions, and inaction, by defendants' agents, servants and/or employees

conspired to enable ROBERT HADDEN to sexually exploit and abuse countless female patients.

During the visits, ROBERT HADDEN proceeded to perform a prolonged, medically-

inappropriate, unnecessary and unwarranted breast examination, prolonged, medically-

inappropriate, unnecessary, and unwarranted vaginal examination, and a prolonged and medically-

inappropriate exploration of plaintiff JANE DOE #29's breasts and vaginal area as ROBERT

HADDEN proceeded to rub his ungloved hands up and down her body, groped her body, spread

her buttocks, examined the crevices of the most intimate parts of her body, and spread her vagina

as he leered into all of her private areas. All the while, ROBERT HADDEN would continue to engage in idle chatter about JANE DOE #29, her body, and various kinds of sexual activity, in furtherance of ROBERT HADDEN's never-ending pedophiliac-grooming and sexual exploitation of this minor-female patient. During the serial, prolonged, medically-inappropriate unnecessary and unwarranted vaginal examinations that ROBERT HADDEN performed at nearly every visit, ROBERT HADDEN would penetrate JANE DOE #29 by inserting his fingers into JANE DOE #29's vagina. All of these so-called "examinations" were done in a deviant and sexual manner solely for ROBERT HADDEN's own prurient, deviant, and lecherous sexual gratification. Further, HADDEN'S conduct was in violation of NY CPL §§ 130.00-130.96 Sex Offenses and violation of NY CPLR § 214-g, NY Child Victim Act.

26.     Because of JANE DOE #29's young age, the fact that ROBERT HADDEN was the first gynecologist that JANE DOE #29 saw, and the fact the the nursing staff presented to JANE DOE #29 that these things were all part of a "normal" experience when seeing a gynecologist, JANE DOE #29 was completed befuddled and duped into believing that the exploitation and abuse being committed by ROBERT HADDEN was part of normal gynecologic care.

27.     ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them - especially as a minor 15 years of age. ROBERT HADDEN used his knowledge, age, maturity and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his own depraved-benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible

under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

28.     These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

29.     For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court

to sexually abusing two-other female patients referenced above. One by licking her vagina during

a purported vaginal examination - which was the second time that the patient stated ROBERT

HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually

abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his

ungloved hands.

30.     Because Defendant "CORP. ENTITIES"' Chaperones stood by silently and watched - and

also actively participated in the sexual exploitation, abuse, and coverup of ROBERT HADDEN's

serial sexual exploitation and abuse by failing to prevent or stop ROBERT HADDEN - JANE

DOE #29 reasonably believed that ROBERT HADDEN must have been conducting legitimate

medical treatment while he was ogling, groping, verbally assaulting, and physically abusing,

violating, sexually abusing, and penetrating her, although she now knows that ROBERT

HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"'

chaperones' first-hand observation of the abuse and ROBERT HADDEN's history of evading their

observation by telling the Chaperones to leave the room, and "CORP. ENTITIES" prior reports

about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents,

partners, servants and employees actively concealed JANE DOE #29's abuse and ROBERT

HADDEN's sexually exploitative behavior, and inexplicably continued to allow ROBERT

HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER,

NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female and

minor-female patient populations. Based on the words and conduct of each of the defendants, their

agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further,

plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked

the capacity to deal with, and confront, the important legal issues and rights herein until the present.

31.     Further, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" continue to collude with ROBERT HADDEN to permit and enable ROBERT HADDEN to apply for, obtain, and maintain certain "disability benefits" which allow ROBERT HADDEN to receive financial compensation while enjoying what may otherwise be considered a "paid, early retirement" from the practice of medicine. Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal prosecution, and intense public scrutiny. Particularly in this day and age, the use of either Corporate or State taxpayer-dollars for the financial benefit of a convicted sexual predator seems like the exact kind of thing that would be a notable and newsworthy story. Further, ROBERT HADDEN's sexual exploitation, pedophilia, and sexual abuse of minor-female patients should be the subject of a comprehensive State investigation and criminal prosecution.

### ALLEGATIONS AS TO ADULT PLAINTIFFS
### (REPRESENTATIVE ADULT PLAINTIFFS #79, #82, and #84)

#### JANE DOE #79

32.     Plaintiff JANE DOE #79 saw ROBERT HADDEN at "Corp. Defendants" medical facilities between 2005 and 2012, for what was supposed to be obstetric and gynecologic care and treatment.

33.     Starting with JANE DOE #79's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and

physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #79 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her sexual history, whether her partner satisfied her, and specific sexual acts she engaged in. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

34.     While ROBERT HADDEN was actively and verbally breaking down JANE DOE #79's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #79 to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #79. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #79. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears, and serial vaginal exams. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations that ROBERT HADDEN performed without gloves at practically every single visit, ROBERT HADDEN would repeatedly penetrate JANE DOE #79 by inserting his fingers into JANE DOE #79's vagina.

35.     ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he

was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

36.     Further, JANE DOE #79 was told by ROBERT HADDEN that she had a cancerous condition in her cervix at a young age. As a result of "her condition" she needed to undergo an office based surgical procedure with him called a "LEEP procedure". Upon information and belief, JANE DOE #79 did not have cancer and did not need the operative procedure. Instead, she is part of a large class of patients who were lied to by ROBERT HADDEN and his enablers for the sole purpose of granting HADDEN access to her body, creating and building a fear-based dependency between JANE DOE #79 and ROBERT HADDEN, and allowing COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, to reap the benefit of being able to generate millions of dollars in revenues through the illegal charges for unnecessary medical procedures that were then submitted to the patient and her insurance company. As a result of her bona fide, but false, belief that ROBERT HADDEN held her life in his hands, JANE DOE #79 continued to return to him to ensure her survival and victory over a cancerous condition that she never had. Upon calling

defendants' offices for a follow up visit with ROBERT HADDEN, and learning that ROBERT HADDEN was "out on sick leave", JANE DOE #79 was duped by defendants into not only having to worry about whether the new physician would be able to keep her cancer-free, but also into worrying that perhaps something tragic happened to ROBERT HADDEN, such that he developed cancer himself. As a result of the affirmative and blatant lies that were told to JANE DOE #79, she was tricked into believing that the exploitation and abuse committed upon her by HADDEN, was some form of legitimate medical care — which it was not. In light of the affirmative and explicit statements by defendants, which induced JANE DOE #79 into not pursuing legal action at the time, the statute of limitation is tolled.

37.    These events are not isolated, and they were not done outside the knowledge and awareness of his employers i. ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES created an environment where patients

were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care. Despite documented patient complaints, documented responses by Department Chairs, and even a New York Police Department arrest of ROBERT HADDEN at defendants' medical clinic, no crime was too big for COLUMBIA UNIVERSITY to try to coverup. Following HADDEN's arrest in June, 2012, for licking a patient during a bogus vaginal exam — and with the knowledge and awareness of JANE E. BOOTH, JOHN EVANKO, and MARY D'ALTON — sexual predator ROBERT HADDEN was allowed to return to defendants' clinics where he continued to sexually exploit, assault and abuse single women, married women, pregnant women, recent mothers, and even minors for another six weeks.

38.     ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other female patients referenced throughout this document: one by licking her vagina during a purported vaginal examination - which was the second time that the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to have an incurable sexually transmitted disease, with his ungloved hands. However, none of this should have ever happened. Columbia University and its Principals, Administrators, Trustees and even President knew of ROBERT HADDEN's predation of female patients dating back to the early 1990's and yet did nothing to stop his behavior. Instead, Columbia University and its staff engaged in a 25 year cover-up of ROBERT HADDEN's serial sexual exploitation and abuse. As a result of the collusion, aiding, abetting, enabling and cover-ups by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA

UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, who all played an integral role, the defendants and their agents, servants and employees, are all directly responsible for helping ROBERT HADDEN become the most prolific serial sexual predator in the history of New York.

39.    Finally, as a result of being listed as the physician in attendance at the 2009 birth of JANE DOE #79's child, ROBERT HADDEN's name is present on the original birth certificate of her daughter. Every time JANE DOE #79 registers her child for summer camp, or sends him off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificate of her child.  To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her son's birth certificate.

40.    Because Defendant CORP. ENTITIES' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #79, JANE DOE #79 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the CORP. ENTITIES' chaperones' first-hand observation of the abuse, and CORP. ENTITIES prior reports about ROBERT HADDEN's sexual misconduct, Defendant CORP. ENTITIES and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA   UNIVERSITY   MEDICAL   CENTER,   NEW   YORK-PRESBYTERIAN

HOSPITAL, and Defendant CORP. ENTITIES' female patient populations.

**JANE DOE #82**

41.     Plaintiff JANE DOE #82 saw ROBERT HADDEN at "Corp. Defendants" medical facilities between 1999 and 2012, for what was supposed to be obstetric and gynecologic care and treatment. Starting with JANE DOE #82's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #82 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her sexual history, whether her partner satisfied her, and specific sexual acts she engaged in. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

42.     While ROBERT HADDEN was actively and verbally breaking down JANE DOE #82's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #82 to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #82. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #82. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears, serial vaginal exams, and medically inappropriate and unwarranted "mole-checks"

23

where ROBERT HADDEN would require JANE DOE #82 to lay on the table unclothed while he rubbed his hands up and down her body, spread her buttocks, groped her breasts, and examined her entire body and private areas. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations that ROBERT HADDEN performed at practically every single visit, ROBERT HADDEN would repeatedly penetrate JANE DOE #82 by inserting his fingers into JANE DOE #82's vagina in a rough and aggressive manner.

43.     During her pregnancy with her son in November of 2011, in advance of her due date, ROBERT HADDEN instructed JANE DOE #82 that he didn't want her going past her due date and, suddenly and forcefully, inserted his fingers into her vagina to "loosen her mucus plug". As he forced his fingers inside of her, he proceeded to thrust his pelvis against her body making a humping motion. Plaintiff JANE DOE #82 left the encounter in severe pain, feeling violated, while ROBERT HADDEN's facial expression and demeanor appeared as if he enjoyed what he had just done.

44.     During the postpartum period, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #82. At one of the postpartum office visit, while JANE DOE #82's breasts were engorged, ROBERT HADDEN insisted that a breast examination was necessary. After making JANE DOE #82 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #82's breasts. During this prolonged, and wholly medically unnecessary and unwarranted "breast examination", ROBERT HADDEN began to pinch, squeeze, and tug on JANE DOE #82's nipples so as to express breast milk while allowing it to run down her breasts. JANE DOE #82 has endured indescribable conflict, confusion, and

mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN.

45.     ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

46.     Further, JANE DOE #82 was told by ROBERT HADDEN that she had a cancerous condition in her cervix at a young age. As a result of "her condition" she needed to undergo an office based surgical procedure with him called a "LEEP procedure". Upon information and belief, JANE DOE #82 did not have cancer and did not need the operative procedure. Instead, she is part of a large class of patients who were lied to by ROBERT HADDEN and his enablers for the sole purpose of granting HADDEN access to her body, creating and building a fear-based dependency between JANE DOE #82 and ROBERT HADDEN, and allowing COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, to reap the benefit of being able to generate millions of dollars in revenues through the illegal charges for unnecessary medical procedures that were then

submitted to the patient and her insurance company. As a result of her bona fide, but false, belief that ROBERT HADDEN held her life in his hands, JANE DOE #82 continued to return to him to ensure her survival and victory over a cancerous condition that she never had. Upon returning to defendants' offices for a followup visit with ROBERT HADDEN, and learning that ROBERT HADDEN was "out on medical leave", JANE DOE #82 was duped by defendants into not only having to worry about whether the new physician would be able to keep her cancer-free, but also into worrying that perhaps something tragic happened to ROBERT HADDEN, such that he developed cancer himself. As a result of the affirmative and blatant lies that were told to JANE DOE #82, she was tricked into believing that the exploitation and abuse committed upon her by HADDEN, was some form of legitimate medical care — which it was not. In light of the affirmative and explicit statements by defendants, which induced JANE DOE #82 into not pursuing legal action at the time, the statute of limitation is tolled.

47.     These events are not isolated, and they were not done outside the knowledge and awareness of his employers ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By

failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care. Despite documented patient complaints, documented responses by Department Chairs, and even a New York Police Department arrest of ROBERT HADDEN at defendants' medical clinic, no crime was too big for COLUMBIA UNIVERSITY to try to coverup. Following HADDEN's arrest in June, 2012, for licking a patient during a bogus vaginal exam — and with the knowledge and awareness of JANE E. BOOTH, JOHN EVANKO, and MARY D'ALTON — sexual predator ROBERT HADDEN was allowed to return to defendants' clinics where he continued to sexually exploit, assault and abuse single women, married women, pregnant women, recent mothers, and even minors for another six weeks.

48.     Finally, as a result of being listed as the physician in attendance at the 2011 birth of JANE DOE #82's child, ROBERT HADDEN's name is present on the original birth certificate of her son. Every time JANE DOE #82 registers her child for summer camp, or sends him off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificate of her child.  To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her son's birth certificate.

49.     Because Defendant CORP. ENTITIES' Chaperones stood by, silently, as ROBERT

HADDEN sexually exploited and abused Plaintiff JANE DOE #82, JANE DOE #82 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the CORP. ENTITIES' chaperones' first-hand observation of the abuse, and CORP. ENTITIES prior reports about ROBERT HADDEN's sexual misconduct, Defendant CORP. ENTITIES and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant CORP. ENTITIES' female patient populations.

50.     Plaintiffs were subjected to, among other things, sexual harassment and inappropriate touching during the examinations by Robert Hadden.

51.     Plaintiffs are informed and believe and thereon allege that the Columbia Defendants and at all relevant times herein mentioned was and are:

       (a)  New York corporations or other entities, form unknown;

       (b)  Citizens of New York;

       (c)  Have their principal place of business in New York; and

       (d)  Do business in New York County, New York.

52.     At all times relevant, defendant Robert R. Hadden, M.D. was the actual and/or apparent, duly authorized agent, servant and/or employee of the COLUMBIA Defendants and carried on a

gynecological medical practice in New York, New York.  Defendant Hadden is and was a resident of Tenafly, New Jersey.

53.    Plaintiffs are informed and believe and thereon allege that each of the Defendants named in this Complaint is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

54.    Plaintiffs are informed and believe and thereon allege that each of the Defendants named in this Complaint is, and at all relevant times herein mentioned was, the agent, servant, and/or employee of each of the other Defendants, and that each Defendant was acting within the course and scope of his, her, or its authority as the agent, servant, and/or employee of each of the other Defendants. Consequently, each Defendant is jointly and severally liable to Plaintiffs and the other members of the Class for the damages sustained as a proximate result of their conduct.

## JANE DOE #84

55.    Plaintiff JANE DOE #84 saw ROBERT HADDEN at CORP ENTITIES' medical facilities between 2010 and 2012, for what was supposed to be obstetric and gynecologic care and treatment. Starting with JANE DOE #84's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #84 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, physique and physical appearance. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. At the time, JANE DOE #84 had obtained a degree in medicine and had recently relocated to the United States from abroad. Despite her personal background and professional training in medicine,

she was inexplicably placed in a position by defendants where she suddenly felt forced to try and reconcile ROBERT HADDEN's conduct as just "the way doctors do examinations at COLUMBIA UNIVERSITY" and CORP. ENTITIES. Specifically, defendants' office staff who witnessed Hadden's conduct — and did nothing to stop the behavior — lent further credence to the idea that this was all somehow standard and legitimate medical care at their medical clinics.

56.    While ROBERT HADDEN was actively and verbally breaking down JANE DOE #84's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At nearly every visit ROBERT HADDEN required JANE DOE #84 to get completely naked - in his presence - as he ogled and exploited her. A chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #84. Other times, a chaperone was not present or would leave the room before the "examination" was complete – at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #84. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations and serial vaginal exams. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself, his family, and  even his own daughter, all in furtherance of his never-ending sexual exploitation and grooming of female patients.

57.    ROBERT HADDEN was well aware of the cognitive dissonance that his patients, including JANE DOE #84 , would experience with regard to their inability to come to grips

with the unfathomable idea that their own medical doctor, and a fellow practitioner, was being sexually exploitative and abusive. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

58. Before, during, and after the birth of JANE DOE #84's child in 2011, ROBERT HADDEN's exploitation and abuse continued. Defendant CORP. ENTITIES' chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #84. Because of this, JANE DOE #84 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the CORP. ENTITIES' chaperones' first-hand observation of the abuse, and CORP. ENTITIES' prior reports about ROBERT HADDEN's sexual misconduct, Defendant CORP. ENTITIES and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of ROBERT HADDEN's sexually exploitative

31

behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant Corp. Entities' female patient populations.

59.     ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #84 in the early part of her second pregnancy in 2012. However, at some point around September of 2012, JANE DOE #84 received a phone call from Defendants asking if it was okay for her to see a different doctor at her next appointment because ROBERT HADDEN was "unavailable." When JANE DOE #84 asked what happened, the staff would not tell her. When JANE DOE #84 returned for the next prenatal visit, she again asked about the circumstances concerning ROBERT HADDEN, and again nobody would tell her. JANE DOE #84 proceeded to ask multiple people including the front desk staff, nurses, and even her newly assigned OB/GYN, at different times, what the circumstances were around ROBERT HADDEN's sudden unavailability in the middle of her pregnancy. Initially, the staff would tell JANE DOE #84 that ROBERT HADDEN had personal issues that he needed to attend to and wasn't able to make it, and later JANE DOE #84 was told that ROBERT HADDEN was out on "medical leave." All of these statements were blatantly false. As a result of being lied to by defendants, JANE DOE #84 was driven by CORP. ENTITIES and their agents into not only having to worry about whether the new physician would be able to properly take over her prenatal care that was already in progress, but also into worrying that perhaps something tragic happened to ROBERT HADDEN or his family members, about whom ROBERT HADDEN routinely and improperly overshared information. As a result of the affirmative and blatant lies that were told to JANE DOE #84, she was tricked

into believing that the exploitation and abuse committed upon her by ROBERT HADDEN was some form of legitimate medical care — which it was not. In light of the affirmative and explicit statements by defendants, which induced JANE DOE #84 into not pursuing legal action at the time, and actually continuing to return to the very facility that was the location of her years of exploitation and abuse, the statute of limitation is tolled.

60.    These events are not isolated, and they were not done outside the knowledge and awareness of his employers, CORP. ENTITIES. ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones

were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care. Despite documented patient complaints, documented responses by department chairs, and even a New York Police Department arrest of ROBERT HADDEN at Defendants' medical clinic, no crime was too big for COLUMBIA UNIVERSITY to try to cover up. Following HADDEN's arrest in June 2012 for licking a patient during a bogus vaginal exam — and with the knowledge and awareness of JANE E. BOOTH, JOHN EVANKO, and MARY D'ALTON — sexual predator ROBERT HADDEN was allowed to return to Defendants' clinics where he continued to sexually exploit, assault and abuse single women, married women, pregnant women, recent mothers, and even minors for another six weeks.

61.    For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two other female patients referenced throughout this document: one by licking her vagina during a purported vaginal examination - which was the second time that the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to have an incurable sexually transmitted disease, with his ungloved hands. However, none of this should have ever happened. COLUMBIA UNIVERSITY and its Principals, Administrators, Trustees and even President knew of ROBERT HADDEN's predation of female patients dating back to the early 1990's and yet did nothing to stop his behavior. Instead, COLUMBIA UNIVERSITY and its staff engaged in a 25-year coverup of ROBERT HADDEN's serial sexual exploitation and abuse. As a result of the collusion, aiding, abetting, enabling and coverups by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-

PRESBYTERIAN HOSPITAL, and CORP. ENTITIES, who all played an integral role, the defendants and their agents, servants and employees, are all directly responsible for helping ROBERT HADDEN become the most prolific serial sexual predator in the history of New York.

62.    Because Defendant CORP. ENTITIES' chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #84, JANE DOE #84 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the CORP. ENTITIES' chaperones' first-hand observation of the abuse, and CORP. ENTITIES' prior reports about ROBERT HADDEN's sexual misconduct, Defendant CORP. ENTITIES and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of ROBERT HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant Corp. Entities' female patient populations. Finally, the reality is that COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant CORP. ENTITIES knew from the early 1990's and had documented reports from patients about ROBERT HADDEN's sexual exploitation and abuse of patients. As a result, ROBERT HADDEN should have never even had the

35

opportunity to sexually exploit and abuse the women herein. But instead of protecting these patients, COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant Corp. Entities did nothing but protect, enable, and coverup ROBERT HADDEN's criminal sexual conduct for a period of over 20 years.

## CLASS ALLEGATIONS

63.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4). Plaintiffs seek certification of a Class that is initially defined as follows:

> All women who were examined by Robert Hadden, M.D. at Columbia University, The New York Presbyterian Hospital, Columbia Presbyterian Medical Center, Columbia University Medical Center; Columbia-Presbyterian Medical Center, East Side Associates, The Trustees of Columbia University in the City of New York, Columbia University College of Physicians and Surgeons, Presbyterian Hospital Physician Services Organization, Inc., Columbia Cornell Network Physicians, Inc., and/or Sloane Hospital for Women.

64.     Excluded  from each of the above classes are Defendants, including any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which are controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

65.     Numerosity. The members of the class are so numerous that joinder of all members is impractical. Plaintiffs are informed and believe that there are thousands of members of the class. The precise number of class members can be ascertained from Defendants' records.

66.     There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect only individual Class members

within the meaning of Fed. R. Civ. P. 23(a)(2) and (b)(3).  Class treatment of common issues under

Fed. R. Civ. P. 23(c)(4) will materially advance the litigation.

67.    These common questions of law and fact include, without limitation:

      a.   Whether Hadden engaged in a sexual harassment, assault, and battery;

      b.   Whether Hadden's sexual harassment, assault and battery was committed within the scope of his employment at COLUMBIA;

      c.   Whether Hadden invaded the privacy of Plaintiff and the members of the Class;

      d.   Whether Hadden's sexual harassment, invasion of privacy, assault, and battery was committed within the scope of his employment at Columbia;

      e.   Whether the COLUMBIA Defendants had knowledge of Hadden's sexual harassment, assault, and battery;

      f.   Whether the COLUMBIA Defendants facilitated, aided and abetted Hadden's pattern and practice of sexual harassment, assault, and battery;

      g.   Whether the COLUMBIA Defendants engaged in conduct designed to suppress and/or conceal complaints or reports regarding Hadden's  conduct;

      h.   Whether the COLUMBIA Defendants negligently retained or supervised Hadden; and

      i.   Whether Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded.

68.    Typicality. Plaintiffs' claims are typical of the claims of the Class they seeks to represent.

Plaintiffs and all Class members were exposed to uniform practices and sustained injuries arising

out of and caused by Defendants' conduct.

69.    Adequacy. Plaintiffs are committed to the vigorous prosecution of this action and have

retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs

are adequate representatives and will fairly and adequately protect the interests of the Class.

70.    Superiority. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Since the amount of each individual Class member's claim is

small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

71.    Finally, Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CONDUCT ALLEGATIONS

### DEFENDANT ROBERT HADDEN – THE PERPETRATOR

72.    Defendant ROBERT HADDEN, at all times mentioned herein was and is an adult male, who worked at defendant "CORP. ENTITIES", and who plaintiffs are informed and believe lives in the State of New Jersey during the period of time during which the predatory grooming, sexual exploitation, molestation, harassment, and sexual abuse took place. Plaintiffs are informed and believe, and on this basis state, that ROBERT HADDEN received his medical degree from the New York Medical College in 1987 and completed his medical internship and residency in Obstetrics and Gynecology at Columbia University in New York, NY. Upon completion of his residency, ROBERT HADDEN was hired by Defendant "CORP. ENTITIES" including COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY as a full-time

gynecologist at COLUMBIA UNIVERSITY's medical centers, offices, hospitals, and related clinics, and was employed in that capacity until 2012, when Defendants allowed ROBERT HADDEN to quietly and surreptitiously take an alleged "leave of absence", with a financial bonus paid by Defendants and/or their related entities to ROBERT HADDEN, in a deliberate and covert attempt to continue concealing ROBERT HADDEN's decades of sexual exploitation and abuse from Plaintiffs and the countless other female patients that ROBERT HADDEN sexually abused over the course of more than two (2) decades, and also to hide the real facts constituting the abuse from law enforcement, the State of New York Medical Board/OPMC, the public at large, and other competing universities and hospitals.

73.    During his twenty-year tenure at COLUMBIA UNIVERSITY and its related "CORP. ENTITIES", Plaintiffs are informed and believe, and on this basis state, that ROBERT HADDEN sexually exploited, abused and molested hundreds of female patients, including Plaintiffs, through the use of his position, and authority as a full-time gynecologist employed by defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", as well as their offices, clinics and other entities and locations.

74.    It was only in 2012, when Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", paid ROBERT HADDEN a substantial financial bonus-incentive so that HADDEN would quietly resign — such that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", could continue to actively conceal the myriad complaints they had received about ROBERT HADDEN's sexually abusive behavior that had been perpetrated against and upon female patients over the course of the past couple decades — that the systematic sexual abuse, sexual exploitation, and molestation of female patients being committed upon their

premises and in their hospitals, offices and clinics by ROBERT HADDEN was finally halted.

75.     At all times herein stated, ROBERT HADDEN was an agent, servant and/or employee of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", its medical clinics, facilities and locations, and/or was under their complete control and/or direct supervision.

76.     ROBERT HADDEN was retained and/or contracted by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", as an Obstetrician-Gynecologist to provide medical care and treatment to women as private patients, service patients, and also as students who were attending COLUMBIA UNIVERSITY as undergraduate and graduate patients, many of whom had never received any previous gynecological or obstetric care or treatment before. It was through this position of access, trust and authority, that ROBERT HADDEN sexually exploited and abused countless women in an effort to feed his insatiable and depraved sexual desires. All of the sexually exploitative, manipulative, abusive and harassing conduct stated herein was done for ROBERT HADDEN's own sexual gratification, and was rooted in the willingness to put his own deviant sexual desires above the need to provide safe and professional medical services to Plaintiff.

**DEFENDANTS COLUMBIA UNIVERSITY; THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (CORP. ENTITIES)**
**- THE ENABLERS**

77.     Defendant COLUMBIA UNIVERSITY at all times mentioned herein was and is a New

York Corporation, having its principal place of business in the State of New York, County of New York. Plaintiffs are informed and believe COLUMBIA UNIVERSITY and "CORP. ENTITIES" are part of a private research university, established on July 17, 1754, located in New York, New York. Defendant COLUMBIA UNIVERSITY boasts of being "a world-renowned Ivy League institution", "a world-class university dedicated to teaching, research, and clinical care", and of having "an illustrious 250 year history, an impeccable record of academic excellence and an extensive roster of distinguished alumni and faculty". COLUMBIA UNIVERSITY and its affiliated medical facilities including New York-Presbyterian Hospital boast of having "More Top-Doctors Than Any Other U.S. hospital." Defendant COLUMBIA UNIVERSITY states as follows: "Columbia University expects all officers of instruction, research, libraries, athletics, and administration; support staff; and students to maintain the highest standards of ethical conduct." Columbia University set forth a Code of Ethics as follows:

### Principles

The basic principles of Ethical Conduct are:
1. Be honest, ethical and truthful.
2. Obey the law.
3. Follow University policies and procedures.

### Procedures

1. Report conduct that concerns you. If you believe that an activity may be illegal, unethical or otherwise troubling, you should report it to your supervisor.
2. An individual's failure to live up to these principles may result in disciplinary action, including suspension, termination, and monetary fines consistent with University policy.

### Respect for Others

Respect for others is the central principle that governs interactions between people at Columbia University. Two primary expectations that flow from this principle are to act with civility and to refrain from abuse of power. Respect for others is expected in peer to peer relationships, between service providers and people within and outside of the Columbia community, between people who are clients or customers

and service providers at the University, and within a supervisory context (e.g., manager to employee and employee to manager).

**Where should I go with a Concern?**

"The first recommended resource for a clarification on a policy, regulation or law is your direct supervisor."

78.     Upon information and belief, Defendant COLUMBIA UNIVERSITY maintains in excess of a $ 10,900,000,000.00 ($10.9 billion) endowment as of June 30, 2018, and a $ 345,900,000.00 ($3.459 million) joint budget with New York Presbyterian Hospital for the 2018 fiscal year. Defendant COLUMBIA UNIVERSITY holds itself out to be one of the world's most elite, prestigious and reputable hospitals and higher learning institutions. Defendant COLUMBIA UNIVERSITY deliberately crafted this public image in order to actively conceal the fact that it employs a countless number of sexual predators in all areas of its university - including ROBERT HADDEN - a serial sexual predator, who COLUMBIA UNIVERSITY, the TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" enabled to serially sexual assault its female patients at their medical office and clinics for over twenty (20) years.

79.     Defendant COLUMBIA UNIVERSITY at all times mentioned herein was and is a New York Corporation, having its principal place of business in the State of New York, County of New York.

80.     Each of the plaintiffs herein were patients of COLUMBIA UNIVERSITY, and/or their agents, servants, employees, and CORP. ENTITIES.

81.     Defendant TRUSTEES OF COLUMBIA UNIVERSITY at all times mentioned herein was and is a New York Corporation, having its principal place of business in the State of New York, County of New York. Upon information and belief, The Board of TRUSTEES of COLUMBIA UNIVERSITY is the governing body of COLUMBIA UNIVERSITY and exercises the ultimate

dominion and control of same. The Board of TRUSTEES of COLUMBIA UNIVERSITY is comprised of a collection of well established, politically connected, businesspeople from within, and outside of, the City of New York.

82.     Upon information and belief, Defendant THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK (hereinafter "TRUSTEES"), has no parent corporation and has no publicly held corporations that own 10% or more of its stock.

83.     Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

84.     Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

85.     Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 16 E. 60th Street, Suite 480, New York, NY 10022.

86.     Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages, and/or controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter "NYPH"), and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS (hereinafter "CUCPS"). Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as SLOANE HOSPITAL FOR WOMEN, is located at 161 Fort Washington Avenue, New York, NY 10032.

87.     Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages,

and/or controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the NEW YORK PRESBYTERIAN HOSPITAL. Upon information and belief, Defendant NYPH and Defendant TRUSTEES doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

88.     Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages, and/or controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, COLUMBIA UNIVERSITY MEDICAL CENTER, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

89.     Upon information and belief, Defendant COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS (hereinafter "CUCPS") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

90.     Upon information and belief, Defendant THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter "NYPH") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 525 East 68th Street, New York, NY 10065.

91.     Upon information and belief, SLOANE HOSPITAL FOR WOMEN serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and

the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as SLOANE HOSPITAL FOR WOMEN, is located at 161 Fort Washington Avenue, New York, NY 10032.

92.     Upon information and belief, Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER (hereinafter "CPMC") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 525 East 68th Street, New York, NY 10065.

93.     Upon information and belief, Defendant COLUMBIA UNIVERSITY MEDICAL CENTER (hereinafter "CUMC") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 630 West 168th St., New York, NY 10032.

94.     Upon information and belief, Defendant PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC. (hereinafter "PHPSO") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 1211 Avenue of the Americas, New York, NY 10036.

95.     Upon information and belief, Defendant COLUMBIA-CORNELL CARE, LLC (hereinafter "CCC") is a domestic not-for-profit entity with its principal office located at 16 E. 60th Street, Suite 480, New York, NY 10022.

96.     Upon information and belief, Defendant COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (hereinafter "CCNP") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 900 Third Avenue, Suite 500, New York, NY 10022.

97.     Upon information and belief, COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES ("CPMC-ESA") serves as an obstetrics and gynecological service to THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

98.     Upon information and belief, EAST SIDE ASSOCIATES ("ESA") serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

99.     Upon information and belief, COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES serves as an obstetrics and gynecological service to THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY MEDICAL CENTER. Upon information and belief, Defendant NYPH and Defendant CUMC, doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

100.     Upon information and belief, EAST SIDE ASSOCIATES serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY MEDICAL

CENTER. Upon information and belief, Defendant NYPH and Defendant CUMC, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

101.     Upon information and belief, Defendant ROBERT HADDEN, is and was a resident of the State of New York, New York.

102.     Upon information and belief, Defendant ROBERT HADDEN, is and was a resident of the State of New Jersey, residing in Tenafly, New Jersey.

103.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant COLUMBIA.

104.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant TRUSTEES.

105.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CUCPS.

106.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant NYPH.

107.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CPMC.

108.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CUMC.

109.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant PHPSO.

110.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CCC.

111.     At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or

employee of defendant CCNP.

112.    At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CPMC-ESA.

113.    At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant EAST SIDE ASSOCIATES.

114.    At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant SLOANE.

115.    At all times herein mentioned, defendant NYPH, was a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

116.    At all times herein mentioned, defendant NYPH was the owner of a hospital known as NEW YORK PRESBYTERIAN HOSPITAL, located at 525 E. 68th Street, New York, NY 10021.

117.    At all times herein mentioned, defendant NYPH operated, managed and controlled the aforesaid hospital.

118.    At all times herein mentioned, defendant Columbia-Presbyterian Medical Center, East Side Associates, was a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

119.    At all times herein mentioned, defendant NYPH was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

120.    At all times herein mentioned, defendant NYPH was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

121.    At all times herein mentioned, defendant NYPH operated, managed and controlled CPMC-ESA.

122.    At all times herein mentioned, defendant COLUMBIA operated, managed and controlled ESA.

123.    At all times herein mentioned, defendant NYPH operated, managed and controlled ESA.

124.    At all times herein mentioned, defendant CUMC operated, managed and controlled CPMC-ESA.

125.    At all times herein mentioned, defendant CUMC operated, managed and controlled ESA.

126.    At all times herein mentioned, defendant SLOANE operated, managed and controlled CPMC-ESA.

127.    At all times herein mentioned, defendant SLOANE operated, managed and controlled ESA.

128.    At all times herein mentioned, defendant PHPSO operated, managed and controlled CPMC-ESA.

129.    At all times herein mentioned, defendant PHPSO operated, managed and controlled ESA.

130.    At all times herein mentioned, defendant CUCPS operated, managed and controlled CPMC-ESA.

131.    At all times herein mentioned, defendant CUCPS operated, managed and controlled ESA.

132.    At all times herein mentioned, defendant CCNP operated, managed and controlled CPMC-ESA.

133.    At all times herein mentioned, defendant CCNP operated, managed and controlled ESA.

125.    At all times herein mentioned, defendant CUMC was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

126.    At all times herein mentioned, defendant CUMC was the owner of a medical facility known

as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

127.    At all times herein mentioned, defendant CPMC was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

128.    At all times herein mentioned, defendant CPMC was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

129.    At all times herein mentioned, defendant COLUMBIA was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

130.    At all times herein mentioned, defendant PHPSO was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

131.    At all times herein mentioned, defendant PHPSO was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

132.    At all times herein mentioned, defendant CCNP was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

133.    At all times herein mentioned, defendant CCNP was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

134.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant COLUMBIA, were agents, servants and/or employees of defendant COLUMBIA.

135.    At all times herein mentioned, all of the physicians, nurses and other personnel involved

in the diagnosis, care and treatment of the plaintiffs in defendants medical offices, hospitals, and/or clinics**,** were agents, servants and/or employees of defendant COLUMBIA.

136.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant NYPH**,** were agents, servants and/or employees of defendant NYPH.

137.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates**,** were agents, servants and/or employees of defendant NYPH.

138.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents, servants and/or employees of defendant NYPH.

139.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates**,** were agents, servants and/or employees of defendant Columbia-Presbyterian Medical Center, East Side Associates.

140.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents, servants and/or employees of defendant East Side Associates.

141.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates**,** were agents, servants and/or employees of defendant CUCPS.

142.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents,

servants and/or employees of defendant CUCPS.

143.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CPMC.

144.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CPMC.

145.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CUMC.

146.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CUMC.

147.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant PHPSO.

148.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant PHPSO.

149.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CCNP.

150.    At all times herein mentioned, all of the physicians, nurses and other personnel involved

in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents, servants and/or employees of defendant CCNP.

151.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates**,** were agents, servants and/or employees of defendant CCC.

152.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents, servants and/or employees of defendant CCC.

153.    At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates**,** were agents, servants and/or employees of defendant SLOANE.

154.     At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates**,** were agents, servants and/or employees of defendant SLOANE.

155.    At all times herein mentioned, defendant ROBERT HADDEN, was a physician duly licensed to practice medicine in the State of New York.

156.    At all times herein mentioned, Defendant ROBERT HADDEN, was an agent, servant or employee of Defendant COLUMBIA, Defendant TRUSTEES, Defendant CUCPS, Defendant NYPH, Defendant CPMC-ESA, Defendant ESA, Defendant CPMC, Defendant CUMC, Defendant PHPSO, Defendant CCNP, Defendant CCC, and/or Defendant SLOANE (hereinafter collectively "CORP. ENTITIES").

157.    Prior to January 1993, defendant "CORP. ENTITIES", their agents, servants and/or employees, hired, employed, credentialed and/or enlisted Defendant ROBERT HADDEN, to

53

render gynecologic and/or obstetric care to their patients.

158.    At all times herein mentioned, defendant ROBERT HADDEN was a sexual predator.

159.    ROBERT HADDEN sexually assaulted patients on the premises of defendant "CORP. ENTITIES".

160.    ROBERT HADDEN sexually assaulted patients on the premises of defendant "CORP. ENTITIES" under the guise of rendering medical care.

161.    Defendant "CORP. ENTITIES" enabled defendant ROBERT HADDEN to sexually assault patients on their premises.

162.    Defendant "CORP. ENTITIES" failed to timely and properly supervise and/or monitor defendant ROBERT HADDEN.

163.    Defendant "CORP. ENTITIES" knew, or should have known, that defendant ROBERT HADDEN was sexually assaulting patients under the guise of rendering medical care.

164.    Defendant "CORP. ENTITIES" knew, or should have known, that defendant ROBERT HADDEN was sexually assaulting patients on their premises.

165.    Defendant "CORP. ENTITIES" did not have policies or procedures in place to protect patients from being sexually assaulted by defendant ROBERT HADDEN.

166.    Medical personnel, including nurses, administrators and supervisors of defendant "CORP. ENTITIES" knew that defendant ROBERT HADDEN was sexually assaulting patients on their premises.

167.    Defendant "CORP. ENTITIES" created an environment which caused medical personnel, including nurses and administrators, to not report the sexual assaults being committed by defendant ROBERT HADDEN for fear of reprisals.

168.    Medical personnel, including nurses, administrators and supervisors at defendant "CORP.

ENTITIES" have known for 25 years that defendant ROBERT HADDEN is a sexual predator who has sexually assaulted patients on their premises.

169.    Medical personnel, including nurses, administrators and supervisors at defendant "CORP. ENTITIES" facilitated defendant ROBERT HADDEN in the sexual assaults he was committing on the premises of "CORP. ENTITIES".

170.    Defendant "CORP. ENTITIES" have failed to take action or levy penalties against defendant ROBERT HADDEN for the sexual assaults he has committed on their premises.

171.    Defendant "CORP. ENTITIES" have failed to undertake a meaningful investigation to ascertain the facts and circumstances that allowed the sexual assaults to be committed by defendant ROBERT HADDEN upon their premises.

172.    Defendant "CORP. ENTITIES" have approved disability payments to defendant ROBERT HADDEN for a purported "disability" which he claims caused him to be unable to work - when in reality ROBERT HADDEN's lack of current employment is the result of decades of sexual predation.

173.    Defendant ROBERT HADDEN was convicted of criminal and felonious sexual assault of patients that he committed on the premises of defendant "CORP. ENTITIES".

174.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to monitor and supervise the actions of Defendant ROBERT HADDEN which enabled the sexual assaults to take place.

175.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were complicit in the actions of ROBERT HADDEN which enabled the sexual assaults to take place.

176.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to act upon information and facts that Defendant ROBERT HADDEN was sexually assaulting patients

on their premises.

177.    Defendant "CORP. ENTITIES" have enabled defendant ROBERT HADDEN to collect disability income despite the fact that he is a sexual predator - and is now registered as a convicted sexual felon - as a result of his having sexually assaulted patients on the premises of defendant "CORP. ENTITIES".

178.    Defendant "CORP. ENTITIES" have enabled defendant ROBERT HADDEN to collect disability income for a purported mental "disability" which he claims is causing him to be unable to work - when in reality ROBERT HADDEN's lack of current employment is the result of decades of sexual predation.

179.    Defendant "CORP. ENTITIES" have entered into an arrangement with defendant ROBERT HADDEN in exchange for his cooperation with them in the civil lawsuits involving his decades-long sexual assaults and predation of female patients.

180.    There has been no disciplinary action by defendant "CORP. ENTITIES" against defendant ROBERT HADDEN.

181.    There has been no disciplinary action by defendant "CORP. ENTITIES" against any of the nurses and administrators who enabled defendant ROBERT HADDEN to sexually assault patients on their premises.

182.    Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN, from the first time that ROBERT HADDEN obtained privileges with the named "CORP. ENTITIES" through the present.

183.    Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN between January 1993 and the present.

184.    Prior to January 2015, Defendant "CORP. ENTITIES", their agents, servants, and/or

employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

185.    Prior to January 2014, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

186.    Prior to January 2013, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

187.    Prior to January 2012, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

188.    Prior to January 2011, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

189.    Prior to January 2010, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

190.    Prior to January 2009, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

191.    Prior to January 2008, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

192.    Prior to January 1998, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

193.    Prior to January 1993, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

194.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees knew, or should have known, that defendant ROBERT HADDEN had sexually assaulted patients upon their premises as far back as the 1990s.

195.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, observed defendant ROBERT HADDEN sexually assaulting patients as far back as the 1990s.

196.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees witnessed defendant ROBERT HADDEN sexually assaulting patients as far back as the 1990s.

197.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were informed and/or aware of sexual assaults being committed by defendant ROBERT HADDEN and failed to protect patients from further sexual assaults and sexual abuse.

198.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees knew, or should have known, of sexual assaults being committed by defendant ROBERT HADDEN and failed to protect patients from further sexual assaults and/or sexual abuse.

199.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees reported to other defendant "CORP. ENTITIES" personnel that defendant ROBERT HADDEN was sexually assaulting patients as far back as the 1990s.

200.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees had received

58

complaints by patients who had been sexually assaulted and sexually abused by ROBERT HADDEN prior to ROBERT HADDEN entering a plea of being criminally guilty on February 22, 2016.

201.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees took no action on the information and knowledge they had concerning patients being sexually abused and sexually assaulted by ROBERT HADDEN prior to ROBERT HADDEN entering a plea of criminal guilt on February 22, 2016.

202.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have taken no action on the information and knowledge they have about patients being sexually assaulted and sexually abused by ROBERT HADDEN since Defendant ROBERT HADDEN entered his plea of criminal guilt on February 22, 2016.

203.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have taken no action on the information and knowledge they have about patients being sexually assaulted and sexually abused by ROBERT HADDEN since Defendant ROBERT HADDEN was sentenced in the Criminal Case on March 29, 2016.

204.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual assaults by doctors or other medical personnel to Criminal Authorities.

205.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual assaults by doctors or other medical personnel to Defendant Medical Entity supervisors.

206.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual

assaults by doctors or other medical personnel to both Criminal Authorities and Defendant Medical Entity supervisors.

207.    Defendant "CORP. ENTITIES" should encourage all medical personnel, as well as all of their agents, servants, and/or employees, to immediately report all suspected sexual assaults to the Administration as well as to Criminal Authorities.

208.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees created an environment which discouraged reporting medical doctors to Administrators and Criminal Authorities - even where medical doctors were sexually assaulting patients.

209.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees never reported ROBERT HADDEN to any Administrators for having sexually assaulted patients.

210.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees did report ROBERT HADDEN to Administrators for having sexually assaulted patients.

211.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees never took any disciplinary action against ROBERT HADDEN for having sexually assaulted patients.

212.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees continued to grant ROBERT HADDEN privileges despite the fact that they knew, or should have known, that he was sexually assaulting patients.

213.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees had a duty to timely and properly monitor and/or supervise their medical personnel, including ROBERT HADDEN, to ensure that patients were not being sexually assaulted.

214.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to timely and properly monitor and/or supervise their medical personnel, including ROBERT HADDEN, to ensure that patients were not being sexually assaulted.

215.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees never reported ROBERT HADDEN to any Criminal Authorities.

216.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees allowed ROBERT HADDEN to continue to work as a medical doctor upon their premises after he sexually assaulted patients.

217.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees allowed ROBERT HADDEN to continue to work as a medical doctor upon their premises after they knew, or should have known, that ROBERT HADDEN sexually assaulted patients.

218.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to protect their patients from further sexual assaults, sexual exploitation, and sexual abuse by ROBERT HADDEN.

219.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to conduct timely and proper investigations into the information and reports that ROBERT HADDEN sexually assaulted patients.

220.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" continued judicial and extrajudicial denials that ROBERT HADDEN sexually assaulted patients despite the fact that they possessed conclusive proof that ROBERT HADDEN is guilty of criminal sexual assaults.

221.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" have continued their judicial and extrajudicial denials that ROBERT HADDEN sexually assaulted and sexually abused patients despite the fact that they possessed conclusive proof that ROBERT HADDEN is guilty of criminal sexual assaults.

222.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA

61

UNIVERSITY, and "CORP. ENTITIES", through their agents, servants, and/or employees are actively and fraudulently misrepresenting, deceiving, and lying to each of the Plaintiffs herein, and the public at large, about the facts surrounding ROBERT HADDEN's serial sexual assaults and sexual abuses of female patients by telling everyone that ROBERT HADDEN is out on "medical leave", that they've "never heard of anyone else saying this about him", and that ROBERT HADDEN is just "old school" and not a sexual predator.

223.   Defendant ROBERT HADDEN continues to maintain his own judicial and extrajudicial denials that he sexually assaulted countless patients despite the fact that ROBERT HADDEN is, in fact, guilty of countless criminal sexual assaults.

224.   Defendant ROBERT HADDEN has betrayed a position of respect and trust by committing criminal sexual assaults on medical patients.

225.   Defendant "CORP. ENTITIES" have betrayed a position of respect and trust by permitting defendant ROBERT HADDEN to criminal sexual assaults on medical patients upon their premises.

226.   Defendant "CORP. ENTITIES" have long known that ROBERT HADDEN was a sexual predator, but instead of terminating ROBERT HADDEN's medical privileges and reporting him to Criminal Authorities, defendant "CORP. ENTITIES", their agents, servants, and/or employees instead chose to simply move defendant ROBERT HADDEN to other medical facilities at other locations within Defendant "CORP. ENTITIES'" control where he continued to sexually assault other patients.

227.   Defendant "CORP. ENTITIES", their agents, servants, and/or employees have violated a sacrosanct relationship of Trust by failing to protect female patients from being sexually assaulted by defendant ROBERT HADDEN.

228.   By tolerating the sexual misconduct of ROBERT HADDEN, Defendant "CORP. ENTITIES", their agents, servants, and/or employees have completely violated the sacrosanct relationship of Trust by placing their patients in the way of harm and being sexually assaulted by defendant ROBERT HADDEN.

229.   Defendant ROBERT HADDEN has violated a sacrosanct relationship of Trust by sexually assaulting patients.

230.   Defendant "CORP. ENTITIES", their agents, servants, and/or employees were informed and/or aware of the sexual assaults being committed by ROBERT HADDEN and failed to protect their patients from further sexual assaults and sexual abuse.

231.   Defendant "CORP. ENTITIES", their agents, servants, and/or employees were not informed and/or have not become aware of the sexual assaults being committed by ROBERT HADDEN.

232.   Defendant ROBERT HADDEN is guilty of committing a Criminal Sexual Act in the Third Degree upon a patient in violation of P.L. § 130.40(1).

233.   On February 7, 2012 Defendant ROBERT HADDEN engaged in Oral Sexual Contact with an Individual who was incapable of consent by reasons of some factor other than being less than seventeen years old in violation of P.L. § 130.40(1).

234.   On February 7, 2012 Defendant ROBERT HADDEN engaged in Oral Sexual Contact with a patient in violation of P.L. § 130.40(1).

235.   Defendant ROBERT HADDEN is guilty of the Crime of Forcibly Touching "JANE DOE #6" (hereinafter "JANE DOE #6") in a related action in violation of P.L. § 130.52.

236.   On May 7, 2012, ROBERT HADDEN intentionally and for no legitimate purpose forcibly touched the sexual and other intimate parts of a female patient for the purpose of degrading and

abusing her and for the purpose of gratifying his sexual desire.

237.   On May 7, 2012, Defendant ROBERT HADDEN forcibly touched a female patient in violation of P.L. § 130.52.

238.   The female patient referenced above was HIV-positive when she was under the care and treatment of defendants, their agents, servants, and/or employees.

239.   Defendant ROBERT HADDEN was fully aware that the female patient referenced above was HIV-positive while she was under his care and treatment in May of 2012.

240.   Defendant "CORP. ENTITIES" were fully aware that the patient referenced above was HIV-positive while she was under their care and treatment in May of 2012.

241.   Defendant ROBERT HADDEN forcibly touched the sexual and other intimate parts of the female patient referenced above for the purpose of degrading and abusing her and for the purpose of gratifying his sexual desire on May 7, 2012, despite his full knowledge and awareness that she was HIV-positive.

242.   Despite defendant ROBERT HADDEN's full knowledge and awareness that the above referenced patient was HIV-positive, ROBERT HADDEN criminally sexually assaulted her on May 7, 2012, and exposed her and other patients and personnel to an increased risk of harm though his deviant, bottomless conduct, and wanton, careless, and reckless disregard of patient safety.

243.   Defendant ROBERT HADDEN sexually assaulted the above referenced patient on May 7, 2012.

244.   Defendant ROBERT HADDEN sexually assaulted the above referenced patient on dates prior to May 7, 2012.

245.   ROBERT HADDEN is a convicted sexual felon.

246.   ROBERT HADDEN is a registered sex offender.

247.    Had plaintiffs not commenced their Civil lawsuits against defendant ROBERT HADDEN and Defendant "CORP. ENTITIES", defendant "CORP. ENTITIES" would have continued to allow ROBERT HADDEN to retain his medical privileges and sexually abuse and sexually assault obstetric & gynecologic patients upon the premises of defendant "CORP. ENTITIES".

248.    ROBERT HADDEN has sexually abused and sexually assaulted countless patients over the course of his career as a medical doctor upon the premises of defendant "CORP. ENTITIES".

249.    ROBERT HADDEN has sexually abused and sexually assaulted patients going back as far as the 1990's, all while under the employment and supervision of defendant "CORP. ENTITIES".

250.    Defendant "CORP. ENTITIES" were aware of defendant ROBERT HADDEN's criminal and outrageous behavior prior to August 2012.

251.    Defendant "CORP. ENTITIES" have chosen to turn their backs on the patients who have been sexually abused and sexually assaulted by defendant ROBERT HADDEN.

252.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have failed to report instances of sexual misconduct and sexual abuse committed by defendant ROBERT HADDEN.

253.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees have failed to act on instances of sexual misconduct and sexual abuse committed by defendant ROBERT HADDEN.

254.    Defendant "CORP. ENTITIES" deny responsibility for the sexual abuse their patients have endured at the hands of defendant ROBERT HADDEN.

255.    The answering defendant feels it is not responsible for the sexual abuse that its patients have endured at the hands of defendant ROBERT HADDEN.

256.    Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN as a result of the sexual assaults and sexual abuse he has committed on their

premises.

257.    Defendant "CORP. ENTITIES" have made no effort to right the wrongs that have been committed upon their premises with regard to the within individually named survivors.

258.    Defendant "CORP. ENTITIES" refuse to take responsibility for the sexual abuse their patients have endured as a result of the complicity of their agents, servants and/or employees who failed to report, terminate and/or take any disciplinary or legal action against ROBERT HADDEN.

259.     Defendant ROBERT HADDEN denies violating the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

260.    Defendant TRUSTEES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

261.    Defendant CUCPS denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

262.    Defendant NYPH denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

263.    Defendant CPMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

264.    Defendant CUMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

265.    Defendant PHPSO denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

266.    Defendant CCC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

267.    Defendant CCNP denies that ROBERT HADDEN violated the standard of care with regard

to the care and treatment rendered to the above referenced patient on May 7, 2012.

268.   Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

269.   Defendant EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

270.   Defendant SLOANE denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

271.   Defendant ROBERT HADDEN denies violating the standard of care with regard to the care and treatment rendered to the patient he sexually assaulted in another related action (hereinafter "JANE DOE A") on February 7, 2012.

272.   Defendant COLUMBIA denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to "JANE DOE A" on February 7, 2012.

273.   Defendant TRUSTEES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

274.   Defendant CUCPS denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012

275.   Defendant NYPH denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

276.   Defendant CPMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

277.   Defendant CUMC denies that ROBERT HADDEN violated the standard of care with

regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

278.    Defendant PHPSO denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

279.    Defendant CCC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

280.    Defendant CCNP denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

281.    Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

282.    Defendant EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

283.    Defendant SLOANE denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

284.    Plaintiffs are informed, and believe, and on this basis state, that Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" benefited financially from retaining ROBERT HADDEN as an OBGYN at "CORP. ENTITIES"' hospitals, offices, and clinics by offering his services to COLUMBIA UNIVERSITY female patients, at those patients' expense. Plaintiffs are further informed and believe, and on this basis state, that Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" benefited financially from actively concealing the myriad complaints of sexual exploitation and abuse made by its female patients against ROBERT

HADDEN by protecting its own reputation and financial coffers. Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES'" deliberate and fraudulent concealment included, but was not limited to: paying ROBERT HADDEN a significant financial bonus which enabled him to quietly resign in 2012 after a criminal investigation revealed that ROBERT HADDEN routinely made lurid and sexually inappropriate remarks to female patients; kept a collection of pornography at his offices, had pornographic images and videos on his work computer system, hard drive, and internet browser cache; and had documented complaints against him lodged to Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" dating back over the course of more than two (2) decades. Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" paid ROBERT HADDEN this financial bonus and facilitated and enabled him to collect "disability benefits" in a deliberate attempt to conceal from the Plaintiffs, and the public at large, that ROBERT HADDEN is a serial sexual predator who the Defendants allowed to run rampant amongst female patients in need of basic gynecologic and obstetric care, and in order for COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES to try and avoid criminal consequences, civil liability and damage to its reputation.

285.    At all times relevant hereto, agents, servants, medical staff members, and/or employees of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" including Defendant ROBERT HADDEN, were acting in the course and scope of their authority, agency, service and/or employment for COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES".

286.    Beginning in the early 1990's, COLUMBIA UNIVERSITY, THE TRUSTEES OF

COLUMBIA UNIVERSITY, and CORP. ENTITIES began receiving reports from OBGYN patients and COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES'" own agents, servants, and/or employees regarding concerns about Defendant ROBERT HADDEN's conduct and purported gynecologic and obstetric "treatment" of his patients; nonetheless COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES failed to take any action in response to such complaints. COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" received numerous complaints of serious misconduct, including sexual misconduct by ROBERT HADDEN made to nursing supervisors and ROBERT HADDEN's supervisors and other Administrators employed by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES".

287.    Rather than addressing and properly investigating the complaints, including taking appropriate disciplinary action, reporting ROBERT HADDEN to criminal prosecutors, reporting ROBERT HADDEN to the State Medical Authorities, and/or terminating the employment of HADDEN, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", their agents, servants, and/or employees, kept the complaints secret to avoid negative publicity, despite their actual knowledge of such misconduct, so that for over twenty (20) years, defendant ROBERT HADDEN had unfettered access to female patients – many of them as young as 15 or 16 years of age.

288.    COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", as well as their agents, servants and/or employees, hid the complaints despite the fact that many of the complaints came directly from their own employees, medical personnel and staff, including nurses and medical assistants, who were physically present during the

examinations as "chaperones," and witnessed the sexual misconduct firsthand. Despite receiving years of serious complaints of significant misconduct about ROBERT HADDEN, including sexual misconduct, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, "CORP. ENTITIES" and their agents, servants and/or employees failed to take any meaningful action to address the complaints until they were finally forced to do so in August 2012.

289.    Upon information and belief, the complaints made to COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES and their agents, servants and/or employees included, but are not limited to: ROBERT HADDEN making gratuitous, suggestive comments about patients' bodies during gynecological examinations; touching patients' bodies in a manner that had no medical purpose; requiring patients to lie fully nude on the table during gynecological examinations; and making improper, inappropriate and sexual comments about their bodies and other comments of a sexual and/or prurient nature; performing prolonged and non-medically indicated breast examinations; performing serial and medically unnecessary vaginal examinations; performing serial and medially unnecessary PAP Smears; requiring patients to expose their naked bodies in non-medical, sexual, and compromising ways; posing patents by instructing patients strip naked and position themselves in non-medical, sexually deviant, and compromising ways; digitally penetrating patients in a non-medical manner for his own sexual gratification; sexually exploiting and abusing female patients; sexually exploiting and abusing female co-workers; and sexually exploiting and abusing female former co-workers.

290.    COLUMBIA UNIVERSITY's "Patient Bill of Rights" provides, *inter alia*, that patients have the right to:

"Receive considerate and respectful care in a clean and safe environment".

It further provides that patients have the right to:

"Receive treatment without discrimination as to race, color, religion, sex [gender]".

291.    At all times relevant hereto, Plaintiffs are, or were, female patients who sought medical, gynecologic and/or obstetric care through COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES health system and were patients of defendant ROBERT HADDEN during his tenure at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES. Plaintiffs had no reason to suspect Defendant ROBERT HADDEN was anything other than a competent and ethical physician.

292.    Knowing that Plaintiffs were trusting and vulnerable – and in many cases pregnant – Defendant ROBERT HADDEN used his position of authority to require Plaintiffs to fully disrobe for no reasonable medical purpose, engage in touching, fondling and groping of Plaintiffs' breasts, and other parts of their bodies, while making suggestive, inappropriate and improper comments, engage in nonconsensual vaginal penetration, nonconsensual sexual touching and fondling of the vaginal and genital region for the purpose of ROBERT HADDEN's own sexual arousal, sexual exploitation, sexual gratification, and/or sexual abuse. Defendant ROBERT HADDEN also made sexist, misogynistic, pejorative and sexually harassing comments to female patients at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES".

293.    Through his employment with COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", Defendant ROBERT HADDEN used his position of authority as a medical professional, and access granted by "CORP. ENTITIES", to perform countless nonconsensual, sexually exploitative and abusive "examinations" of female patients, their bodies, breasts, and genitalia under the guise of "medical treatment."

294.    Virtually none of the women ROBERT HADDEN targeted knew that what he was doing during the examinations was not proper protocol, and did not realize he was engaging in sexual

misconduct, sexually violating them, and/or taking advantage of them.

295.    Defendant ROBERT HADDEN carried out these acts without fully explaining the "treatment" or obtaining informed consent of Plaintiffs.

296.    All of Defendant ROBERT HADDEN's acts were conducted under the guise of providing medical care at COLUMBIA UNIVERSITY and "CORP. ENTITIES'" hospitals, offices and medical clinics.

297.    The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs negated their ability to reject the "treatment."

298.    Defendant ROBERT HADDEN used his position of trust and authority in an abusive manner causing Plaintiffs to suffer a variety of injuries including, but not limited to, sexual exploitation, sexual abuse, shame, mortification, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, loss of trust in the medical profession and in medical care providers, self-doubt, disgrace, loss of enjoyment of life and negative impacts on their ultimate career, professional prospects and interpersonal relationships.

299.    COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" and their agents, servants, and/or employees, gave ROBERT HADDEN access and authority to sexually abuse and exploit Plaintiffs and other patients of the within named defendants; but for the access and authority provided by Defendants, ROBERT HADDEN could not have abused Plaintiffs and countless other female patients. To wit, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", their agents, servants, and/or employees enabled ROBERT HADDEN to serially sexually abuse female patients for a period of two (2) decades upon the premises and clinics of defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP.

ENTITIES".

300.    Defendants were put on notice of ROBERT HADDEN's actions after receiving complaints from COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" employees, including nurses, chaperones, medical staff, and survivors concerning both the inappropriate commentary ROBERT HADDEN made and the disturbing sexual behavior toward patients as far back as the 1990's, and yet defendants took no action to protect their female patients for a period of over twenty (20) years.

301.    Upon information and belief, despite complaints to COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", and their agents, servants, employees and/or representatives, the complaints, reports, concerns and allegations went unaddressed in violation of reporting policies and procedures and in a manner that was wholly reckless, deliberately indifferent, and grossly negligent.

302.    Upon information and belief, because Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", their agents, servants and/or employees all failed to take action to investigate the complaints, or to take corrective action regarding ROBERT HADDEN's actions, Plaintiffs and other female patients were sexually assaulted, exploited, harassed, abused, and molested by Defendant ROBERT HADDEN through predatory grooming, unnecessary vaginal digital examinations, vaginal penetration, unnecessary and non-medical touching and groping of their breasts and other areas of their body, verbal sexual exploitation, physical sexual exploitation, psychological manipulation and abuse, and through sexually-suggestive, inappropriate, and gratuitous comments and statements about them, their lifestyles, their bodies, and their anatomies.

303.    Upon information and belief, in or around 1992 or 1993, complaints about ROBERT

HADDEN were made to supervisors at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", about ROBERT HADDEN's sexual abuse of a young female patient who he began digitally penetrating after a nurse chaperone left the examining room.

304.    In response to the report by the Chaperone, the Chaperone's supervisor directed the Chaperone to keep her mouth shut and just stay with her doctor and not let him get himself into trouble.

305.    Further, it became well known throughout COLUMBIA UNIVERSITY, "CORP. ENTITIES", and their offices, hospitals, clinics and medical centers that ROBERT HADDEN had a proclivity for sexually exploiting and abusing female patients when the chaperones would leave the room. This information was so widely discussed that it became a topic of conversation among employees of other departments including, but not limited to, Defendants' employee lunchrooms.

306.    At no time did Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" or their agents, servants and/or employees inform Plaintiffs, the public or any other patients of the concerns that led to Defendant ROBERT HADDEN being relieved from his duties at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" and his subsequent "retirement."

307.    Further, in an effort to "manage risk" COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants and/or employees, have contracted with lawyers and legal consultants in a surreptitious effort to obtain statements from witnesses and survivors of the sexual assaults committed by ROBERT HADDEN.

308.    Through this effort, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", their agents, servants and/or employees have accessed,

viewed, shared and illegally disclosed the names, identities, private contact information, and protected HIPAA information about the survivors - not with health providers and specialists in clinical crisis intervention - but with their lawyers, and their lawyers' legal staff, in order to try and obtain a tactical advantage over the sexual assault survivors in the courts and possibly the media.

309.    Further, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" have actively and intentionally lied to the plaintiffs herein, as well as all the other patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", and the public at large, by affirmatively stating to the patients and the Press that ROBERT HADDEN was on some kind of "medical leave". The truth of the matter is that ROBERT HADDEN is a perverted sexual predator who has serially sexually assaulted female patients on a daily basis for a period of twenty (20) years upon the premises of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", as well as their related hospitals, clinics, offices, and medical centers.

310.    ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as their related entities, clinics, offices, hospitals, and medical centers.

311.    Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, each Defendant was responsible, in some manner or capacity, for the occurrences herein stated, and that Plaintiffs' damages, as herein set-forth, were proximately caused by each and all of said Defendants.

312.   At all times mentioned herein, each and every Defendant was an agent, servant and/or employee of Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", inclusive, and/or was under their complete control and/or supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired with other Defendants and wrongdoers in carrying out the tortuous and unlawful activities described in this Complaint.

313.   Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division. To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

314.   Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES were the agents, servants and/or employees of each and every other Defendant. In doing the things hereinafter stated, Defendants and each of them, were acting within the course and scope of said work and alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

315.   Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF

COLUMBIA UNIVERSITY, and CORP. ENTITIES were the TRUSTEES, Partners, Servants, joint venturers, shareholders, contractors, and/or employees of each and every other Defendant, and the acts and omissions herein stated were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiffs.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY ALL PLAINTIFFS

316.   Plaintiffs are informed and believe, and on that basis state, that while Plaintiffs were female patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, that Defendants engaged in a pattern and practice of ignoring complaints, failing to investigate sexual harassment and abuse complaints about ROBERT HADDEN, deliberately concealing information from abuse victims and survivors, and contributed to a sexually hostile and exploitative environment on campus at Defendant COLUMBA UNIVERSITY, which is now known to have a culture of pervasive sexual misconduct and sexual abuse throughout its campus, schools, hospitals, medical clinics, academic departments, Administration, and Administrators including the Dean of Students.

317.   It is upon information, and therefore belief, that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have a long history and a systemic problem in failing to properly handle sexual harassment and sexual abuse allegations, contrary to their Federal mandates under Title IX. This pattern and practice was evidenced by, *inter alia,* the previous U.S. Department of Education investigations of Defendant COLUMBIA UNIVERSITY's handling of numerous sexual assault and rape cases, during which students and patients came forward to complain of Defendant COLUMBIA UNIVERSITY's gross

mishandling of those cases.

318.     Furthermore, Plaintiffs are informed and believe, and on that basis state, that the numerous complaints lodged against defendant COLUMBIA UNIVERSITY, its related CORP. ENTITIES, and their agents, servants and employees, including but not limited to ROBERT HADDEN, that were actively concealed by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", illustrate that Defendants had – and continues to have – a culture of ignoring, minimizing and sanitizing complaints about their sexual predator ROBERT HADDEN. Yet, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have inexplicably allowed ROBERT HADDEN  to sexually abuse women at their offices and premises, and since 2012 have enabled ROBERT HADDEN to obtain "disability coverage" and retain his retirement benefits.

319.     Notwithstanding the tone-deaf, if not obtuse, silence on these issues, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" continued to put female Patients directly in harms' way by enabling their resident-predator ROBERT HADDEN to sexually exploit and abuse female patients for over 20 years.

320.     Plaintiffs are informed and believe, and on that basis state, that Defendants knew, or should have known, of ROBERT HADDEN's propensity, disposition and proclivity to engage in sexual exploitation and misconduct with female patients as he sexually abused and molested Plaintiffs (and hundreds of other female COLUMBIA UNIVERSITY and their related "CORP. ENTITIES" patients), and knew of the probability that ROBERT HADDEN would assault, exploit and molest other patients with whom he came into contact, including but not limited to Plaintiffs. Moreover,

Plaintiffs are informed and believe that, the majority of the times that ROBERT HADDEN sexually abused a female patient at Defendant COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", an agent, servant and/or employee Chaperone of the defendants was present — witnessing the predatory grooming and sexual abuse — yet did nothing to intervene. Instead, before the patient was clothed, the Chaperone would just walk out of the room.

321.   Defendants failed to act in any kind of reasonable manner, and failed to implement reasonable and necessary safeguards to avoid acts of unlawful sexual conduct and abuse by ROBERT HADDEN in the future, including avoiding placement of HADDEN in a position where contact and interaction with vulnerable patients was an inherent part of his work. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" ignored, hid and suppressed all of the sexual misconduct that ROBERT HADDEN had engaged in.

322.   Plaintiffs are informed and believe, and on that basis state, that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" were apprised, knew, or should have known, and/or were put on notice of ROBERT HADDEN's past sexual abuse and rampant sexual exploitation of female patients, past complaints and/or investigations, and Defendant ROBERT HADDEN's propensity, proclivity and disposition to engage in such unlawful sexual exploitation and abuse of female patients, such that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" knew, or should have known, that ROBERT HADDEN would commit wrongful sexual acts with female patients, including Plaintiffs.

323.   Plaintiffs are informed and believe, and on that basis state, that personnel and/or employment records and other records of Defendants COLUMBIA UNIVERSITY, THE

TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", reflect numerous incidents of inappropriate sexual contact and conduct with patients by ROBERT HADDEN, and other professionals, employees, assistants, agents, supervisors and others, on the physical premises of such Defendants. Based on these records, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", knew and/or should have known of ROBERT HADDEN's history of sexual abuse, past claims and/or past investigations, and his propensity and disposition to engage in unlawful activity and unlawful sexual activity with patients, such that Defendants knew, or should have known, that ROBERT HADDEN would commit wrongful sexual acts with those patients, including Plaintiffs.

324.    The sexual exploitation and abuse of female patients is a foreseeable act which was known to Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES". It is also a foreseeable act which is known in medicine and by medical practitioners worldwide. Because of how well known the risk of sexual abuse is, the governing bodies in general, and COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" in particular, have enacted Rules concerning the provision of Chaperones at their hospitals, offices, and clinics which provide gynecologic and obstetric services. Thus, foreseeability is not an issue. The risk to be perceived, does indeed, define the duty to obey. The duty that COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have are to provide a safe, professional, medical environment where female patients can receive gynecologic and obstetric care and treatment. Any suggestion by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" that they

didn't know of ROBERT HADDEN's abuse has not only proven to be untrue, it is also an admission that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" failed in their duty to take the steps necessary to ensure that a safe, professional, medical environment for female gynecology and obstetrical patients was being provided.

325.    Because of the relationship between Plaintiffs and Defendants, Defendants had an obligation, responsibility and duty, under the law, not to hide material facts and information about ROBERT HADDEN's past, and his deviant sexual behavior and propensities. Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard patients who were reasonably likely to come in contact with ROBERT HADDEN — including, at a minimum, terminating ROBERT HADDEN's employment and reporting him to the Police and the New York State Medical Board. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril that ultimately damaged Plaintiffs and hundreds of other female COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" Patients.

326.    Pursuant to New York Social Services Law, Article 6, Title 6, and Section 413, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees are "mandated reporters" of childhood sexual abuse. As such, any healthcare practitioner employed in a healthcare facility, clinic, physician's office, hospital local or state public health department, or a clinic or other type of facility, operated by a local or state public health department who, in his/her professional capacity or within the scope of his/her employment, provides medical services to a minor who he/she knows, or reasonably suspects, has been sexually exploited, or sexually

abused by an adult perpetrator, must report to a local law enforcement agency by telephone, immediately or as soon as is practicable, and also by written report after receiving the information regarding the perpetrator of the abuse. By and through its health practitioner agents, servants, and/or employees - and Defendant ROBERT HADDEN himself - Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees violated the foregoing laws of the State of New York by failing to report the sexual exploitation and sexual abuse committed by ROBERT HADDEN upon a minor to local law enforcement each time it witnessed, perpetrated, and/or reports were received of ROBERT HADDEN committing a sexual assault or battery upon a minor female patient. Furthermore, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees have deliberately attempted to conceal their recurring failures to comply with State and Federal Law by publicly and falsely claiming that it had no legal duty to report ROBERT HADDEN's sexually abusive behavior to law enforcement, that ROBERT HADDEN had/has acted in a medically appropriate manner at times, and that ROBERT HADDEN was out on "medical leave" beginning in or around August 2012.

327.    Plaintiffs are informed and believe, and on that basis state, that as part of Defendants' conspiratorial and fraudulent attempt to hide ROBERT HADDEN's propensity to sexually abuse and molest female patients, and minor female patients, from public scrutiny and criminal investigation, that Defendants implemented various measures designed to make ROBERT HADDEN's conduct harder to detect and served to ensure that other patients and minors with whom he came into contact, such as Plaintiffs, would be sexually abused, including:

- Permitting ROBERT HADDEN to remain in a position of authority and trust after Defendants knew or should have known that he sexually exploited and abused female patients;

- Placing ROBERT HADDEN in a separate and secluded environment at Defendant COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and their offices, hospitals, and clinics, which granted him unfettered access and authority over patients as purported to conduct extremely sensitive obstetric and gynecologic treatment, thereby allowing ROBERT HADDEN to physically and sexually interact with and exploit the female patients, including each of the Plaintiffs herein;

- Moving ROBERT HADDEN from one clinic to another every few years as complaints of his sexual exploitation and abuse mounted during each new move;

- Failing to disclose and actively concealing ROBERT HADDEN's prior record of misconduct, sexual abuse, sexual exploitation, harassment and molestation and his propensity to commit such acts towards patients, from plaintiffs herein, defendants' other patients, the public at large, and law enforcement;

- Enabling a known predator such as ROBERT HADDEN to have unfettered and un-controlled access to female patients, including the Plaintiffs herein;

- Enabling pedophilia and sexual abuse of minors;

- Holding out ROBERT HADDEN to Plaintiffs, other patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", the alumni members of COLUMBIA UNIVERSITY, and the public at large as a trustworthy and honest person of high ethical and moral standards who was capable and worthy of being granted unsupervised access to female patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

- Failing to investigate and otherwise confirm or deny such facts about ROBERT HADDEN, including prior complaints, and/or claims and investigations of sexual exploitation and abuse;

- Falsely, and fraudulently, denying the truth surrounding ROBERT HADDEN's known sexual exploitation and abuse of female patients in a concerted and well scripted effort to actively dissuade women from filing lawsuits against COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees.

- Failing to inform, and actively concealing from Plaintiffs, other patients, the State of New York Office of Professional Medical Conduct, and law enforcement officials,  the fact that Plaintiffs and other patients were or may have been sexually abused, exploited, harassed and/or molested, after Defendants knew or should have known that ROBERT HADDEN may have/and had sexually exploited and abused Plaintiffs or others, thereby enabling Plaintiffs to continue to be endangered and sexually exploited, abused, harassed, molested, and/or creating the circumstance where Plaintiffs and others were less likely to receive proper medical and psychological treatment, thus exacerbating the harm to Plaintiffs;

- Holding out ROBERT HADDEN to Plaintiffs and to the community as being a person in good standing, trustworthy, knowledgeable and authoritative;

- Cloaking ROBERT HADDEN's sexual misconduct with patients within the facade of normalcy, thereby disguising the nature of his sexual exploitation and abuse;

- Failing to take reasonable steps and to implement safeguards to avoid acts of unlawful sexual conduct by ROBERT HADDEN such as avoiding placement of ROBERT HADDEN in functions and/or environments in which his intimate contact with female patients was inherent;

- Failing to put in place a system,  or procedure, to supervise or monitor physicians (and specifically ROBERT HADDEN), chaperones, and agents to ensure they do not molest and/or abuse patients in Defendants' care, and that they further report all reasonable suspicions of sexual assault and battery to law enforcement pursuant to the mandatory reporter laws.

328.   By his association and professional relationship within the Defendants' Corp. Entities,

Defendant ROBERT HADDEN attained a position of authority and influence over Plaintiffs and others. Defendants' conduct created a situation of peril that was not, and could not, be appreciated by Plaintiffs. By virtue of Defendants' exploitative, conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and hide ROBERT HADDEN's past and present conduct from the COLUMBIA UNIVERSITY community, the Patients of Defendants and their Corp. Entities, the public at large, the State Medical Board, and law enforcement, Defendants allowed ROBERT HADDEN to remain in a position of influence and authority where his unsupervised, and/or negligently supervised, conduct with patients made the exploitation, molestation and abuse of female patients, including the Plaintiffs herein, possible.

329.    Through his position within the Defendants' institutions and clinics, Defendants and ROBERT HADDEN demanded and required that Plaintiffs respect ROBERT HADDEN in his position as a OBGYN physician for Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

330.    The sexual harassment, exploitation and abuse of Plaintiffs by HADDEN, outlined herein, took place while ROBERT HADDEN was an OBGYN physician employed, retained, managed, and supervised by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and Plaintiffs were patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", offices, hospitals, and clinics while ROBERT HADDEN was serving as an agent, servant, and employee of Defendants in his capacity as a physician and faculty member.

a.      In his capacity as a physician and faculty member with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN was given custody, control, supervision, and authority over patients, including Plaintiffs. ROBERT HADDEN used this position of authority to groom and

exploit female patients, to concede to his prurient sexual demands, using his authority and position of trust to exploit and manipulate them physically, sexually, and emotionally;

b.      Plaintiffs were patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" in or around the early 1990's through 2012, during which time, Plaintiffs came into contact with ROBERT HADDEN at the premises, hospitals, offices, and clinics, of defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES". Plaintiffs are informed and believe ROBERT HADDEN would use the guise of obstetric and gynecologic care and treatment to groom female patients, and normalize intimate, inappropriate, exploitative and sexually abusive contact with Plaintiffs. During this period, Plaintiffs were patients under ROBERT HADDEN's direct supervision and control.

c.      Plaintiffs are informed and believe ROBERT HADDEN's physical and sexual abuse of Plaintiffs commenced in or around 1992 and continued through in or around 2012. During this period, Plaintiffs were patients under ROBERT HADDEN's, and Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES"'s direct supervision and control. Using his position as a physician, ROBERT HADDEN would interact with Plaintiffs under the guise of providing them care and treatments necessary for their health and well-being. Under these circumstances, ROBERT HADDEN would, among other abusive acts, force Plaintiffs to strip naked, grope their bare breasts and digitally penetrate their vaginas, in the presence of other medical professional staff, for non-medical reasons. ROBERT HADDEN's sexual abuse, exploitation, molestation, and harassment of Plaintiffs occurred on the premises of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" offices, clinics and hospitals.

d.      During these occurrences, ROBERT HADDEN groped, penetrated, verbally violated, manipulated, groomed and otherwise sexually abused and exploited Plaintiffs - under the guise of performing medical procedures - for ROBERT HADDEN's own sexual gratification and prurient interests. ROBERT HADDEN would have the Plaintiffs remove all of their clothes and lay on the treatment table naked. ROBERT HADDEN would then perform

his acts of sexual abuse upon Plaintiffs, in front of another medical professionals employed as chaperones by defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

e.      ROBERT HADDEN's sexual abuse and harassment of Plaintiffs was done for ROBERT HADDEN's personal sexual gratification, and it annoyed, disturbed, exploited, irritated, and offended Plaintiffs as it would have any reasonable person. Plaintiffs did not, and could not, consent to the sexual abuse, exploitation and harassment by ROBERT HADDEN.

331.    As set forth more fully herein above, ROBERT HADDEN did sexually abuse, exploit, harass and molest Plaintiffs, who were students and patients at the time of the acts at issue. Plaintiffs are informed and believe, and on that basis state, that such conduct by ROBERT HADDEN was based upon Plaintiffs' gender, and was done for ROBERT HADDEN's own sexual gratification. These actions upon Plaintiffs were performed by ROBERT HADDEN without the free consent of Plaintiffs.

332.    During the period Plaintiffs were being sexually exploited, abused and harassed by ROBERT HADDEN, Defendants had the authority and ability to prevent such abuse by removing ROBERT HADDEN from his position as an obstetrical and gynecological physician at Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES". They failed to do so, allowing the abuse to occur and to continue unabated. Plaintiffs are informed and believe, and on that basis state, that this failure was a part of Defendants' conspiratorial plan and arrangement to conceal ROBERT HADDEN's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of doctor-sexual-abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authorities including law enforcement and the New York State Medical Board, Office of Professional Medical Conduct. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants provided

by alumni and other donors, while fostering an environment where such abuse could, would, and has continued to occur.

333.    As a direct result of the sexual harassment and abuse of Plaintiffs by ROBERT HADDEN, Plaintiffs have had difficulty in meaningfully interacting with others, including those in positions of authority over Plaintiffs including other physicians, gynecologists, athletic supervisors, professors, superiors at work, and other men in general. Plaintiffs have been limited in their ability to meaningfully interact with others due to the trauma of this sexual exploitation and abuse. This inability to interact creates a conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual abuse, exploitation and molestation by ROBERT HADDEN, Plaintiffs suffered immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, eating disorders, anxiety, and nervousness.

334.    As a direct and proximate result of Defendants' tortious acts, omissions, fraudulent concealment, wrongful conduct and breaches of their duties, Plaintiffs' employment and professional development have been adversely affected. Plaintiffs have lost wages and will continue to lose wages in an amount to be determined at trial. Plaintiffs have suffered substantial economic injury, all to Plaintiffs' general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

335.    As a further direct and proximate result of Defendants' wrongful actions, as herein stated, Plaintiffs have been injured and/or damaged in their health, strength and activity. Plaintiffs have sustained permanent and continuing injury to their nervous systems and persons, which has caused and continues to cause great mental, physical, emotional and nervous pain, suffering, fright, upset,

grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

336.    As is set forth herein, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN have failed to uphold numerous mandatory duties required of them by State and Federal Law, as well as their own internal written policies and procedures, including but not limited to:

- Duty of health care professionals to report reasonable suspicions of sexual abuse to law enforcement;
- Duty to use reasonable care to protect participants and members from known or foreseeable dangers;
- Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, Section 1983, Title IX, and the 14th Amendment of the United States Constitution;
- Duty to enforce policies and procedures that are not in contravention of the Federal Civil Rights Act, Section 1983, Title IX, and the 14th Amendment of the United States Constitution;
- Duty to protect participants and patients and members and staff, and provide adequate supervision;
- Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsibly and respectfully towards participants and members;
- Duty to properly train staff so that they are aware of their individual responsibilities for creating and maintaining a safe environment;
- Duty to review the criminal history of applicants and current employees;
- Duty to provide diligent supervision over patients;
- Duty to act promptly and diligently and not ignore or minimize problems;
- Duty to report suspected incidents of sexual abuse;

337.    Defendants and each of them had and have a duty to protect patients, including Plaintiffs.

Defendants were required to, and failed, to provide adequate supervision, and failed to be properly vigilant in ensuring that supervision was sufficient at defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" offices, hospitals, and clinics to protect the safety of Plaintiffs and others.

338.     Despite having a duty to do so, Defendants failed to adequately train and supervise all staff to create a positive and safe environment, specifically including training to perceive, report prevent and/or stop inappropriate sexual exploitation and conduct by other members of the staff, specifically including ROBERT HADDEN and female patients.

339.     Defendants failed to enforce their own rules and regulations designed to protect the health and safety of its patients and Plaintiffs. Further, they failed to adopt and implement safety rules, policies and procedures designed to protect patients, such as Plaintiffs, from the sexually exploitive and abusive acts of their agents, servants, and employees such as ROBERT HADDEN and the chaperones who continued to leave the rooms knowing full well of the sexual exploitation and abuse that was being perpetrated by ROBERT HADDEN.

340.     In subjecting Plaintiffs to the wrongful treatment herein described, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' Rights, so as to constitute malice and/or oppression. Plaintiffs are informed, and on that basis state, that specifically, the Defendants acted in concert, and under their authority both as an educational institution and medical provider, with reckless disregard for the concern of the students and patients in their charge, in order to further financially benefit its businesses's growth. The Defendants' action are intentional and create an environment that harbors molesters, puts its vulnerable patients at risk of harm, ignores clear warning signs and

their duties to report sexual abusers and molesters in their ranks, to maintain a facade of normalcy, in order to maintain its funding, and donations, and provide further financial growth of defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", on the International level. The safety of the patients that were entrusted to defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and was compromised due to Defendants' collective desire to maintain the *status quo* of the defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" organizations, to continue to enjoy the financial support of their alumni, and avoid any public scrutiny of their long-standing and pervasive misconduct. Plaintiffs are informed, and on that basis state, that these willful, exploitative, malicious, and/or oppressive acts, as stated herein above, were ratified by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and the Officers, Directors, Administrators, and/or managing agents of the Defendants. Plaintiffs are, therefore, entitled to recover punitive damages, in an amount to be determined by the court, against Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES".

341.    At all times relevant herein, Plaintiff and other members of the Class are or were young women who sought gynecological care through the COLUMBIA student health system and were patients of defendant Hadden during his tenure at COLUMBIA. Plaintiff and other members of the Class had no reason to suspect Defendant Hadden was anything other than a competent and ethical physician.

342.    Knowing that Plaintiff and other members of the Class were trusting and vulnerable,

Defendant Hadden used his position of authority to subject Plaintiff and other members of the Class to inappropriate touching of Plaintiff and Class members' bodies. Defendant Hadden also made suggestive and improper comments to Plaintiff and other members of the Class, and engaged in nonconsensual sexual touching and fondling for the purpose of sexual arousal, sexual gratification, and/or sexual abuse.

343.    Through his position with COLUMBIA, Defendant Hadden used his position of authority as a medical professional to take hundreds of nonconsensual and medically unwarranted photographs of female genitalia under the guise of medical "treatment."

344.    Upon information and belief, Defendant Hadden particularly targeted young women, many of whom were were frequently unfamiliar with the nature of gynecological examinations as a result of their youth, inexperience, and/or cultural background. Many of these young women did not know that what Hadden was doing during the examinations was not proper protocol and did not realize he was engaging in sexual misconduct, sexually violating them and/or taking advantage of them.

345.    Defendant Hadden carried out these acts without fully explaining the "treatment" or obtaining informed consent of Plaintiff and other members of the Class.

346.    All of Defendant Hadden's acts were conducted under the guise of providing medical care.

347.    The failure to give proper notice or to obtain consent for the purported "treatment" from Class Plaintiffs robbed them of the opportunity to reject the "treatment."

348.    Upon information and belief, COLUMBIA Defendants were also put on notice of Defendant Hadden's actions after receiving complaints from COLUMBIA employees, including nurses, medical staff, students and chaperones concerning both the photographs of female genitalia and the disturbing sexual behavior toward patients.

349.    Upon information and belief, despite complaints to COLUMBIA representatives, the concerns and allegations went unaddressed in violation of reporting policies and procedures and in a manner that was reckless, deliberately indifferent, and grossly negligent.

350.    Upon information and belief, because COLUMBIA took no action to investigate the complaints and took no corrective action regarding Hadden's actions, Plaintiff and other members of the Class were sexually harassed by Defendant Hadden by unnecessary and non-medical touching areas of their body, and by sexual comments and statements.

351.    Upon information and belief, Defendant Hadden retired after reaching a confidential settlement with COLUMBIA.

352.    Defendant COLUMBIA never informed Plaintiff, the public or any other students or patients that Defendant was being relieved from his duties at COLUMBIA and his subsequent "retirement."

## STATUTES OF LIMITATIONS ARE TOLLED

353.    The conduct underlying the various causes of action set forth herein were committed at different times.

354.    Upon information and belief, Defendants and their attorneys have violated each of the Plaintiffs' privacy protections under New York State law by illegally accessing Plaintiff's private and protected medical records without their authorization or consent. Further, Defendants have caused, and are continuing to cause, Plaintiffs to endure mental and emotional pain, suffering, and duress as a result of Defendants' refusal to issue letters permitting the removal of ROBERT HADDEN's name from the birth certificates of their children. The presence of the name of sexual felon ROBERT HADDEN - who sexually assaulted each of the women herein - on the birth certificates of Plaintiffs' minor children is repugnant to the senses and must be removed. Defendants' abject refusal to issue a letter which would permit Plaintiffs to remove ROBERT

94

HADDEN's name from the birth certificates is an act of intimidation, malice, and intentional wrongdoing which is ongoing. Thus Plaintiffs' claims for damages as to all these acts and omissions are timely.

355. Further, Plaintiffs were each sexually abused by ROBERT HADDEN upon Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related CORP. ENTITIES' campuses, hospitals, offices, and medical clinics from in or around 1992 to in or about August 2012, while Plaintiffs were patients of the within named Defendants, their agents, servants, and/or employees.

356. The sexual abuse that each Plaintiff endured which was committed by ROBERT HADDEN, was wholly enabled by COLUMBIA UNIVERSITY, THE TRUSTEES ODF COLUMBIA UNIVERSITY, CORP. ENTITIES, and their agents, servants, and/or employees. In each of these cases, a chaperone employed by Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES" witnessed the abuse and did nothing to intervene.

357. In a concerted and well- orchestrated effort, Defendants actively set out to coach and train its employees on the importance of concealing and suppressing the multitude of complaints about ROBERT HADDEN's sexually abusive behavior. Such efforts were specifically designed to deceive Plaintiffs into believing that ROBERT HADDEN's sexual exploitation and abuse was a form of "legitimate medical treatment".

358. Indeed, each of the Plaintiffs, and countless other patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES' have tried to report, and have actually reported, ROBERT HADDEN's misconduct to defendants and their agents. Yet, each plaintiff was induced to believe that their complaints were without merit.

In essence, Plaintiffs' were duped, lied to, and told various false stories by Defendants such as ROBERT HADDEN is "just old-school", "didn't mean it that way", is "out on medical leave right now", "You're the only person who has ever said anything like that, so I'm sure it's not true" and "that's just his way of doing things". Even within COLUMBIA UNIVERSITY and CORP. ENTITIES, the Chaperones who tried to report were told "Just stay with your doctor and don't let him get himself in trouble." Defendants' massive coverups and overt efforts to convince Plaintiffs that ROBERT HADDEN's conduct was somehow acceptable was intentionally designed to confuse and mislead plaintiffs who were sexually abused by ROBERT HADDEN.

359.    All of said statement, and more, which were made by Defendants were knowingly false and cleverly designed to get the Plaintiffs to forbear in filing a formal Complaint against defendants. In furtherance of the cover-ups, no one from Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" has ever - to this day - contacted Plaintiffs, or any other patients of ROBERT HADDEN, to inform them that ROBERT HADDEN's actions were inappropriate, illegal, and abusive.

360.    Upon information and belief, in or around August of 2012, Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" began paying defendant ROBERT HADDEN financial compensation in exchange for his quiet resignation or medical leave, in order to continue to conceal ROBERT HADDEN's sexually abusive nature from the public, other patients, and specifically the Plaintiffs herein. Defendants' actions are intentionally designed to insulate itself from both civil liability and a criminal investigation.

361.    Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiffs were induced to not file a complaint earlier. Because defendants have

fraudulently induced Plaintiffs to forbear in filing a formal complaint, each of Plaintiff's statute of limitations has been tolled, and Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" are each equitably estopped from asserting the statute of limitations as a defense.

362.    Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" acted wrongfully in ignoring and actively concealing the myriad of complaints of sexual misconduct lodged against ROBERT HADDEN, and further breached numerous mandatory duties owed to Plaintiffs by holding ROBERT HADDEN out as a trusted, safe, and legitimate medical professional, and failing to warn Plaintiffs of ROBERT HADDEN's proclivity to sexually abuse young female patients. Moreover, Plaintiffs were coerced into not talking about the abusive acts they endured by the threatening and intimidating actions of ROBERT HADDEN and CORP. ENTITIES' nurse Chaperones — who placed them under duress and also in imminent fear — and only came forward once the coercive nature of his acts subsided, due to the media's revelation of ROBERT HADDEN's pattern of misconduct and the subsequent police investigation allowing such women, including Plaintiffs, to come forward without fear of retribution by Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

363.    Furthermore, Plaintiffs were led to believe that ROBERT HADDEN's sexual abuse was not, in fact, sexual abuse, but rather was legitimate obstetrical and gynecological treatment, due to the fact that ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES's Chaperones witnessed the sexual exploitation and abuse yet did nothing to intervene. Many of the Plaintiffs were young

women at the time they were sexually abused by ROBERT HADDEN, and for some of Plaintiffs, their appointments with ROBERT HADDEN were their first visits to a gynecologist or obstetrician, such that they had no prior experiences of legitimate OBGYN examinations to compare ROBERT HADDEN's purported treatments to.

364.    Plaintiffs herein were not, and are not, clinical medical professionals and had no specialized or relevant medical training, and thus did not, and could not, have reasonably discovered their abuse at an earlier date than they did. As such, they were blamelessly ignorant of the true facts related to their abuse until it was revealed many years later after ROBERT HADDEN entered his guilty pleas in Criminal Court, when the allegations of sexual misconduct against ROBERT HADDEN received some media attention, that Plaintiffs knew, or had reason to know, that their claims against Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related CORP. ENTITIES had accrued. Thus, the Plaintiffs' claims have not accrued as defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES continue to fraudulently deny any kind of wrongdoing as to any of women that ROBERT HADDEN sexually exploited and abused - including those who ROBERT HADDEN pled guilty to abusing.

365.    For several months Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, and ROBERT HADDEN have been affirmatively and directly asking plaintiffs to forbear in filing this complaint and have offered to try to negotiate a private settlement in lieu of filing a formal legal action.

366.    Instead of making a good-faith, bona fide effort to compensate the Plaintiffs herein, enact and implement the necessary changes to protect other female patients going forward, and resolve these cases without filing a formal action, COLUMBIA, its TRUSTEES, and CORP. ENTITIES

have only compounded the injuries inflicted upon these women by continuing to lie to them in an ongoing effort to prevent the women from filing a formal complaint. Only now has it now become clear that COLUMBIA's false representations - and direct instructions to forbear in filing the additional complaints - were an intentional and premeditated act by Columbia in its ongoing campaign to induce plaintiffs to not file their formal complaints in court.

367.    Because of the affirmative and intentionally false statements by CORP. ENTITIES about the propriety of the "medical treatment" being rendered by ROBERT HADDEN; the knowingly false statements to Plaintiffs that what ROBERT HADDEN was doing to Plaintiffs wasn't an act of doctor sexual abuse; the knowingly false statements that what ROBERT HADDEN was doing was some form of legitimate medical treatment — or on account of ROBERT HADDEN simply being an "old-school" doctor; the knowingly false statements to Plaintiffs that ROBERT HADDEN was no longer at defendants offices because he was out on "medical disability"; the nurse Chaperones' active and continuing approval of the exploitative and abusive conduct being committed by ROBERT HADDEN; CORP. ENTITIES' ongoing, direct solicitations of Plaintiffs for financial donations to their institution — both during and following ROBERT HADDEN's criminal prosecution and conviction for doctor-sexual; COLUMBIA UNIVERSITY Law School's (CAPI) propagandized audit of the Manhattan District Attorney's campaign finances, which wholly failed to reference the fact that COLUMBIA's own doctor was part of the public outrage over the District Attorney's failure to prosecute affluent white-men whose lawyers donate money to the District Attorney's re-election campaign; Co-Defendant THE NEW YORK AND PRESBYTERIAN HOSPITAL's award-winning advertising campaign that blanketed the City of New York while ROBERT HADDEN was under criminal investigation for doctor-sexual abuse — that touted the "Amazing Things" happening at their institutions — which was designed to

99

create subterfuge and further convince up to 30,000 women that they were not sexually abused by ROBERT HADDEN; and Defendants' most recent efforts to get plaintiffs to continue to forbear in filing a formal Complaint by encouraging a meeting to discuss both financial remuneration and the enactment of institution-wide policy changes to help prevent doctor-sexual abuse; defendants should therefore be legally estopped from asserting the statute of limitations as a defense.

368.    Further, under CPLR § 215(8) the civil statute of limitations is tolled and doesn't start to run until the conclusion of a criminal action against the defendant. The resolution of Hadden's original criminal proceeding resulted in ROBERT HADDEN's felony conviction in the Spring of 2016, and consisted of the same enabling, aiding, abetting, sexual exploitation, sexual abuse and institutional cover-up that gives rise to the cases herein. While there is no specific time stated in CPLR § 215(8), the statute states that there is "at least" one year to file a civil case following the resolution of the criminal action. The actual statutes for each survivor's claim varies and are based on a different factors including the actual, prevailing, civil statute of limitations for their particular claim. In this case, plaintiffs have asserted claims for various forms of fraud, gender motivated violence, sexual assault, and rape — which at a minimum have a three (3) year statutes under negligence; an action under the Gender Motivated Violence Act which has a seven (7) year statute of limitation; as well as Rape and Criminal Sexual Act in the First Degree which has no statute of limitations in New York. Since the resolution of the original criminal action, each of the plaintiffs herein are now involved in a new criminal prosecution, the particulars of which cannot be disclosed in the court documents. However, to the extent it is needed, your affirmation and the plaintiffs are willing to request permission to appear for separate, in-camera, interviews with the court. Therefore, the civil statute of limitations should be tolled pending the resolution of the new criminal cases.

369.    Further, plaintiffs have been physically, mentally and emotionally traumatized by defendants' conduct, sexual exploitation and abuse, and have lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

370.    As such, the statute of limitations is tolled, and defendants are estopped from asserting the defense of a statute of limitation.

**FIRST CAUSE OF ACTION**
**Title IX 20 U.S.C. § 1681**

371.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

372.    Title IX of the Education Amendments Act of 1972 states, **"No person in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..."** 20 U.S.C. § 1681, *et seq.*

373.    Plaintiffs and members of the Class are "persons" under Title IX.   COLUMBIA UNIVERSITY and/or its related CORP. ENTITIES receive federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq*.

374.    COLUMBIA UNIVERSITY and CORP. ENTITIES are required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

375.    ROBERT HADDEN's conduct described above constitutes sexual harassment, sexual abuse, and sexual assault, and constitutes sex discrimination under Title IX.

376.    The COLUMBIA UNIVERSITY and CORP. ENTITIES Defendants were on notice of ROBERT HADDEN's conduct as described above. The COLUMBIA UNIVERSITY and CORP. ENTITIES Defendants nonetheless failed to carry out their duties, responsibilities and/or obligations to investigate and take corrective and mandatory action under Title IX. As a direct and

proximate result of Defendants' actions and/or inactions, Plaintiffs and members of the Class were damaged.

## SECOND CAUSE OF ACTION
## COMMITTING AND ENABLING GENDER VIOLENCE

377.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

378.    ROBERT HADDEN's acts of misconduct committed against Plaintiffs, as set-forth herein, including the sexual harassment, exploitation, molestation and abuse of the Plaintiffs constitutes gender-violence and a form of sex discrimination in that one or more of ROBERT HADDEN's acts would constitute a criminal offense under both Federal and New York State Law that has as an element of the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

379.    ROBERT HADDEN's acts committed against Plaintiffs, as set-forth herein, including the sexual harassment, exploitation, molestation and abuse of the Plaintiffs constitute gender-violence and a form of sex discrimination, and racial discrimination, in that ROBERT HADDEN's conduct caused a physical intrusion or physical invasion of a sexual nature upon Plaintiffs under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

380.    Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL;   COLUMBIA   PRESBYTERIAN   MEDICAL   CENTER;   COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF

PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., knew not only of ROBERT HADDEN's propensity to commit such acts, but also enabled ROBERT HADDEN to commit those act by providing ROBERT HADDEN with access to the COLUMBIA and CORP. ENTITIES' female students and patients, as well bestowing upon him authority over those patients. By ignoring, dismissing, and failing to take any action against ROBERT HADDEN such as firing him, reporting him to the police, and/or reporting him to the New York State Medical Board, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., enabled the abuse of hundreds of female COLUMBIA UNIVERSITY and CORP. ENTITIES' patients, including the Plaintiffs herein.

381.    As a proximate result of ROBERT HADDEN's acts, as well as Defendants' enabling of those acts over a period of greater than 20-years, Plaintiffs are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief against all Defendants. Plaintiffs are also entitled to an award of attorney's fees and costs against all Defendants.

382.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all

defendants.

### THIRD CAUSE OF ACTION
### COMMITTING AND ENABLING SEXUAL HARASSMENT, PREDATORY GROOMING, SEXUAL EXPLOITATION AND SEXUAL ABUSE

383.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

384.    ROBERT HADDEN, in sexually harassing, grooming, exploiting and abusing the Plaintiffs and others as herein set-forth, including intending to subject Plaintiffs to numerous instances of sexual exploitation, abuse and molestation during Plaintiffs' time with Defendants at Defendants' COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning in or around 1992, and lasting for the duration of Plaintiffs' tenures with these Defendants through in or around August of 2012 including, but not limited to, instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas and breasts, all while ROBERT HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them were intended to cause harmful or offensive contact with Plaintiffs' persons, or intended to put Plaintiffs in imminent apprehension of such contact.

385.    In doing the things herein stated, Plaintiffs were put in imminent apprehension of a harmful or offensive contact by ROBERT HADDEN and actually believed ROBERT HADDEN had the ability to make harmful or offensive contact with Plaintiffs' persons.

386.    Plaintiffs did not, and could not, consent to ROBERT HADDEN's intended harmful or offensive contact with Plaintiffs' persons, or intent to put Plaintiffs in imminent apprehension of such contact.

387.    In doing the things herein stated, ROBERT HADDEN and Defendants violated Plaintiffs' Rights of protection from bodily restraint or harm, and from personal insult. In doing the things

104

herein stated, ROBERT HADDEN violated his duty to abstain from injuring the person of Plaintiffs or infringing upon their rights.

388.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

389.    Plaintiffs are informed and based thereon state that the conduct of Defendants was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

390.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## FOURTH CAUSE OF ACTION
### COMMITTING AND ENABLING CRIMINAL and CIVIL SEXUAL BATTERY

391.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

392.    During Plaintiffs' time as patients with Defendants COLUMBIA UNIVERSITY, TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", ROBERT HADDEN intentionally, recklessly and wantonly did acts which were intended to, and did result in harmful

and offensive contact with intimate parts of Plaintiffs' persons, including but not limited to being subjected to numerous instances of sexual abuse and sexual exploitation by ROBERT HADDEN, during Plaintiffs' time with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning on or around 1992, and lasting for the duration of his tenure with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" to in or around 2012, including but not limited to instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas, buttocks, and breasts, all while ROBERT HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them.

393.   ROBERT HADDEN did the aforementioned acts with the intent to cause harmful or offensive contact with intimate parts of Plaintiffs' persons, and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' persons that would offend a reasonable sense of personal dignity.

394.   Because of ROBERT HADDEN's position of status and authority over Plaintiffs, and Plaintiffs' mental and emotional states, and Plaintiffs' ages, Plaintiffs did not give meaningful consent, and could not consent, to such acts.

395.   As a direct, legal and proximate result of the acts of ROBERT HADDEN, Plaintiffs sustained serious and permanent injuries to their persons, all of his damage in an amount to be shown according to proof and within the jurisdiction of the Court.

396.   As a direct result of the sexual abuse by ROBERT HADDEN, Plaintiffs have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over Plaintiffs including teachers, and supervisors, and in intimate, confidential and familial relationships, due to the trauma of the sexual abuse inflicted upon them by Defendants. This

inability to interact creates conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual exploitation, abuse and molestation by ROBERT HADDEN, Plaintiffs suffered immensely, including, but not limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, nervousness, and self-medicating behavior.

397.    Plaintiffs are informed and based thereon state that the conduct of ROBERT HADDEN was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of Plaintiffs' right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against ROBERT HADDEN in an amount appropriate to punish and set an example of ROBERT HADDEN and send a message to others similarly situated that they must avoid doing similar things.

398.    Further, defendant ROBERT HADDEN was permitted and enabled to commit these criminal acts as a direct and proximate result of the negligence, carelessness, and wanton recklessness of Defendant "CORP. ENTITIES" and that of their agents, servants and/or employees through their failure to timely and properly train, supervise, monitor, discipline, terminate, and report ROBERT HADDEN to the Criminal Authorities and the New York State Office of Professional Medical Conduct — as well as their failure to take any disciplinary action against ROBERT HADDEN internally.

399.    As a direct and proximate result of the aforementioned sexual batteries, Plaintiffs sustained in the past, and will sustain in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

400.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## FIFTH CAUSE OF ACTION
## VIOLATION OF NY CPL §§ 130.00-130.96 SEX OFFENSES AND
## VIOLATION OF NY CPLR § 214-g, CHILD VICTIM ACT

401.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

402.    Plaintiffs are informed and believe and on that basis state that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, "CORP. ENTITIES" employee and agent ROBERT HADDEN violated NY CPL Sections 130.00-130.96 entitled Sex Offenses and NY CPLR § 214-g, The New York Child Victim Act.

403.    Accordingly, Compensatory and Punitive damages are necessary under these facts as to all defendants.

## SIXTH CAUSE OF ACTION
## COMMITTING AND ENABLING CRIMINAL and CIVIL SEXUAL ASSAULT

404.     Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

405.    At all times material hereto, the acts of ROBERT HADDEN described herein above placed Plaintiffs in reasonable fear of harmful and injurious contact, including but not limited to further and continued intentional and malicious sexual assault, molestation, battery, abuse, and rape.

406.    At all times material hereto, ROBERT HADDEN acted with reckless disregard for the safety and well-being of Plaintiffs.

407.    At all times material hereto, ROBERT HADDEN acted willfully, wantonly, maliciously, and recklessly.

408.    At all times material hereto, ROBERT HADDEN was under the direct supervision, employ

and/or control of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and the "CORP. ENTITIES".

409.   As a direct and proximate result of the aforementioned sexual assaults, Plaintiffs sustained in the past, and will sustain in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

410.   Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**SEVENTH CAUSE OF ACTION**
**UNFAIR AND DECEPTIVE BUSINESS PRACTICES**
**(NY General Business Law §349)**

411.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

412.   Plaintiffs are informed and believe and on that basis state that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, "CORP. ENTITIES", and ROBERT HADDEN have engaged in unlawful, unfair and deceptive business practices including allowing and enabling ROBERT HADDEN to engage in repeated harassment of female students and patients, including Plaintiffs, and failing to take all reasonable steps to prevent harassment and abuse from occurring. The unlawful, unfair and deceptive business practices also included failing to adequately investigate, vet, and evaluate individuals for employment with defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN, refusing to design, implement, and oversee policies regarding sexual harassment and abuse of patients in a reasonable manner that is customary in similar medical and educational environments. Plaintiffs are informed and believe and on that basis state that ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY,

THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", have engaged in unlawful, unfair and deceptive business practices including concealing sexual harassment, abuse and/or molestation claims by students and patients, such as Plaintiffs, so as to retain other similarly situated individuals within Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" who were not apprised of such illicit sexual misconduct by ROBERT HADDEN.

413.   Plaintiffs are informed and believe that Defendants engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers who were employees, agents, members, and/or participants at Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", including ROBERT HADDEN, such that Defendants could maintain their public image, and avoid revelation and detection of such abuse and abusers. Plaintiffs are informed and believe and thereon state that Defendants actively concealed these allegations, such that Defendants would be insulated from public scrutiny, State and Federal governmental oversight, State Medical Board Investigations, and/or investigation from various law enforcement agencies, all done in order to maintain the false sense of safety for unsuspecting patients and their families and to perpetuate the program financially.

414.   By engaging in unlawful, unfair and deceptive business practices, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN benefited financially to the detriment of their competitors, who had to comply with the law.

415.   Unless restrained, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" will continue to engage in the

unfair acts and business practices described above, resulting in great and irreparable harm to Plaintiffs and/or other similarly situated participants and members.

416.   Plaintiffs seek restitution for all amounts improperly obtained by ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiffs and all other similarly situated patients who were also subjected to ROBERT HADDEN and Co-Defendants' illegal and unfair business practices.

417.   Pursuant to New York General Business Law § 349 and available equitable powers, Plaintiffs are entitled to a preliminary and permanent injunction, enjoining Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN from continuing the unlawful and unfair business practices described above. Further, Plaintiffs seek the appointment of a court monitor to enforce its orders regarding client safety. In addition, Plaintiffs are entitled to recover reasonable attorneys' fees.

418.   Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## EIGHTH CAUSE OF ACTION
## COMMITTING AND ENABLING NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

419.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

420.   Defendants ROBERT HADDEN and "CORP. ENTITIES" owed a duty to Plaintiffs to not cause them emotional distress, the initiation of post-traumatic stress disorder, or other harm during

the course of gynecological and/or obstetric examinations and other related treatment, which were and are of a very personal nature to the patients.

421.    Defendant ROBERT HADDEN, was negligent as to the effect of his conduct in performing unwanted sexual acts without the consent of Plaintiffs during the course and scope of his purported medical treatment of the Plaintiffs.

422.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees were negligent as to the effect of their conduct in allowing and enabling defendant ROBERT HADDEN to perform unwanted sexual acts on the Plaintiffs herein, as well as countless other patients, during the course and scope of his purported medical treatment of their patients.

423.    Defendant "CORP. ENTITIES," as well as their agents, servants, and/or employees were further negligent and careless in failing to attend to Plaintiffs in a timely and proper manner after they were sexually assaulted by ROBERT HADDEN, and after these facts were brought to the attention of the medical personnel upon the premises of defendant "CORP. ENTITIES".

424.    Defendants ROBERT HADDEN and "CORP. ENTITIES", as well as their agents, servants, employees and/or legal teams were further negligent and careless in failing to timely and properly investigate the reports, claims and legal filings about the sexual assaults upon patients being committed by ROBERT HADDEN, and made false, disparaging and degrading oral and written statements about the lack of veracity of plaintiffs and countless other women.

425.    As a direct and proximate consequence of Defendants' negligence, Plaintiffs have suffered physical, emotional, and psychological injuries, along with pain and suffering.

426.    Accordingly Compensatory damages are necessary under these facts as to all defendants.

**NINTH CAUSE OF ACTION**
**COMMITTING AND ENABLING INTENTIONAL**
**INFLICTION OF EMOTIONAL DISTRESS**

427.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

428.    Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL;   COLUMBIA   PRESBYTERIAN   MEDICAL   CENTER;   COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., ROBERT HADDEN, and their agents, servants, and/or employees' conduct toward Plaintiffs, as described herein, was outrageous and extreme.

429.    A reasonable person would not expect or tolerate the sexual harassment, exploitation, molestation and abuse of Plaintiffs by ROBERT HADDEN, and Defendants' knowledge and callous indifference thereof. Plaintiffs had placed their trust, faith and confidence in Defendants, which, by virtue of ROBERT HADDEN and Co-Defendants' wrongful conduct, turned to fear, shame and humiliation.

430.    A reasonable person would not expect or tolerate Defendants placing ROBERT HADDEN - who was known to Defendants to have physically and sexually abused other female-patients - in a position of care of Plaintiffs and other patients, which enabled ROBERT HADDEN to have access to other patients so that he could commit wrongful sexual acts, including the conduct described herein, with young female patients, including Plaintiffs. Plaintiffs had placed great trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear, shame and humiliation.

431.     A reasonable person would not expect or tolerate the Defendants, their agents, servants, and/or employees to be incapable of supervising, preventing and/or stopping ROBERT HADDEN from committing wrongful sexual acts with patients, including Plaintiffs, or to be incapable or unwilling to supervise ROBERT HADDEN. Plaintiffs had placed great trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear, shame and humiliation.

432.     Defendants' conduct described herein was deliberately indifferent, wanton, grossly reckless, premeditated, intentionally deceitful, reckless, intentional and malicious and done for the purpose of causing or with the substantial certainty that Plaintiffs would suffer humiliation, mental anguish, and emotional and physical distress.

433.     As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

434.     In subjecting Plaintiffs to the wrongful treatment herein described, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND

SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression. Plaintiffs are informed, and on that basis state, that these willful, malicious, and/or oppressive acts, as stated herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN

## TENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD and FRAUDULENT CONCEALMENT

435.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

436.    By holding ROBERT HADDEN out as an agent of Defendants, and by allowing him to undertake the medical care of female patients such as Plaintiffs, Defendants entered into a confidential, fiduciary, and special relationship with Plaintiffs.

437.    By holding themselves out as a preeminent university medical center, thereby enticing

115

Plaintiffs to seek medical care and treatment through Defendants' hospitals, medical centers, and clinics, Defendants entered into a confidential, fiduciary and special relationship with Plaintiffs.

438.    Defendants breached their confidential, fiduciary duty and special duties to Plaintiffs by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiffs in matters relating to Plaintiffs' safety, security and health. In particular, in breaching such duties as stated, Defendants were able to sustain their status as an institution of high moral repute, and preserve their reputation, all at the expense of Plaintiffs' further injury and in violation of Defendants' mandatory duties.  By virtue of their confidential, fiduciary, and special relationship with Plaintiffs, Defendants had the duty to obtain and disclose material information relating to sexual misconduct of ROBERT HADDEN to Plaintiffs, the public, the school community, the state medical board, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that ROBERT HADDEN and his enablers had engaged in with patients.

439.    By virtue of their confidential, fiduciary and special relationship with Plaintiffs, Defendants additionally owed Plaintiffs a duty to:

- Investigate or otherwise confirm or deny such claims of sexual abuse;
- Refuse to place ROBERT HADDEN and other molesters, sexual predators, and enablers in positions of trust and authority within Defendants' institutions;
- Refuse to hold out ROBERT HADDEN and other molesters to the public, the community, parents and law enforcement agencies as being in good standing, reputable and, trustworthy in keeping him and his position as a physician, faculty member and authority figure; and
- Refuse to assign ROBERT HADDEN and other molesters, sexual predators and enablers to positions of power within Defendants COLUMBIA UNIVERSITY,

THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and over female patients.

440.    Defendants' breach of their respective duties included:

- Not making reasonable investigations of ROBERT HADDEN;
- Issuing no warnings about ROBERT HADDEN;
- Not making reasonable investigations of ROBERT HADDEN's enablers;
- Issuing no warnings about ROBERT HADDEN's enablers;
- Enabling ROBERT HADDEN to routinely be supervised only by untrained chaperones, who were consistently derelict in their duty to report ROBERT HADDEN's sexual abuse to law enforcement;
- Not adopting a policy to prevent ROBERT HADDEN from routinely having patients and patients in his unsupervised control;
- Making no reports of any allegations of ROBERT HADDEN's abuse of patients prior to or during his employment and/or agency at Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES";
- Assigning and continuing to assign ROBERT HADDEN to duties which placed him in positions of authority and trust over female patients, positions in which ROBERT HADDEN could easily isolate, sexually exploit, and sexually abuse other students and patients; and

Enabling ROBERT HADDEN to serially sexually assault female patients for a period of over twenty (20) years upon Defendants' medical facilities, clinics and/or premises

441.    Defendants engaged in such suppression and concealment of ROBERT HADDEN's tortious, exploitative and despicable acts for the purpose of causing Plaintiffs to forbear on their rights.

442.    Defendants' misconduct did reasonably cause Plaintiffs to forbear on Plaintiffs' Rights.

443.    Defendants affirmatively misrepresented, actively concealed and failed to disclose

information relating to sexual misconduct of ROBERT HADDEN.

444.    The misrepresentations, suppressions and concealment of facts by Defendants were intended to, and were likely to, mislead Plaintiffs and others to believe that Defendants had no knowledge of the fact that ROBERT HADDEN was  a molester, sexual predator, and was known to commit wrongful and exploitative sexual acts with students and patients, including Plaintiffs; that Defendants had no knowledge of any charges against ROBERT HADDEN orthat there were no other charges of unlawful or sexual misconduct against ROBERT HADDEN or others'; and that there was no need for them to take further action or precaution.

445.    Defendants suppressed and concealed the true facts regarding ROBERT HADDEN with the purpose of: preventing Plaintiffs and others from learning that ROBERT HADDEN and others had been and were continuing to sexually harass, sexually exploit, molest and abuse patients under ROBERT HADDEN and Defendants' control, direction, and guidance, with complete impunity; inducing people, including Plaintiffs and other benefactors and donors to participate and financially support Defendants' program and other enterprises of Defendants; preventing further reports and outside investigations into ROBERT HADDEN and Defendants' conduct; preventing discovery of Defendants' own conduct; avoiding damage to the reputations of Defendants; protecting Defendants' power and status in the community; avoiding damage to the reputation of Defendants, or Defendants' institutions; and avoiding the civil and criminal liability of Defendants, of ROBERT HADDEN, of ROBERT HADDEN's enablers, and of others.

446.    Defendants knew or should have known that they had misrepresented, concealed and failed to disclose information related to sexual misconduct of ROBERT HADDEN.

447.    Defendants knew or should have known at the time that the facts known to them regarding ROBERT HADDEN's sexual misconduct were material and that, therefore, Defendants had a duty

to disclose these facts to Plaintiffs.

448.    At all times mentioned herein, Defendants, and in particular Defendants COLUMBIA

UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and ROBERT HADDEN,

with knowledge of the tortious and exploitative nature of their own, and ROBERT HADDEN's

conduct, knowingly and collectively conspired and provided each other substantial assistance to

perpetrate the misrepresentations, fraud and deceit stated herein—covering up the past allegations

of sexual misconduct lodged against ROBERT HADDEN, and allowing and enabling ROBERT

HADDEN to remain in his position as a physician, faculty member and doctor, so they could

maintain their reputations and continue with their positions within the organization.

449.    Plaintiffs and others were misled by Defendants' suppressions and concealment of facts,

and in reliance thereon, were induced to act or induced not to act, exactly as intended by

Defendants. Specifically, Plaintiffs were induced to believe that there were no allegations of

criminal or sexual abuse against ROBERT HADDEN, and that he posed no danger to his patients.

This inducement was caused by intentional and knowing false statements about the cause of

ROBERT HADDEN's abrupt, but silent departure as a physician at the hospitals, offices, and

medical clinics of CORP. ENTITIES.

450.    Plaintiffs justifiably relied on the misleading actions and omissions of Defendants and at

no time did Plaintiffs have knowledge of the falsity of Defendants' representations.

451.    By giving ROBERT HADDEN the position of physician and faculty member, Defendants

both impliedly and affirmatively represented that ROBERT HADDEN was safe and morally fit to

give medical care and provide gynecologic and obstetric treatment.

452.    When Defendants made these affirmative or implied representations and non-disclosures

of material facts, Defendants knew, or should have known, that the facts were otherwise.

Defendants knowingly and intentionally suppressed the material facts that ROBERT HADDEN, had on numerous, prior occasions sexually, physically, and mentally abused patients of Defendants, including Plaintiffs, and knew of, or learned of conduct, or should have known of conduct by ROBERT HADDEN which placed Defendants on notice that ROBERT HADDEN had previously been suspected of, and committed, felonies, including unlawful sexual conduct with patients, and was sexually exploiting and abusing students and patients under his care.

453.    Because of the status of ROBERT HADDEN with CORP. ENTITIES as a trusted, authority figure to Plaintiffs, Plaintiffs were vulnerable to ROBERT HADDEN. ROBERT HADDEN sought Plaintiffs out, and was empowered by and accepted Plaintiffs' vulnerability. Plaintiffs' vulnerability also prevented Plaintiffs from effectively protecting themselves from the sexual advances of ROBERT HADDEN.

454.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal or fail to disclose information relating to the sexual misconduct of ROBERT HADDEN, the inability of Defendants to supervise or stop ROBERT HADDEN from sexually harassing, exploiting, molesting and abusing Plaintiffs, and their own failure to properly investigate, supervise and monitor his conduct with patients.

455.    By so concealing, Defendants committed at least one act in furtherance of the conspiracy.

456.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be

prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

457.    In addition, when Plaintiffs finally discovered the fraud of Defendants, and continuing thereafter, Plaintiffs experienced recurrences of the above-described injuries. Plaintiffs experienced extreme and severe mental anguish and emotional distress that Plaintiffs had been the victim of Defendants' fraud; that Plaintiffs had not been able to help other young female patients to avoid being molested because of the fraud, and that Plaintiffs had not been able because of the fraud to receive timely medical treatment needed to deal with the problems Plaintiffs had suffered and continue to suffer as a result of the sexual harassment, molestation and abuse.

458.    In subjecting Plaintiffs to the wrongful treatment herein described, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice, gross recklessness and/or oppression. Plaintiffs are informed, and on that basis state, that these willful, wanton, malicious, and/or oppressive acts, as stated herein above, were ratified by the officers, directors, trustees and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN.

459.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**ELEVENTH CAUSE OF ACTION**
**COMMITTING AND ENABLING SEXUAL ASSAULT**

**AND/OR RAPE OF THE PLAINTIFFS**

460.     Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

461.     Prior to, and after the first incident of ROBERT HADDEN's sexual harassment, exploitation, molestation and abuse of Plaintiffs herein, through the present, Defendants, knew and/or should have known that ROBERT HADDEN had, and was capable of, sexually, physically, and mentally abusing, exploiting and harassing Plaintiffs and others.

462.     Defendants and each of them had special duties to protect the Plaintiffs and other female patients, when such individuals were entrusted to Defendants' care. Plaintiffs' care, welfare and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Plaintiffs. As such, Defendants owed Plaintiffs as women, students, minors, as well as pregnant and non-pregnant female patients, a special duty of care that ethical adults and medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants and Plaintiffs.

463.     Further, Defendant ROBERT HADDEN and defendant "CORP. ENTITIES" owed a duty to Plaintiffs herein to not cause them emotional distress, the initiation of post-traumatic stress disorder, the trigger of past sexual abuse, or other harm during the course of gynecological and/or obstetric examinations and other related treatment, which are of a very personal nature to these patients.

464.     Defendant ROBERT HADDEN, performed unwanted sexual acts without the consent of Plaintiffs herein during the course and scope of his purported medical treatment of the Plaintiffs and other women.

465.    Defendant CORP. ENTITIES, their agents, servants, and/or employees allowed and enabled defendant ROBERT HADDEN to perform unwanted sexual acts on Plaintiffs herein, as well as other patients, during the course and scope of his purported medical treatment of their patients.

466.    Defendant CORP. ENTITIES, as well as their agents, servants, and/or employees failed to attend to Plaintiffs in a timely and proper manner after they were sexually assaulted by ROBERT HADDEN, and after these facts were brought to the attention of the medical personnel upon the premises of defendant CORP. ENTITIES.

467.    Defendants ROBERT HADDEN and CORP. ENTITIES, as well as their agents, servants, employees, administrators and/or legal teams failed  to timely and properly investigate the reports, claims and legal filings about the sexual assaults upon patients being committed by ROBERT HADDEN, and made false, disparaging and degrading oral and written statements about the lack of veracity of plaintiffs and other women.

468.    Defendants allowed  ROBERT HADDEN to come into contact with the Plaintiffs and other female students and patients whom they permitted and enabled to have access to Plaintiffs; by concealing from Plaintiffs, the public and law enforcement that ROBERT HADDEN was sexually harassing, molesting and abusing patients; and by holding ROBERT HADDEN out to Plaintiffs as being of high moral and ethical repute, in good standing and trustworthy.

469.    Defendants failed to investigate or otherwise confirm or deny such facts of sexual abuse by ROBERT HADDEN to Plaintiffs, failed to reveal such facts to Plaintiffs, the community and law enforcement agencies, and placed ROBERT HADDEN into a position of trust and authority, holding him out to Plaintiffs and the public as being in good standing and trustworthy.

470.    Defendants failed to prevent ROBERT HADDEN from committing wrongful sexual acts

with medical patients, including Plaintiffs. Defendants' past observations, reports, and records of sexual misconduct by ROBERT HADDEN caused Defendants to know, or gave them information where they should have known, of ROBERT HADDEN's incapacity to serve as a physician, and faculty member at Defendants' institutions, providing for the physical care of pregnant and non-pregnant, adult and minor, female patients.

471.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

472.    Accordingly Compensatory damages are necessary under these facts as to all defendants.


**TWELFTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION**

473.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

474.     By virtue of Plaintiffs' special relationships with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to provide reasonable supervision of ROBERT HADDEN, to use reasonable care in investigating ROBERT HADDEN's background, and to provide adequate warning to Plaintiffs and other patients of ROBERT HADDEN's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of patients, Defendants COLUMBIA UNIVERSITY, THE

TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES had a duty to protect, supervise, monitor, and prevent the Plaintiffs from being preyed upon by sexual predators, and to supervise and monitor ROBERT HADDEN such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiffs.

475.    As representatives of Defendants COLUMBIA UNIVERSITY, THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, Defendants' agents servants and/or employees expressly and implicitly represented that physicians, faculty and staff, including ROBERT HADDEN, were not a sexual threat to those individuals and others who would fall under ROBERT HADDEN's influence, control, direction, and care.

476.    Defendants, by and through their respective agents, servants and employees, knew or should have known, of ROBERT HADDEN's dangerous and exploitive propensities and that ROBERT HADDEN was an unfit agent and practitioner. Despite such knowledge, Defendants negligently failed to supervise ROBERT HADDEN in his position of trust and authority as a physician, gynecologist, faculty member and authority figure over female patients and young women, where he was able to commit wrongful acts of sexual misconduct against Plaintiffs. Defendants failed to provide reasonable supervision of ROBERT HADDEN, failed to use reasonable care in investigating ROBERT HADDEN, and failed to provide adequate warning to Plaintiffs of ROBERT HADDEN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of patients, including Plaintiffs, from sexual harassment, sexual assault, sexual battery, molestation, and abuse.

477.    At no time during the periods of time set-forth herein did Defendants have in place a reasonable system or procedure to investigate, supervise and monitor ROBERT HADDEN, to prevent pre-sexual grooming and sexual harassment, sexual exploitation, molestation and abuse of

those individuals, nor did they implement a system or procedure to oversee or monitor conduct toward patients and others in Defendants' care.

478.    Defendants were aware, or should have been aware, of how vulnerable these patients were to sexual grooming, harassment, exploitation, molestation and abuse by physicians, male-gynecologists in particular, faculty members and other persons of authority within Defendants' entities. Recent news reports about the Dean of Students having sexually exploited and abused an incoming female freshman shows that the exploitation and abuse of women at Columbia University and its affiliated offices, clinics, hospitals, and entities is a systemic problem which Defendants' are not capable of handling or managing.

479.    Defendants were put on notice, knew and/or should have known that ROBERT HADDEN had previously engaged in, and was continuing to engage in, unlawful sexual conduct with female patients, minors, and other pregnant and non-pregnant patients, and that he had committed and perpetrated sexual felonies against those patients, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage, in illicit sexual activities with Plaintiffs, and others, under the cloak of the authority, confidence, and trust, bestowed upon him by Defendants.

480.    Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested, groomed, abused, and exploited other student and non-student female patients during his employment with Defendants. Defendants were informed of molestations of patients committed by ROBERT HADDEN prior to Plaintiffs' sexual abuse, and of conduct by ROBERT HADDEN that would put a reasonable person on notice of such propensity to molest, groom, exploit and abuse young female patients.

481.    Even though Defendants knew, or should have known, of the illicit and exploitative sexual

activities being perpetrated by ROBERT HADDEN, Defendants failed to reasonably investigate, supervise, monitor, and end ROBERT HADDEN's access to female patients. Instead, Defendants simply enabled ROBERT HADDEN to keep exploiting and sexually abusing more and more female patients.

482.    Defendants' conduct was a breach of their duties to Plaintiffs and all female patients, as well as their family members.

483.    Defendants, and each of them, have breached their duty to Plaintiffs by, *inter alia*, failing to adequately monitor and supervise ROBERT HADDEN and stop ROBERT HADDEN from committing wrongful sexual acts with female patients, including Plaintiffs.

484.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

485.    Accordingly Compensatory damages are necessary under these facts as to all defendants.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF MANDATORY REPORTING LAWS**

486.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

487.    Under applicable law, Defendants, by and through their employees and agents, were medical care providers and were under a statutory duty to report known or suspected incidents of sexual molestation or abuse of patients, or any individuals in their care, to the appropriate

authorities, and not to impede the filing or investigation of any such report.

488.    Defendants knew, and should have known, that their gynecological physician, ROBERT HADDEN, had sexually molested, abused, exploited, or caused touching, battery, harm, and/or other injuries to female patients including Plaintiffs, giving rise to a duty to report such conduct.

489.    Defendants knew, and should have known, in the exercise of reasonable diligence, that an undue risk to patients, including Plaintiffs, existed because Defendants did not comply with mandatory reporting requirements.

490.    By failing to report the continuing sexual molestations and abuse by ROBERT HADDEN, which Defendants knew and should have known about, and by ignoring the fulfillment of the mandated compliance with the reporting requirements, Defendants created the risk and danger contemplated by the applicable mandated reporting laws, and as a result, unreasonably and wrongfully exposed Plaintiffs and other patients to sexual molestation and abuse.

491.    Further, defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES actively and intentionally impeded the criminal indictment and investigation of ROBERT HADDEN through the intimidation of Assistant District Attorneys, as well as the intimidation of Defendants' own agents, servants, and/or employees, all in an effort to dissuade them from reporting the exploitation and abuse to the authorities and others. In doing so, defendants illegally interjected themselves into the criminal prosecution of ROBERT HADDEN, used force and coercion in an effort to derail the criminal investigation, and sent high-ranking risk-managers and corporate personnel to accompany and intimidate its nurses and medical chaperones before, during, and after their interviews with the Manhattan District Attorneys office relative to the criminal indictment and prosecution of ROBERT HADDEN.

492.    Plaintiffs were members of the class of persons for whose protection the applicable

mandated reporting laws were specifically designed and adopted to protect.

493.   Had Defendants adequately reported the molestation of female patients, including Plaintiffs, as required by applicable mandated reporting laws, further harm to Plaintiffs and other individuals would have been avoided.

494.   As a proximate result of Defendants' failure to follow the mandatory reporting requirements, Defendants wrongfully denied Plaintiffs, and other women, the intervention of law enforcement and the appropriate authorities. Such public agencies would have changed the then-existing arrangements and conditions which provided the necessary access and opportunities for the molestation of Plaintiffs by ROBERT HADDEN.

495.   The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiffs by ROBERT HADDEN were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

496.   As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

497.   Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## FOURTEENTH CAUSE OF ACTION
## NEGLIGENT HIRING, RETENTION and RATIFICATION

498.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein

above as though fully set forth and brought in this cause of action.

499.    By virtue of Plaintiffs' special relationship with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to not hire and/or retain HADDEN, given his dangerous and exploitive propensities, which Defendants knew, or should have known,  about had they engaged in a reasonable, meaningful and adequate investigation of his background prior to his hiring or retaining him.

500.    Defendants expressly and implicitly represented that ROBERT HADDEN was a legitimate gynecologist and obstetrician, and not a sexual threat to female patients.

501.    At no time during the periods of time stated herein did Defendants have in place a reasonable system or procedure to timely and properly investigate, supervise and monitor its hospitals, offices, medical clinics, physicians and healthcare personnel, including ROBERT HADDEN, to prevent sexual grooming, sexual harassment, sexual exploitation, molestation and abuse of female patients, nor did they implement a system or procedure to oversee or monitor conduct toward female patients and/or others in Defendants' care.

502.    Defendants were aware, or should have been aware, and understood how vulnerable female patients were to sexual grooming, sexual harassment, sexual exploitation, molestation and abuse by faculty members, physicians, and other persons of authority within the control of Defendants prior to Plaintiffs' sexual abuse and exploitation by ROBERT HADDEN.

503.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, as well as suspicious circumstances wherein ROBERT HADDEN and other medical staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other

130

medical staff, agents, servants, and/or employees' negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

504.   Defendants were put on notice, and should have known that ROBERT HADDEN had previously engaged, and continued to engage, in unlawful sexual conduct with female patients, and was committing other felonies, for his own deviant sexual gratification, and that it was foreseeable, or should have been foreseeable, that ROBERT HADDEN was engaging in, or would engage in, illicit deviant sexual activities with Plaintiffs, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants, their agents, servants and/or employees.

505.   Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested or was molesting female patients, both before his employment with the within named Defendants, and during that employment. Defendants had knowledge of inappropriate conduct, exploitation and serial molestations committed by ROBERT HADDEN before and during his employment, yet chose to allow him to remain unsupervised where he serially sexually abused Plaintiffs herein.

506.   Despite the fact that Defendants knew, or should have known, of these sexually exploitive activities being perpetrated by ROBERT HADDEN, Defendants failed to use reasonable care in investigating ROBERT HADDEN and did nothing to reasonably investigate, supervise or monitor and/or terminate ROBERT HADDEN to ensure the safety of patients.

507.   Defendants' conduct in enabling ROBERT HADDEN to serially sexually assault countless female Patients upon its premises was a long-standing, gross, and inexcusable violation of the duty of care owed to Plaintiffs herein.

508.   Because Defendants:

(a)    had actual knowledge of the sexual exploitation, abuse and harassment being committed by HADDEN;

(b)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by State Laws;

(c)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by Federal Laws;

(d)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by medical and academic standards of care;

(e)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by basic standards of ethics and decency;

(f)    consciously and intentionally enabled ROBERT HADDEN to continue to sexually exploit, abuse, and harass female patients by failing to take any of the above actions; and

(g)    consciously and intentionally concealed all of ROBERT HADDEN's exploitative, abusive, and harassing behaviors from female patients, the Plaintiffs herein, and the public at large, Defendants have enabled, permitted, and ratified the conduct of ROBERT HADDEN as set forth herein.

509.    Defendants, their agents, servants, and/or employees knew ROBERT HADDEN was sexually exploiting, abusing and harassing female patients and refused to take any action to stop him. Moreover, Defendants, their agents, servants, and/or employees hid this information so ROBERT HADDEN could continue to work for COLUMBIA UNIVERSITY, its hospital, offices, medical clinics and facilities. With knowledge of ROBERT HADDEN's sexual misconduct, no disciplinary action was taken by Defendants and he was inexplicably allowed to be alone with female patients. Defendants, their agents, servants, and/or employees are thus responsible for

ROBERT HADDEN's acts of sexual exploitation, sexual assault, sexual abuse, sexual battery, discrimination, and harassment.

510.    Further, defendant "CORP. ENTITIES" prior to the granting or renewing of privileges or employment of defendants, residents, nurses and others medical personnel involved in plaintiffs' care, failed to investigate the qualifications, competence, capacity, abilities and capabilities of said defendants, residents, nurses and other employees, including but not limited to obtaining the following information: patient grievances, criminal investigations, governmental inquiries, negative health care outcomes, incidents injurious to patients, medical malpractice actions commenced against said persons, including the outcomes thereof, any history of association, privilege and/or practice at other institutions, and discontinuation of said association, employment, privilege and/or practice at said institution, and any pending professional misconduct proceedings in this State or another State, the substance of the allegations in such proceedings and any additional information concerning such proceedings and the findings of the proceedings and defendant "CORP. ENTITIES" failed to make sufficient inquiry of the physicians, nurses, employees other personnel and institutions which should and did have information relevant to the capacity, capability, ability and competence of said persons rendering treatment, including defendant ROBERT HADDEN - as well as the medical staff with which he was associated - upon Defendants' premises.

511.    Defendant "CORP. ENTITIES" failed to timely and properly educate, train, supervise and/or monitor its agents, servants, and/or employees with regard to the policies and procedures that must be followed when sexual abuse by a physician is suspected or observed, and instead created an environment where sexual misconduct by physicians was tolerated.

512.    Defendant "CORP. ENTITIES" created an environment where its agents, servants and/or

employees who suspected - or even witnessed - sexual misconduct by a physician, were more fearful about their prospects for future employment if they said something, than they were about the safety and well-being of the patients who were being sexually abused.

513.    Had defendant "CORP. ENTITIES" made the above stated inquiry, or in the alternative, had it reviewed and analyzed the information obtained and available to it in a timely and proper manner, privileges and/or employment would not have been granted and/or renewed.

514.    Defendant "CORP. ENTITIES" were additionally negligent, grossly reckless, wanton and willful, in failing to supervise, monitor, chaperone and/or investigate defendant ROBERT HADDEN, and/or failed to create, institute and/or enforce rules, policies, procedures and/or regulations for defendant ROBERT HADDEN's treatment of Plaintiffs and countless other women.

515.    By reason of defendant "CORP. ENTITIES" failures to meet the aforementioned obligations, Plaintiffs were treated by physicians, nurses, medical personnel and other employees who were lacking the requisite skills, abilities, competence, capacity and supervision, as a result of which Plaintiffs sustained significant injuries and complications.

516.    The aforesaid injuries resulting therefrom were caused wholly and solely as a result of the defendant "CORP. ENTITIES"'s negligent and reckless supervision of its agents, servants, and/or employees, and created a foreseeable risk of harm to its patients.

517.    Specifically, on Friday, June 29, 2012 a female patient known as JANE DOE #1 was sexually abused by ROBERT HADDEN who touched his tongue to her vagina during a vaginal examination. JANE DOE #1, in shock and fear, hurriedly dressed and ran out of Defendants' offices. A short while later, two (2) members of the New York City Police Department presented to the medical office, located at 16 East 60th Street, seeking ROBERT HADDEN. Defendants'

staff informed ROBERT HADDEN of the police officers' desire to speak with him. The police officers then proceeded to question ROBERT HADDEN about sexual assault he committed and escorted ROBERT HADDEN out of the main office area. ROBERT HADDEN informed the police that he had called JANE DOE #1 on her cell phone after the assault "to straighten out a situation". The police and the District Attorney's Office then proceeded to engage in a verbal altercation over the telephone - the Police Officers wanted to arrest ROBERT HADDEN but the District Attorney's Office insisted that ROBERT HADDEN be let go. The District Attorney then overrode the Police and mandated that ROBERT HADDEN be released from their custody. The following week ROBERT HADDEN returned to Defendants' medical offices, and continued to sexually exploit and abuse female patients as if nothing had happened. Despite the knowledge of a female patient running out of the office - and the Police Officers' arrival at Defendants' offices a short-time later in an effort to apprehend ROBERT HADDEN - Defendants took no action against ROBERT HADDEN, wholly failed to investigate the matter, failed to suspend ROBERT HADDEN, failed to report the incident to other people of authority at COLUMBIA and its related CORP. ENTITIES, failed to terminate ROBERT HADDEN, and utterly failed to protect the sanctity of the relationship of trust which is supposed to exist between the Defendants through their agents, servants, employees, and the patients who they are supposed to serve.

518.    Defendant "CORP. ENTITIES'"s negligence and recklessness further lies in having placed Defendant ROBERT HADDEN in a position to cause foreseeable harm, of which Plaintiffs would have been spared, had the defendant "CORP. ENTITIES" taken reasonable care in the supervision and investigation of its employees - including, but not limited to, defendant ROBERT HADDEN, himself.

519.    In a claim for negligent hiring and/or retention, an employer is held liable and responsible

for its negligence or recklessness in hiring, retaining and/or supervising an employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the agent, servant or employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their failure to exercise reasonable care in hiring, retention and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself, as well as its useless and complicit chaperones who failed to report ROBERT HADDEN's conduct.

520.     In a claim for negligent supervision, the employer is held liable and responsible for its negligence or recklessness in failing to timely and properly supervise an agent, servant, and/or employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an agent, servant, or employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their own failure to exercise reasonable care in hiring, retaining, monitoring, investigating, and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself.

521.     As a result of the above referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for

medical and psychological treatment, therapy, and counseling.

522.    As a result of Defendants' reckless conduct, gross indifference, and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil obligations, and outrageous disregard of moral and professional obligations, both Compensatory and Punitive damages are necessary under these facts as to all defendants.


## FIFTEENTH CAUSE OF ACTION
## FAILURE TO WARN, TRAIN or EDUCATE

523.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

524.    Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., owed Plaintiffs a duty to take reasonable protective measures to safeguard Plaintiffs, and other female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN by properly warning, training or educating Plaintiffs and others, including their own medical personnel, medical staff, Administrators, and other agents, servants, and/or employees about how to avoid such a risk and what to do when such inappropriate conduct is witnessed, observed, reported, and/or discovered

525.    Defendants breached their duty to take reasonable measures to protect Plaintiffs, and other

female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, such as the failure to properly warn, train and/or educate Plaintiffs, and other patients, about how to avoid such a particular risk that ROBERT HADDEN posed.

526.   Defendants breached their duty to take reasonable protective measures to safeguard Plaintiffs and other patients from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, by failing to supervise and stop employees of Defendants, such as ROBERT HADDEN, and prevent them from committing sexually abusive and exploitive acts upon female student and patients, including Plaintiffs.

527.   As a result of the above-referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

528.   Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## SIXTEENTH CAUSE OF ACTION
### GROSS NEGLIGENCE, WANTON, WILLFUL and RECKLESS CONDUCT

529.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

530.   Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER,

138

EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN) owed Plaintiffs, and other female patients, a duty to use due care to ensure their safety and freedom from sexual assault, sexual exploitation, sexual abuse, sexual discrimination, misogyny, racial discrimination, and molestation while interacting with their agents, servants, and/or employees, including ROBERT HADDEN.

531.    By seeking medical treatment from ROBERT HADDEN in the course of his employment, agency, and/or representation of the Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and ROBERT HADDEN was created.

532.    Defendants' failures to adequately supervise ROBERT HADDEN, especially after they knew or should have known of complaints regarding ROBERT HADDEN's nonconsensual sexual abuse, exploitation, touching and assaults during medical examinations was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

533.    ROBERT HADDEN's conduct in sexually assaulting, sexual exploiting, sexually abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the Defendants, and under the guise of rendering "medical treatment", was so wanton and reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and hundreds of other female patients.

534.    Defendants, their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN and other medical

staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other medical staff, agents, servants, and/or employees' negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

535.    Defendants, their agents, servants, and/or employees, failed to timely and properly act upon complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN, and/or other medical staff, agents, servants, and/or employees, placed patients in compromised and unprotected situations, all of which caused and/or enabled further and additional negligent, careless, reckless, criminal and/or wanton acts and harm to be inflicted upon Plaintiffs, as well as hundreds of other female students and patients.

536.    By reason of Defendants, and/or their agents, servants, and/or employees' failures to meet the aforementioned obligations and duties, Plaintiffs, as well as hundreds of other female students and patients, were subjected to physical and mental injury, mental manipulation, harm, duress, sexual objectification, sexual exploitation, racial discrimination, sexual assault, and sexual abuse.

537.    Defendant ROBERT HADDEN's sexual assaults of Plaintiffs - and hundreds of other named and unnamed patients - as well as Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES's gross negligence, willfulness, and wantonness concerning the improper hiring, retention, blatant coverups and concealments, lack of supervision, abject enabling, and other reckless acts and omissions set forth herein, constitute intentional, extreme, and outrageous conduct of the highest order.

538.    Such grossly reckless conduct is motivated by greed, self-seeking, self-interest, deliberate indifference, deviant sexual desire, and is the product of malicious and evil minds such that the

imposition of punitive damages are warranted.

539.    Punitive damages are justified in cases like this to both punish the wrongdoers - and also to hold them out as examples to the rest of the community - such that these Defendants, and others that may be similarly situated, are clearly and explicitly discouraged from engaging in these kinds of grossly deviant and abhorrent behaviors in the future.

540.    For purposes of particularization of the acts and omissions of the within named Defendants which constitute, warrant, and mandate the imposition of punitive damages, it is stated that defendant ROBERT HADDEN - while pretending to render medical care to female patients - serially, and criminally, sexually exploited, assaulted, demeaned, and abused hundreds of female patients at Defendants' medical facilities and clinics. Further, evidence exists that Defendants enabled ROBERT HADDEN to continue to sexually assault, exploit and abuse their patients, including Plaintiffs herein, and instead of terminating him and reporting him to Criminal Authorities and the State Medical Board, they took no action and further enabled him to continue to sexually exploit and abuse even more female patients in new and different ways. Moreover, evidence has surfaced which demonstrates that defendant ROBERT HADDEN has been sexually assaulting, sexually exploiting, and sexually abusing patients on the premises of Defendants and their medical facilities and clinics for over 20 years — as far back as the early 1990's. All the while, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES, knew of the abuse but instead of terminating ROBERT HADDEN and immediately reporting him to law enforcement, they moved him from clinic to clinic in an intentional, but covert, effort to hide and conceal the abuse from their patients, the Plaintiffs herein, and the public at large.

541.    Defendant ROBERT HADDEN should have already been the subject of an internal,

Criminal, and State Medical Board Investigation by the time that he sexually assaulted each of the Plaintiffs herein. However, Defendants failed to act on the information they had and enabled defendant ROBERT HADDEN to continue to sexually assault, sexually abuse and sexually exploit other female patients on its premises - despite a long history of sexually assaulting patients - for in excess of 20 years.

542.    While being allowed to continue preying on young female patients at Defendant COLUMBIA UNIVERSITY and CORP. ENTITIES' hospitals, offices, and medical facilities and clinics without any restrictions, limitations, preceptors, chaperones or additional supervision, defendant ROBERT HADDEN continued to sexually exploit and assault female patients.

543.    While sexually exploiting, abusing and assaulting female patients - seemingly at will due to the utter indifference of Defendants, their agents, servants, and/or employees - Defendant ROBERT HADDEN sexually exploited, abused, and assaulted Plaintiffs and hundreds of other female patients upon Defendants' premises.

544.    Plaintiffs were patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES at the time when defendant ROBERT HADDEN sexually exploited, abused, and assaulted them.

545.    On several occasions, no chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted plaintiffs on the premises of Defendants' medical offices, facilities and clinic.

546.    On other occasions, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs on the premises of Defendants' medical offices, facilities and clinics, and yet stood by and did nothing to protect the Plaintiffs and hundreds of other female patients.

547.    On many occasions, since the early 1990's, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs, and other female patients, on the premises of Defendants' medical offices, hospitals, facilities and clinics, who then tried to report the illegal conduct of ROBERT HADDEN to supervisors and other administrators of the within named Defendants, but whose reports were wholly and utterly ignored and/or dismissed as not important, and not followed up on by the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

548.    The history of sexual exploitation, sexual assault, and sexual abuse of female patients at the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES at the hands of serial predator ROBERT HADDEN spans a period of over 20-years.

549.    Defendants, their agents, servants, and/or employees had knowledge and/or awareness of the prior sexually exploitive and sexually abusive conduct by ROBERT HADDEN, and chose to do nothing to protect their female patients, including Plaintiffs herein, from being sexually exploited and abused by Defendant ROBERT HADDEN.

550.    As a result of Defendants' gross indifference and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil obligations, and outrageous disregard of moral and professional ethics, duties and standards, Plaintiffs have each become yet another one of the countless sexual assault survivors of Defendant ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

551.    Defendants' indolence and complicity in enabling serial sexual predator ROBERT HADDEN, is abhorrent conduct worthy of punishment.

552.    Defendants' conduct demonstrates a willful disregard of any and all precautions necessary

to ensure Plaintiffs' safety.

553.    Defendants' conduct as described above, demonstrated a willful disregard for the substantial and known risks that ROBERT HADDEN posed to Plaintiffs and other female students and patients.

554.    Defendants have breached the duties owed to Plaintiffs, and other female patients, and were grossly negligent when they conducted themselves as described above, said acts having been committed with reckless disregard for Plaintiffs, and other female patients' health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

555.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs and other female patients were damaged.

556.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all Defendants.

**SEVENTEENTH CAUSE OF ACTION**
**INVASION OF PRIVACY**

557.    Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

558.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have intruded upon Plaintiffs' solitude, seclusion or private affairs and concerns by illegally accessing Plaintiffs' protected and private medical records, illegally viewing protected and private healthcare information, and intruding into their private and personal medical conditions - not for purposes of rendering medical care and treatment - but instead for the sole purpose of gaining a tactical advantage in litigation. Plaintiffs herein have never authorized the access of their medical records, and yet  upon

information and belief, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have illegally and surreptitiously accessed their records in abject violation of both State and Federal Law. This intrusion is highly offensive to reasonable individuals, such as Plaintiffs, and was totally unwarranted and unjustified, constituting invasion of privacy, and a violation of the Health Insurance Portability and Accountability Act (HIPAA).

559.    Defendants carried out such actions through their agents and/or representatives by querying their medical records, medical archives, and electronic medical records (EMR) for information related to the Plaintiffs, their health related issues, complications, conditions, and treatments.

560.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, ROBERT HADDEN, and each of their agents, servants, employees, lawyers, and representatives have accessed, and continue to access, Plaintiffs' private and protected HIPAA information for purposes other than the diagnosis, care and treatment of Plaintiffs.

561.    Specifically, Defendants have accessed, and continue to access, read, and use Plaintiffs' private HIPAA information - without Plaintiffs' knowledge, authorization and consent - in order to try to defend themselves against the myriad of lawsuits they now face for enabling ROBERT HADDEN to sexually exploit and sexually abuse female patients over the past couple decades at their hospitals, offices, and medical clinics.

562.    Defendants have illegally used said information, *inter alia*, in an effort to dissuade Plaintiffs, and other female patients, from filing lawsuits against Defendants. Defendants have also illegally accessed and used Plaintiffs' protected health information for the purpose of obtaining facts and statements from Plaintiffs, and other female patients, such that Defendants will, and are,

using said information to try and defend themselves against said lawsuits.

563.    Defendants' conduct as described herein is despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and with a willful and conscious disregard for their rights, justifying an award of punitive damages.

564.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For general damages in a just and reasonable amount in excess of the jurisdictional minimum of this court;

2.    For special damages according to proof;

3.    For punitive damages according to proof;

4.    For civil penalties as provided by law;

5.    For reasonable attorneys' fees and costs of said suit;

6.    For prejudgment interest, according to proof; and

7.    For such other and further relief as the Court deems just and proper.

Law Office of Anthony T. DiPietro, P.C.

By:
Anthony T. DiPietro, Esquire
Attorney for Plaintiffs
The Woolworth Building
233 Broadway - Suite 880
New York, New York 10279-0137
Phone: (212) 233-3600
email: Cases@ATDLaw.com

146

**Slater Slater Schulman, L.L.P.**

By: _____

Adam P. Slater, Esquire
Attorney for Plaintiffs
488 Madison Avenue, 20th Floor
New York, New York 10022
Phone: (212) 922-0906
email: aslater@sssfirm.com


**Kohn Swift & Graf, P.C.**

By: _____

Jonathan Shub, Esquire
Attorney for Plaintiffs
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: (215) 238-1700
email: jshub@kohnswift.com


**Levy, Baldante, Finney & Rubenstein, P.C.**

By: _____

Martin G. Rubenstein, Esquire (Pro Hac Vice pending)
Attorney for Plaintiffs
1845 Walnut Street, Suite 1300
Philadelphia, PA 19103
Phone: (215) 735-1616
email: Rubenstein@levybaldante.com


Date:   February 28, 2020




**JURY TRIAL DEMAND**

Class Plaintiffs hereby demand a trial by jury on all issues so triable.

**Law Office of Anthony T. DiPietro, P.C.**

147

By: _____
Anthony T. DiPietro, Esquire (NY
Attorney for Plaintiffs
The Woolworth Building
233 Broadway - Suite 880
New York, New York 10279-0137
Phone: (212) 233-3600
email: Cases@ATDLaw.com

**Slater Slater Schulman, L.L.P.**

By: _____
Adam P. Slater, Esquire
Attorney for Plaintiffs
488 Madison Avenue, 20th Floor
New York, New York 10022
Phone: (212) 922-0906
email: aslater@sssfirm.com

**Kohn Swift & Graf, P.C.**

By: _____
Jonathan Shub, Esquire
Attorney for Plaintiffs
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: (215) 238-1700
email: jshub@kohnswift.com

**Levy, Baldante, Finney & Rubenstein, P.C.**

By: _____
Martin G. Rubenstein, Esquire (Pro Hac Vice pending)
Attorney for Plaintiffs
1845 Walnut Street, Suite 1300
Philadelphia, PA 19103
Phone: (215) 735-1616
email: Rubenstein@levybaldante.com

Date:   February 28, 2020

148