**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JANE DOE 16, JANE DOE 29, JANE DOE 79, JANE 82
and JANE DOE 84,

*Civ. Action No.*
*20-cv-01791*

Plaintiffs,

COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA
PRESBYTERIAN MEDICAL CENTER; COLUMBIA
UNIVERSITY MEDICAL CENTER;
COLUMBIA-PRESBYTERIAN MEDICAL CENTER,
EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES;
ROBERT HADDEN; THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

**FIRST**
**AMENDED**
**COMPLAINT**

*Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**Content Warning:** This Amended Complaint contains graphic descriptions of sexual assault, sexual violence, and sexual abuse, including minor victims. Such descriptions may be disturbing or upsetting to some readers. Reader discretion is advised.

---

Plaintiffs Jane Doe 16, Jane Doe 29, Jane Doe 79, Jane Doe 82, and Jane Doe 84, (collectively "Plaintiffs"), through their undersigned counsel, for this Amended Complaint, allege as follows against Defendants Columbia University, The Trustees of Columbia University in the City of New York ("Trustees"), Columbia University Vagelos College of Physicians and Surgeons ("CUCPS"), The New York Presbyterian Hospital ("NYPH"), Sloane Hospital for Women ("Sloan"), Columbia University Irving Medical Center f/k/a Columbia-Presbyterian Medical Center ("CPMC"), Presbyterian Hospital Physician Services Organization, Inc., Columbia Cornell Network Physicians, Inc., Columbia-Presbyterian Medical Center, East Side Associates, East Side Associates, (collectively, "COLUMBIA" or "CORP. ENTITIES"), and Robert Hadden ("HADDEN", and collectively with the Columbia defendants, "DEFENDANTS"), based upon personal knowledge as to themselves, and, as to all other matters, upon information and belief, including their counsel's investigation. Plaintiffs believe additional evidentiary support exists for their allegations, given an opportunity for discovery.

## NATURE OF THE ACTION

1.    *Primum non nocere* – first do no harm. These important words are perhaps the best known part of the Hippocratic Oath, the ancient precursor to the oaths of ethics taken today by doctors across the world, including those at Columbia. In fact, in 1993, CUCPS was credited with holding the first-ever White Coat Ceremony, where a similar oath is recited, and has since become a rite of passage tradition at 99% of Association of American Medical Colleges-accredited medical schools across the United States.[1] This case is about the Corp. Entities Defendants' repeated violations of these fundamental ideals, over a two-decades-long period

---

[1]    Two years earlier, in 1991, the Corp Entities hired serial sexual predator Robert Hadden (Residency started in 1987).

where their administrators, chairpeople, and trustees failed, repeatedly, to protect vulnerable and unsuspecting female patients, from predatory sexual abuse, by turning a willfully blind eye to the serial sexual assaults being committed, under the guise of legitimate medical care, by one of their own employees, named Robert Hadden.

2.      From 1987, through at least 2012, the Corp. Entities employed Hadden to provide obstetrics and gynecology ("OB/GYN") services to Corp. Entities Defendants' patients, including Plaintiffs herein.

3.      Hadden, however, is no ordinary OB/GYN. He is, in fact, a disgusting, sadistic, and perverted sexual predator who used his esteemed and trusted position with the Corp. Entities Defendants to sexually exploit, abuse, rape, molest, fondle, and commit assault and battery on thousands of patients, including Plaintiffs, all under the pretense of providing legitimate, medically necessary, medical services. What's arguably worse is that, as an institution, the Corp. Entities Defendants knew early on what Hadden was doing to their patients. But instead of taking action against Hadden, reporting him to the State Office of Professional Medical Conduct (as legally mandated), reporting him to law enforcement (as ethically mandated), and reporting back to the patients themselves (as morally mandated), what the Corp. Entities Defendants did instead was conspire with Robert Hadden, conceal his abuse from the authorities, gas-light their patients, enable and aid Hadden in becoming the most prolific serial sexual predator in the history of New York State.

4.      The abuse these unsuspecting patients suffered is almost indescribable. Hadden, sometimes in the presence of other Corp. Entities' employees, digitally penetrated, digitally raped, fondled, groped, pinched and twisted the nipples of, squeezed out breast milk from,

surreptitiously licked the vaginas, and inappropriately touched, stroked and/or rubbed the clitorises and g-spots of his patients. Oftentimes, Hadden intentionally inflicted pain upon women in a manner designed to indulge his sadistic tendencies. Roughly **half** of the known victims and survivors that Hadden sexually abused were pregnant, while the abuse was being inflicted upon them, on the Corp. Entities Defendants' watch.

5.      Hadden also performed wholly unnecessary, gratuitous, serial PAP smears on young women, virgins, and female children, who continually received negative pathology results; he performed serial and unwarranted "mole checks" of patients for no legitimate medical purpose; and routinely directed women and young girls to unnecessarily strip down, to be completely naked in his presence, for fake scoliosis exams, where he would require patients to bend over and grab their ankles while he ogled their naked bodies from behind. Hadden was often ungloved when performing these bogus examinations, which were done to indulge his own perverted interests.

6.      Indeed, according to one of the Corp Entities' nurses, she once returned, unexpectedly, to an exam room where Hadden was seeing a young, Spanish-only speaking patient, and witnessed Hadden, sitting at the base of the patient's body, beneath the drape that covered the patient's naked body, with "his eyes fully closed", "his face red and tight", "moving his fingers up and down and in and out of the patient's vagina". When this nurse reported Hadden's actions, to two supervisors employed by the Corp Entities' Defendants, **nothing** happened and Hadden was allowed to continue his abuse unabated.

7.     Hadden's *modus operandi* was to first break down his patients' boundaries through a grooming process[2] that is typical of prolific serial sexual predators like Hadden. This process involves the infliction of mental and emotional abuse, including wily, inappropriate, invasive, exploitive and confusing statements about, among other things, a patient's appearance (including statements such as "you look like a porn star") their body, sexual history, and sexual activity (such as whether the patients were still "virgins", how well endowed their husbands were, whether they used "toys" during sex, and whether their partners were able to please them). Once his patients were adequately "groomed", and their defenses had been broken down, Hadden would then proceed to physically, sexually exploit and abuse them.[3]

8.     Unfortunately, this grotesque story is nothing new. Universities, colleges, and hospitals across the country have employed physicians who have similarly, serially, sexually groomed and abused their patients including places like the University of Michigan, Rockefeller University Hospital, Michigan State University, University of California Los Angeles, and the University of Southern California.

9.     Over one billion dollars of compensation has been paid out to victims and survivors as a result of these grotesque encounters at University of Southern California alone.

---

[2]     Grooming is defined as "manipulative behaviors that the abuser uses to gain access to a potential victim, coerce them to agree to the abuse, and reduce the risk of being caught." SEXUAL ASSAULT, *Grooming: Know the Warning Signs*, RAINN (July 10, 2020), https://www.rainn.org/news/grooming-know-warning-signs ("Grooming"). Grooming is "usually employed" by someone "in the victim's circle of trust," and while it can take place in many different forms, it often follows a similar pattern, where abusers observe and select their victims based on ease of access to them or their perceived vulnerability, physically isolate them from those protecting them, attempt to gain trust through relationship building, desensitize to touch, discuss sexual topics, and attempt to make their behavior seem natural. *Id.*

[3]     In physician sexual offenders, grooming behaviors include "test[ing] the waters to establish a general atmosphere of forced intimacy and to see if his target will protest." *See* James M. DuBois, Heidi A. Walsh, et al., *Sexual Violations of Patients by Physicians: A Mixed-Methods, Exploratory Analysis of 101 Cases*, 31(5) SEXUAL ABUSE: A JOURNAL OF RESEARCH & TREATMENT 503, 506 (Aug. 2019) ("*Sexual Violations of Patients by Physicians*").

But, the Corp Entities Defendants stand alone in refusing to admit to their complicity, conspiracy, concealment, and cover-up of Robert Hadden's two-decades-long history of the sexual abuse that was happening right in front of them.

10.     The Corp Entities Defendants' direct knowledge of, and involvement in, Hadden's abuse makes these cases even more disturbing than what we've seen happen at other U.S. Universities.

11.  *First*, the Corp Entities Defendants ***knew as early as 1994*** that Robert Hadden was a dangerous sexual predator, yet inexplicably allowed Hadden to continue abusing and traumatizing female patients for ***two more decades***. *See,* e.g., CNN Report about the letter that a sexual assault survivor and whistleblower, sent to Dr. Harold Fox, then Acting Chairman of the Department of Obstetrics and Gynecology, dated May 30, 1994, along with the letter response from Chairman Harold Fox, back to sexual assault survivor/whistleblower, dated June 14, 1994, attached as ***Exhibit 'A'***.

12.  ***Second***, the Corp Entities Defendants engaged in a well-orchestrated and long-term cover-up of Hadden's serial abuse for the purpose of deceiving and duping the plaintiffs, and the public at large, into believing at varying times, and on countless occasions, that their employee, Robert Hadden had done nothing wrong, that he was simply providing legitimate and medically necessary OB/GYN services, and even that his later absence from the OB/GYN practice in 2012 was nothing out of the ordinary, and the product of his "health issues", "family issues", or his own "voluntary choice" to close his private practice and retire.

13.  ***Third***, when the Corp Entities Defendants incontrovertibly learned in 2012, through their General Counsel, Chairperson of the OB/GYN Department, and others, of Hadden's

criminal arrest by the New York City Police for sexually abusing a patient at 4 p.m. on Friday, June 29, 2012, *at their own medical clinic*, the Corp Entities Defendants incredibly (and amorally) appear to have helped *scramble a criminal defense lawyer to assist Robert Hadden* in overreaching the Manhattan District Attorney's Office, and the New York City Police Department, who then vacated Hadden's arrest, and permitted Hadden to return to their medical clinic the following week, such that he could **continue sexually abusing even more women for the next six weeks.** Not surprisingly, Hadden continued his sick pattern of sexual abuse, including the abuse of pregnant women, recent mothers, and minor children. Corp. Entities Defendants knew full well that allowing Hadden to continue seeing patients was dangerous, wrong, and knowingly placed wholly unsuspecting female patients at risk. But, they also felt the need to keep Hadden close, in an effort to prevent Hadden from revealing to the authorities the full extent of the Corp. Entities Defendants' knowledge and involvement in the abuse. For this egregious misconduct, the only thing the Corp. Entities Defendants have been able to muster to date is a hollow, half-hearted "regret that he saw patients again for several [more] weeks" after his arrest.[4]

14.    In their ongoing course of fraud, and fraudulent concealment, the Corp. Entities Defendants have continued to blatantly lie to their patients by stating in a "Dear Valued Patient" letter, dated April 24, 2013, that "Hadden has closed his practice at Columbia University Medical Center" [as if to say this was his "choice"] and that the Corp. Entities Defendants would "offer

---

[4]    Laura Collins, *EXCLUSIVE: Former Broadway dancer describes abuse at the hands of Columbia University staff gynecologist charged with sexually assaulting dozens of women including Andrew Yang's wife: She is now suing the institution for concealing it*, DAILY MAIL (Feb. 10, 2022), https://www.dailymail.co.uk/news/article-10465637/Former-Broadway-dancer-describes-abuse-hands-disgraced-Columbia-gynecologist.html (last visited Feb. 15, 2022).

you the opportunity to continue your care at our facility with one of his excellent partners". All the while, omitting the key detail that Hadden was no longer there because he was caught surreptitiously licking a patient's vagina during a bogus pelvic examination, was caught with lewd imagery on his office computers, had images of another patient's anatomy on his personal cell phone which he took without her knowledge or consent, had a 20 year history of sexually exploiting and abusing female patients, was known to sexually assault a pregnant patient in 1993, was arrested at their medical clinic by the New York City Police Department for sexual assault in 2012, and was under an active criminal investigation by the Manhattan District Attorney's Office —an investigation that ultimately led to Hadden's felony conviction for assaulting multiple patients under the guise of medical care and treatment. *See,* Letter from Dr. Katrina Eisinger, MD, dated April 24, 2013, attached hereto as ***Exhibit "B"***.

15.  Two years after Hadden's arrest in 2012, he was indicted by the Manhattan District Attorney's Office in June, 2014, on charges of sexual abuse, criminal sex acts, and forcible touching. Two years later in 2016, Hadden pled guilty to felony sexual assault (licking a patient during a bogus pelvic examination—which, according to the criminal indictment, was actually the second time Hadden assaulted that particular patient in that manner). Only then was Hadden forced to surrender his medical license. Incredibly, right up until the time of Hadden's guilty plea in the criminal case, the Corp. Entities Defendants continued to actively gas-light, lie to, and defraud the plaintiffs, the victims and survivors, law enforcement, and the public at large, by prominently maintaining Robert Hadden's professional profile and photograph on their website as a "Columbia OB/GYN". According to the ongoing criminal investigation, the FBI has revealed that defendant Corp. Entities allowed Robert Hadden to create, and use, a new

Columbia University email address, as recently as 2015, in order to communicate with members of the public, and presumably former patients, co-workers, administrators, victims, and survivors, while continuing to hold himself out as a bonafide, and respected (?), Columbia University OB/GYN. *See*, Order dated May 4, 2022, by Judge Richard M. Berman, United States District Court, S.D.N.Y., at Page 5, attached hereto, as ***Exhibit "C"***.

16.   Despite an Order, issued by the New York State Office of Professional Medical Conduct ("OPMC") in 2016, that requires all of Corp. Entities Defendants' patients to be informed of Hadden's loss of license, to practice medicine, the circumstances surrounding the surrender, and that fact that the Corp. Entities Defendants are the sole and exclusive custodians of Robert Hadden's patient-lists—to date, no such letter was ever sent by the Corp. Entities Defendants, or Robert Hadden, to all the patients. Columbia's decision to not comply with the OPMC's mandate of informing all of their patients is not an accident. The Corp. Entities Defendants' refusal to inform their patients is part of Columbia's intentional, conscious, and ongoing effort to defraud, and fraudulently conceal, Hadden's sexual exploitation and abuse from each and every former patient, such that the patients are unaware, and unable, to file a lawsuit within the statute of limitations period. The Corp. Entities Defendants' reprehensible conduct is knowingly, and intentionally, designed and calculated, to cause their patients to forbear from filing timely civil claims, and block victims' and survivors' access to the courts. *See*, OPMC Order dated February 26, 2016, attached hereto as ***Exhibit "D"***.

17.   On September 8, 2020, Hadden was indicted again, this time by the U.S. Attorney for the Southern District of New York, on six separate counts of enticing and inducing (trafficking) statutory victims, as well as "dozens of other victims" (including minors) to travel to his medical

9

offices in New York, where he subjected them to unlawful sexual abuse, from about 1993 to 2012.  *See,* Criminal Indictment, attached as ***Exhibit "E"***, *United States v. Hadden*, No. 1: 20-cr-00468-RMB (S.D.N.Y. Sept. 8, 2020), ECF No. 1.

18.  In a Press Release announcing Hadden's federal indictment, Audrey Strauss, Acting U.S. Attorney for the Southern District of New York, described Hadden as:

> A predator in a white coat [who] **used the cover of conducting medical examinations to engage in sexual abuse that he passed off as normal and medically necessary**, when it was neither normal nor necessary – it was criminal.[5]

> According to other news reports, "[t]he Manhattan District Attorney's Office is [currently] pursuing a ***criminal investigation*** into ***Columbia University's*** handling of incidents involving [Hadden]."[6]

19.     Plaintiffs now bring the following causes of action against Hadden, the Corp. Entities Defendants, or both for and under:

COA 1:       Title IX 20 USC 1681

COA 2:       Committing & Enabling Gender Violence in Violation of New York City Victims of Gender-Motivated Violence Protection Law, N.Y.C. ADMIN. CODE § 10-1101, *et seq.*

COA 3:       Committing & Enabling Sexual Harassment, Predatory Grooming, Sexual Exploitation & Sexual Abuse

COA 4:       Committing & Enabling Criminal & Civil Sexual Battery

COA 5:       Committing & Enabling Criminal & Civil Sexual Assault

---

[5]    Press Release, *Former Obstetrician/Gynecologist Robert Hadden Charged In Manhattan Federal Court With Sexually Abusing Patients*, DEP'T OF JUSTICE, U.S. ATT'Y'S OFF., S.D.N.Y. (Sept. 9, 2020), https://www.justice.gov/usao-sdny/pr/former-obstetriciangynecologist-robert-hadden-charged-manhattan-federal-court-sexually.

[6]    Graham Kates, *Columbia University under criminal investigation for its handling of sex assault allegations against doctor*, CBS NEWS (Sept. 11, 2020), https://www.cbsnews.com/news/columbia-university-investigation-robert-hadden-sexual-assault-allegations/ (emphasis added).

COA 6:      Unfair and deceptive business practices, N.Y. GEN. BUS. LAW § 349

COA 7:      Committing & Enabling Negligent Infliction of Emotional Distress

COA 8:      Committing & Enabling Intentional Infliction of Emotional Distress

COA 9:      Fraud, Constructive Fraud, and Fraudulent Concealment

COA 10:     Committing & Enabling Negligence & Professional Negligence

COA 11:     Negligent Supervision

COA 12:     Negligent Per Se Conduct in Violation of Mandatory Reporting Laws &
            Breach of Mandated Duty to Report, N.Y. SOC. SERV. LAW §§ 413, 420;

COA 13:     Negligent Hiring, Retention & Ratification

COA 14:     Failure to Warn, Train, Educate

COA 15:     Gross Negligence, Wanton, Willfull & Reckless Conduct

COA 16:     Invasion of Privacy

COA 17:     Violation of New York State Human Rights Law, N.Y. EXEC. LAW § 290,
            *et seq.*;

COA 18:     Violation of New York City Human Rights Law, N.Y.C. ADMIN. CODE §
            8-101, *et seq.*;

COA 19:     AIDING AND ABETTING;

COA 20:     False advertising, N.Y. Gen. Bus. Law § 350

COA 21:     Violation of New York Penal Law § 130.00 - 130.96, et seq., and
            New York CPLR § 214-g Child Victim Act
            (On Behalf of Plaintiff Jane Doe 16 and Jane Doe 29 only)

20.    In bringing these causes of action, plaintiffs seek reasonable reparations

totaling hundreds of millions of dollars for the damage caused and created by the Corp.

Entities Defendants who willingly enabled, aided, abetted, concealed, and repeatedly

covered up, Robert Hadden's abuse for over two-decades. Not only did the Corp. Entities Defendants expose a countless number of unsuspecting women and girls to a known sexual predator—creating what is believed to be thousands of victims and survivors—the Corp. Entities Defendants also knowingly, and willingly, profited from Robert Hadden's sexual exploitation and abuse by scamming dozens of health insurance companies, and patients, out of what is estimated to be in excess of a billion dollars by engaging in a pattern of illegal billing for wholly medically-unnecessary tests and physical examinations such as: serial PAP smears, serial vaginal cultures, non-indicated and invasive cervical cautery procedures, short-interval serial clinical follow-up examinations, routinely billing for extended clinical office examinations, and other bogus medical appointments, testing, and examinations, including forcing patients to repeatedly return for office appointments—where they were subjected to invasive and sexually exploitative physical examinations by Hadden—in exchange for 30 to 60 days worth of free contraception, none of which has any actual medical justification or basis.

**PARTIES**

*The Defendants*

21.   Defendant Columbia University is a corporation organized under the laws of the State of New York and has its principal place of business in the State of New York, county of New York, located at 116th and Broadway, New York, NY 10027.  Plaintiffs were all patients of Columbia University or its agents, servants, employees at all times material to this Complaint.

22.   Defendant Trustees of Columbia University in the City of New York is a domestic, not-for-profit corporation organized under the laws of the State of New York and has its principal

place of business in the State of New York, County of New York, located at Low Memorial Library, 535 West 116th Street, New York, NY 10027.   Trustees is sometimes referred to as "Columbia Corporation." The Board of Trustees is the governing body of Columbia University and exercises the ultimate dominion and control of Columbia University.  The Board of Trustees is comprised of a collection of well-established, politically connected, businesspeople from within, and outside of, the city of New York. Upon information and belief, Trustees oversees, operates, manages, or controls the obstetrics and gynecological service within, among other places, Columbia University, NYPH, and the Department of Obstetrics and Gynecology of CUCPS and Sloan.

23.   Defendant Columbia University Vagelos College of Physicians and Surgeons is a domestic, not-for-profit corporation organized under the laws of the state of New York and has its principal place of business in the state of New York, located at 630 West 168th Street, New York, NY 10032.

24.   Defendant The New York Presbyterian Hospital is a domestic, not-for-profit corporation organized under the laws of the state of New York and has its principal place of business in the state of New York, located at 630 West 168th Street, New York, NY 10032.

25.   Defendant Sloan Hospital for Women provides OB/GYN services within and for NYPH, and runs the Department of Obstetrics and Gynecology of CUCPS.  Sloan's principal place of business is located at 3959 Broadway at 165th Street, New York, NY 10032.

26.   Defendant Columbia University Irving Medical Center f/k/a Columbia-Presbyterian Medical Center is a domestic, not-for-profit corporation organized under the laws of the State of New York with its principal offices located at 630 West 168th Street, New York, NY 10032.

27.     Defendant Presbyterian Hospital Physicians Services Organization, Inc. is a domestic, not-for-profit corporation organized under the laws of the State of New York with its principal offices located at 630 West 168th Street, New York, NY 10032.

28.   Defendant Columbia Cornell Network Physicians, Inc. is a domestic, not-for-profit corporation organized under the laws of the State of New York with its principal offices located at 900 Third Avenue, Suite 500, New York, NY  10022.

29.     Defendant Columbia-Presbyterian East Side Associates is a domestic, not-for-profit corporation organized under the laws of the State of New York with its principal offices located at 16 East 60th Street, New York, NY 10022.

30.     Defendant East Side Associates is a domestic, not-for-profit corporation organized under the laws of the State of New York with its principal offices located at 16 East 60th Street, New York, NY 10022.

31.   Defendant Robert Hadden is and was at all material times a resident of the state of New Jersey, residing, upon information and belief, in Tenafly, New Jersey.  At all material times, Hadden was an agent, servant, or employee of the Corp. Entities Defendants. Hadden was a physician licensed to practice medicine in the State of New York. Beginning in approximately 1987, Hadden began a residency at what was then known as New York Presbyterian in the City of New York, in Obstetrics and Gynecology, and completed his residency on June 30, 1991. In July, 1991, Hadden was an assistant professor of clinical OB/GYN at Columbia University College of Physicians and Surgeons, and was an assistant attending at what is now known as New York Presbyterian Hospital. Hadden was assigned to the OB/GYN department of the Audubon Clinic, an entity of Columbia Presbyterian Medical Center, from 1991 to the mid-to-

late 1990's.    Hadden was hired, employed, credentialed, or enlisted by the Corp. Entities Defendants to render Gynecologic and Obstetric care to their patients. Hadden is a sexual predator who serially sexually assaulted and abused Plaintiffs, and countless other unsuspecting female patients, on the premises, and with knowledge, of the Corp. Entities Defendants. On or about February 22, 2016, Hadden pled guilty to (and was convicted of) the criminal and felonious sexual assault of patients that he sexually exploited and abused on the premises, and at the offices of the Corp. Entities Defendants, and with knowledge, and permission, of the Corp. Entities Defendants. Specifically, Hadden pled guilty to sexually abusing two female patients, one by licking her vagina during a bogus postpartum vaginal examination – which was the second time that Hadden assaulted this patient—and the other by sexually abusing a female patient with his ungloved hands. Hadden was sentenced on March 29, 2016.

32.   On September 8, 2020, Hadden was indicted by a Grand Jury in the United States District Court, for the Southern District of New York on six counts relating to the unlawful sexual abuse of different patients. On July 15, 2021, a superseding indictment against Hadden was filed in the Southern District of New York, increasing the number of counts to seven (7). Jury selection is scheduled for September 12, 2022.

**_The Plaintiffs_**

33.    Plaintiff Jane Doe 16 is a resident and citizen of the State of New Jersey. At all times material to this complaint, Jane Doe 16, was a minor child, under the laws of the State of New York, and a gynecology patient of the Corp. Entities Defendants and their agent, servant, and/or employee, Hadden, who, while in the scope of his employment with the Corp. Entities Defendants, and while performing services for the Corp. Entities Defendants, repeatedly

groomed, sexually exploited, assaulted and abused Jane Doe 16 under the guise of medical care and treatment between approximately 2010 and 2012, which was enabled by the acts and omissions of the Corp. Entities Defendants.

34.   Plaintiff Jane Doe 29 is a resident and citizen of the State of North Carolina. At all times material to this complaint, Jane Doe 29 was a minor child, under the laws of the State of New York, and a gynecology patient of the Corp. Entities Defendants and their agent, servant, and/or employee, Hadden, who, while in the scope of his employment with the Corp. Entities Defendants, and while performing services for the Corp. Entities Defendants, repeatedly groomed, sexually exploited, assaulted and abused Jane Doe 29 under the guise of medical care and treatment between approximately 2005 and 2011, which was enabled by the acts and omissions of the Corp. Entities Defendants.

35.   Plaintiff Jane Doe 79 is a resident and citizen of the state of New York. At all times material to this complaint, Jane Doe 79 was a gynecology and obstetrics patient of the Corp. Entities Defendants and their agent, servant, and/or employee, Hadden, who, while in the scope of his employment with the Corp. Entities Defendants, and while performing services for the Corp. Entities Defendants, repeatedly groomed, sexually exploited, assaulted and abused Jane Doe 79 under the guise of medical care and treatment between approximately 2005 and 2011, which was enabled by the acts and omissions of the Corp. Entities Defendants.

36.   Plaintiff Jane Doe 82 is a resident and citizen of the state of New York. At all times material to this complaint, Jane Doe 82 was a gynecology and obstetrics patient of the Corp. Entities Defendants and their agent, servant, and/or employee, Hadden, who, while in the scope of his employment with the Corp. Entities Defendants, and while performing services for the

Corp. Entities Defendants, repeatedly groomed, sexually exploited, assaulted and abused Jane Doe 82 under the guise of medical care and treatment between approximately guise of medical care and treatment between approximately 2000. and July 24, 2012, which was enabled by the acts and omissions of the Corp. Entities Defendants.

37.   Plaintiff Jane Doe 84 is a resident and citizen of the State of New York. At all times material to this complaint, Jane Doe 84 was a a gynecology and obstetrics patient of the Corp. Entities Defendants and their agent, servant, and/or employee, Hadden, who, while in the scope of his employment with the Corp. Entities Defendants, and while performing services for the Corp. Entities Defendants, repeatedly groomed, sexually exploited, assaulted and abused Jane Doe 84 under the guise of medical care and treatment between approximately guise of medical care and treatment between approximately 2010 and July 24, 2012, which was enabled by the acts and omissions of the Corp. Entities Defendants.

**JURISDICTION AND VENUE**

**THE COURT HAS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER 28 U.S.C. § 1331, BECAUSE IT ARISES UNDER THE LAWS OF THE UNITED STATES.**

38.      Venue is proper under 28 U.S.C. §1391(b)(2) because all of the events and omissions giving rise to these claims occurred in this District, and the Corp. Entities Defendants reside or have their principle place of business in this District.

**GENERAL ALLEGATIONS**

39.      The American Medical Association's Principles of Medical Ethics commits its members to "providing competent medical care, with compassion and respect for human dignity and rights," reporting "physicians deficient in character," and regarding "responsibility to the

patient as paramount."[7] Columbia's Robert Hadden not only pleaded guilty to sexually assaulting two unsuspecting patients under the guise of medical care, but the New York OPMC also found Hadden guilty of engaging in "inappropriate physical or verbal conduct, for other than a good faith medical purpose." See, **Exhibit** "**D**", OPMC Order of February 26, 2016.

40.     Although data indicates that most physicians practice medicine with integrity, sexual misconduct is one of the common reasons for disciplinary action by medical boards.[8]

41.     Moreover, OB/GYN doctors, such as Hadden, are among the most frequent to commit sexual violations, representing 12.9% of all cases[9] while only representing 4.6% of the physician population as a whole.[10]

42.     Psychological conditions caused by sexual misconduct against patients are profound and damaging, and include depression, anger, shame, betrayal, divorce, drug and alcohol abuse, trust issues, post-traumatic stress symptoms, and suicide, similar to those observed in the general population of survivors of sexual violence.[11] All of which appear to have been experienced, including suicide, by at least one or more of the victims of the Corp. Entities' 20-year history of enabling of Robert Hadden's sexual exploitation and abuse.

43.     However, one significant difference between patient-victims and non-patient victims in the general population is that fewer than one in ten patient-victims report sexual

---

[7]     AMA Code of Medical Ethics, *AMA Principles of Medical Ethics*, AM. MED. ASS'N (Revised June 2011), https://www.ama-assn.org/sites/ama-assn.org/files/corp/media-browser/principles-of-medical-ethics.pdf.

[8]     *See Sexual Violations of Patients by Physicians*, *supra* Footnote 3 (FN 3), at 504.

[9]     *See id.* at 506, 513.

[10]     *See* Association of American Medical Colleges, *Active Physicians in the Largest Specialties, 2017*, https://www.aamc.org/data-reports/workforce/interactive-data/active-physicians-largest-specialties-2017 (last visited Feb. 28, 2022).

[11]     *See Sexual Violations of Patients by Physicians*, *supra* FN 3, at 504.

violations by their physicians, while the overall sexual assault reporting rate among non-patient victims is almost four times greater, at 36%.[12]

44.     Reasons for this significantly lower rate of reporting sexual violations against patient-victims includes shame, fear of not being believed, and crucially, ***not being aware of the abuse, and confusion as to whether the abuse occurred***.[13] This concept has been well researched and written about by Dr. Jennifer Freyd, and is called "betrayal blindness[14]".   *See,* "What is Betrayal Trauma? What is Betrayal Trauma Theory?", annexed as ***Exhibit "F".***

45.     Low levels of health literacy[15] are also a significant contributor to a victim's lack of awareness of sexual abuse, as well as their confusion as to whether abuse occurred.[16]

---

[12]   *See id.*

[13]   *See id.*

[14] See, ***Exhibit "F"*** "What is a Betrayal Trauma? What is Betrayal Trauma Theory?" by Jennifer Freyd, PhD. Betrayal Truma, Betrayal Blindness, and Institutional Betrayal is **the unawareness, not-knowing, rationalizing, and forgetting exhibited by people towards betrayal**. The term "betrayal blindness" was introduced by Dr. Freyd in 1996, expanded by Freyd (1999) and Freyd and Birrell (2013) in the context of Betrayal Trauma Theory. It occurs in situations where the victim is dependent upon the perpetrator for the victim's own well being or survival. This dynamic is commonly seen in relationships between children and parents, athletes and coaches, and patients and their physician. When and act of betrayal, such as sexual abuse, occurs in this setting, the victim, knowing that she/he is dependent upon the perpetrator for their survival, will often rationalize the abuse, tell themselves it's not that bad, or convince themselves that they have somehow misinterpreted what was done to them, because the mere act of acknowledging the abuse for what it is, has the effect of putting other, or all, aspects of the victim's health, well being, and survival in jeopardy. See, Blind to Betrayal: Why We Fool Ourselves We Aren't Being Fooled (2013), by Jennifer Freyd and Pamela Birrell.

[15]   "Health literacy is defined as the degree to which individuals have the 'capacity to obtain, process, and understand basic health information and services needed to make appropriate health decisions.'" Kimberly A. Kilfoyle, MD, MSCR, Michelle Vitko, BA, et al., *Health Literacy and Women's Reproductive Health: A Systematic Review*, J. WOMEN'S HEALTH at 1237 (Dec. 1, 2016) ("*Health Literacy and Women's Reproductive Health*").   While "[m]ore rigorous studies are clearly warranted," some studies have shown as high as "78% of women had less than adequate health literacy skills," and limited health literacy "is likely to be common in reproductive health practices." *Id.* at 1253.

[16]   *See* Richard S. Safeer, MD, Jann Keenan, ED.S, *Health Literacy: The Gap Between Physicians and Patients*, 72(3) AM. FAM. PHYSICIAN (Aug. 1, 2005), at 464 ("*The Gap Between Physicians and Patients*").

46.     Other factors that contribute to the sexual assault of patient-victims include the social authority that physicians have to instruct patients to disrobe and to examine them in a setting often without any oversight,[17] much like Hadden had.

47.     It is axiomatic that lack of institutional oversight is a significant contributing factor to sexual violations of patients by physicians.[18]

48.     Chaperone presence, while a patient is being examined, is not enough to make up for a lack of oversight.  Studies have shown that 19% of sexual assaults committed by physicians occur with a chaperone, parent, nurse, or other individual present. Oftentimes, this is due to the chaperone doing paperwork, or the chaperone intentionally not observing in order to avoid implying mistrust of the physician, or because of the power imbalance that invariably exists between the doctor and the nurse chaperone.[19]

49.     Despite documented patient complaints, documented responses by Department Chairs, and even a New York Police Department arrest of Hadden at one of the Corp. Entities Defendants' medical clinics, no crime by Robert Hadden was too big for Corp. Entities Defendants or Columbia University to cover-up.

50.     Following Hadden's arrest at defendants' medical clinic on June 29, 2012 (Friday afternoon), for licking a patient during a bogus postpartum vaginal exam – **_and with the knowledge and awareness of_** Columbia University's General Counsel, Jane E. Booth ("Booth"), Columbia University's OB/GYN Head Administrator, Genie Delacarrie ("Dellacarrie"), Hadden's OB/GYN superior, John Evanko, MD ("Evanko"), and the actual Chairperson of the

---

[17]   *See Sexual Violations of Patients by Physicians*, *supra* FN 3 at 516.

[18]   *See id.* at 515.

[19]   *See id.* at 518.

Department of Obstetrics & Gynecology at Columbia University, Mary D'Alton, MD ("D'Alton")[20] – sexual predator Hadden was allowed to return to the Corp. Entities Defendants' clinics the following week where he continued to sexually exploit, assault, and abuse single women, married women, pregnant women, recent mothers, and minors *for at least another six weeks—but possibly a year or so longer as two patients have reported being exposed to Hadden at different office locations in 2013*. See attached NYPD Investigative Interview at *Exhibit "G"*.

51.    None of this should have ever happened. Studies show that 96% of cases of sexual violations by physicians involved *repeated abuse*, rather than a one-off incident, with 73% of such continuing for *more than one year*.  Moreover, 57% of cases of sexual violations by physicians involved *five or more victims*.[21]

52.    The Corp. Entities Defendants, including their principals, administrators, chairpeople, Provost, Trustees, and, upon information and belief, even the President of Columbia University Lee Bollinger, knew of Hadden's prolific sexual predation of female patients dating back to the early 1990s, and yet did nothing to stop Hadden's abuse of women and children.

---

[20]   These allegations of Columbia's direct knowledge are supported by, among other things, Jane E. Booth's (Columbia University's General Counsel) physical presence at the District Attorney of New York's ("DANY") interview of one of Columbia's chaperones on or about July 11, 2012, during the District Attorney's sex crimes investigation of Hadden, and Evanko and D'Alton's presence at their Columbia offices on East 60th Street, New York, NY, when the investigators appeared at that location on June 30, 2012, to interview the OB/GYN Department Administrator, Genie Delacarrie, regarding Hadden's sex crimes. It is unclear why Booth was even permitted to be present for the confidential chaperone interview (who was employed by New York Presbyterian Hospital—not Columbia University), particularly since the chaperone already had an attorney, Helen Cantwell, representing her for the interview, and the Columbia Defendants themselves had potential criminal liability for Hadden's crimes.

[21]   *See Sexual Violations of Patients by Physicians*, *supra* note 3, at 513.

53.     Instead, the Corp. Entities Defendants and their staff engaged in a 25 year cover-up of Hadden's serial sexual exploitation and abuse, allowing for hundreds, if not thousands, more patients to be victimized by Hadden.

54.     As a result of the collusion, aiding, abetting, enabling, concealment, and cover-ups by the Corp. Entities Defendants, who all played an integral role, the Corp. Entities Defendants and their agents, servants and employees, are all directly responsible for helping Hadden become the most prolific serial sexual predator in the history of New York.

55.     These events are not isolated, and they were not done outside the knowledge and awareness of the Corp. Entities Defendants. The Corp. Entities Defendants knew that Hadden was known as "a shark" - a doctor who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going – amongst the medical assistants and chaperones with whom he worked.

56.     At least one nurse who worked with Hadden between 1992 and 1993 walked in on Hadden sexually abusing a female patient at Columbia University's Audubon Clinic. However, when the nurse reported the abuse Hadden was committing to her supervisor, the supervisor's response was for her to just "keep quiet," "stay with your doctor," and "don't let him get himself in trouble."

57.     The Corp. Entities Defendants created and fostered an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support its other employees, such as its nurses, medical assistants and chaperones, the Corp. Entities Defendants created and fostered an environment where patients, including minor patients, were duped and lulled into believing that there was someone in the

examination room who would keep them safe. But, in reality, the clear imbalance of power that exists between the chaperones and medical doctors – where the chaperones were afraid to speak-up for fear of losing their jobs – ***had the very real and practical effect of making doctor sexual abuse appear to be legitimate medical care when viewed from the perspective of any reasonable patient***. After all, if what the doctor was doing constituted sexual abuse of the patient, wouldn't the very person whose duty it is to prevent such abuse (the chaperone) do something?

58.     Because the Corp. Entities Defendants' chaperones stood by silently and watched – and effectively participated in the sexual exploitation, abuse and cover-up of Hadden's serial sexual misconduct by failing to prevent or stop Hadden – Plaintiffs reasonably believed that Hadden must have been conducting legitimate and necessary medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, penetrating, and digitally raping them, although they now know that Hadden's conduct was, in fact, sexual exploitation and abuse.

59.     Despite the Corp. Entities Defendants' chaperones' first-hand observation of the abuse and Hadden's history of evading their observation by telling the chaperones to leave the room, and the Corp. Entities Defendants' prior reports about Hadden's sexual misconduct, the Corp. Entities Defendants and their agents, partners, servants, and employees actively concealed Hadden's sexually exploitative behavior, and inexplicably continued to allow Hadden to have unfettered sexual access to the female and minor female patients at the Corp. Entities Defendants' medical facilities.

60.   Based on the words and conduct of each of the Defendants, their agents, servants, and/or employees, Plaintiffs were lulled into and induced not to file complaints earlier.  Further, Plaintiffs have been emotionally traumatized by Defendants' conduct and abuse, and have lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

61.   Moreover, the pervasive sexual abuse of patients in the Corp. Entities Defendants' medical centers has continued unabated, even after Hadden's arrest and termination. In just 2019, pediatric gastroenterologist and tenured professor at CUCPS, Joel Lavine ("Lavine"), was arrested for sexual abuse of a former patient and was subsequently convicted of two counts of sexual abuse in the third degree.[22] Prior to his arrest, Lavine had multiple complaints lodged with the Corp. Entities Defendants against him (including by a female co-worker), but was still allowed to return. And, even now nearly three years since his arrest, Lavine's tenure has not been terminated, he appears to continue living in housing owned and provided by the Corp. Entities Defendants, and continues to enjoy unfettered access to all Corp. Entities Defendants-owned buildings, including the campus at Columbia University.

---

[22]   Graham Kates, *Suspended Columbia University doctor sentences for abusing former patient*, CBS NEWS (Feb. 18, 2022), https://www.cbsnews.com/news/columbia-university-doctor-joel-lavine-sentenced-sexual-abuse-former-patient/.

62.     Perhaps worst of all, Hadden and Lavine's egregious misconduct are not isolated incidents. The Corp. Entities Defendants have repeatedly allowed employees accused and even *convicted* of sexual misconduct to remain employed by them.[23] [24]

---

[23]  Karen Xia & Khadija Hussain, *Up against the invincible: A professor was convicted of sexual misconduct. Why is he still on campus?*, COLUMBIA SPECTATOR (Apr. 11, 2019), https://www.columbiaspectator.com/news-features/2019/04/11/up-against-the-invincible-a-professor-was-convicted-of-sexual-misconduct-why-is-he-still-on-campus-2/ (last updated June 9, 2019).

[24]  See, e.g., Thomas Roma <https://hyperallergic.com/419929/thomas-roma-sexual-misconduct-accusations/> - Professor of the Arts - Serial Sexual Harassment of female students for two-decades; Robert Hadden <https://www.atdlaw.com/2013/08/09/the-new-york-and-presbyterian-hospital-fails-to-enforce-basic-patient-safety-rule-resulting-in-serial-sexual-assaults-of-female-patients-by-dr-robert-hadden/> - Obstetrician Gynecologist - Serial Sexual Exploitation and Abuse of female patients for two-decades; William Harris <https://www.nytimes.com/2017/12/18/nyregion/william-harris-columbia-harassment.html> - Professor of History - Sexually assaulted female students for decades through Dec. 2017; Thomas Jessell <https://www.columbiaspectator.com/eye-lead/2018/04/20/under-the-veil-the-silence-surrounding-sexual-harassment-in-labs-at-columbia/> - Neuroscience Professor - Sexually assaulted female researcher from 2014 though 2018; Tom Hartford <https://nypost.com/2018/08/28/bombshell-suit-alleges-columbia-dean-coerced-student-into-sex/> - Dean of Students - Sexually assaulted freshman female student seeking housing in 2018; Geert Bekaert <https://poetsandquants.com/2018/07/27/prof-wins-1-25-million-from-columbia-b-school-professor-geert-bekaert/> - Professor of Business - Sexually harassed female researcher and tried to sabotage her career.

**FACTS SPECIFIC TO PLAINTIFFS**

*Plaintiff Jane Doe 16:*

63.     Jane Doe 16 was born in 1994.

64.     Jane Doe 16 was a gynecology patient of Corp. Entities Defendants, at all times relevant to this Complaint.

65.     Jane Doe 16 was repeatedly sexually exploited and abused by Hadden.

66.     The Corp. Entities Defendants enabled Jane Doe 16's abuse by their acts and omissions.

67.     Jane Doe 16 saw Hadden at the Corp. Entities Defendants' medical facilities, including NYPH, for what was purported to be gynecologic care and treatment between approximately 2010 and 2012.

68.     At the time of her first visit with Hadden, Jane Doe 16 was a full-time high-school student and a minor under the laws of the State of New York.

69.     Hadden was the doctor who delivered Jane Doe 16 and used this relationship with both Jane Doe 16 and her mother in order to carry out his scheme of sexual exploitation and sexual abuse of Jane Doe 16, a minor child.

70.     Beginning with Jane Doe 16's initial office visit as a gynecology patient, Hadden began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse.  During each of her visits with Hadden, Hadden assailed Jane Doe 16 with a barrage of wily, inappropriate, invasive, intrusive and exploitive questions and statements about her appearance, body, sexual history, and sexual activity including, among other things,

questioning Jane Doe 16 about her virginity and eliciting intimate and inappropriate details about how close she had gotten to experiencing sexual intercourse.

71.    Hadden's approach to grooming Jane Doe 16 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive.  These behaviors are classic "grooming" behaviors.[25]

72.    While Hadden was actively and verbally breaking down Jane Doe 16's boundaries, Hadden forced Jane Doe 16 to answer questions about herself, her school, and her sex life; including the number of times she had climaxed, if she had engaged in oral sex, and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling her with a lascivious facial expression, and groping her unclothed body, breasts, and vagina.  While ogling and groping Jane Doe 16's unclothed body, Hadden continued to engage in idle chatter about medically irrelevant information, in his efforts to distract the child, and allow him to prolong the groping of the child's naked body.

73.    During Jane Doe 16's initial visit with Hadden, a chaperone was present in the room at the beginning and witnessed the verbal and physical exploitation, abuse, and assaults firsthand, yet did nothing to prevent or stop Hadden's sexual exploitation and abuse of Jane Doe 16. After Hadden realized the chaperone had witnessed some of his abuse of Jane Doe 16, Hadden instructed the chaperone to leave the examination room. The chaperone initially objected to leaving, but Hadden persisted and the chaperone left the room. Once alone with Jane Doe 16, Hadden instructed her to remove all of her clothing and proceeded to perform a medically unnecessary, unwarranted, prolonged, and inappropriate breast exam of Jane Doe 16, during

---

[25]    *Grooming*, *supra* note 2.

which Hadden squeezed, fondled, massaged, pulled, tugged, and pinched the minor child's breasts and nipples. Hadden commented that Jane Doe 16 was a "desirable young girl".

74.     Once this "breast exam" was complete, Hadden instructed Jane Doe 16 to stand naked before him, turn her back to him, and bend over under the pretense of performing a medically unnecessary, unwarranted, prolonged, and inappropriate scoliosis exam. Once bent over at Hadden's instruction, Hadden proceeded to ogle and gaze lewdly at Jane Doe 16's exposed buttocks and vagina.

75.     Also during this initial visit, Hadden directed Jane Doe 16 to get on the table. Hadden proceeded to "pose" Jane Doe 16 "on all fours," while she was completely naked. Hadden proceeded to perform a prolonged, medically inappropriate, unnecessary, and unwarranted breast examination, prolonged, medically inappropriate, unnecessary, and unwarranted vaginal examination, and a prolonged and medically inappropriate exploration of a rash around Jane Doe 16's pubic area, all the while as Jane Doe 16 was being posed on her hands and knees naked before Hadden, who then proceeded to rub both of his ungloved hands up and down her body, groping her, spreading her buttocks, examining the crevices of the most intimate parts of her body, and spreading her vagina as he leered into all of her private areas.  All the while, Hadden would continue to engage in idle chatter about Jane Doe 16, commenting on her body, and her lack of sexual activity, in furtherance of Hadden's never-ending pedophiliac-grooming and sexual exploitation of this minor female patient.  During the serial, prolonged, medically inappropriate, unnecessary, and unwarranted vaginal examinations that Hadden performed at both visits, Hadden penetrated Jane Doe 16 by inserting his fingers, into Jane Doe 16's vagina.  All of these so-called "examinations" were done in a deviant and sexual manner

solely for Hadden's own prurient, deviant, despicable, degenerate and lecherous sexual gratification.

76.     During Jane Doe 16's second visit, Hadden learned that Jane Doe 16 had just recently lost her virginity.   At the time, Jane Doe 16 had only one partner, and very little experience with sex or sexual activity. Hadden barraged her with invasive and intrusive, medically inappropriate, unwelcome and unsolicited questions about whether or not her partner was "satisfying" her, and instructed her on the various methods she could use to masturbate. Despite her age and lack of sexual experience, Hadden instructed Jane Doe 16 that a vaginal examination and PAP smear (a procedure to test for cervical cancer in women) was necessary. He further informed Jane Doe 16 that she had a "retroverted" uterus, which would cause her to experience "pain during sex", and was nothing more than a sham 'diagnosis' routinely employed by Hadden for the purpose of excusing his desire to stick his hands deeply inside the vaginas of his unsuspecting victims, "feel around" for prolonged periods of time, and provide the appearance that he was doing something other than engaging in an abject digital-rape of the patient. Following this charade, Hadden would then engage his victims in a dialogue about sexual positions that may feel better, or more intense, for them on account of their wholly made up medical condition. None of this had any basis in medicine. And all of it was simply a ruse concocted by a wily and skillful, serial, sexual felon who, with the help of Columbia University, was given a license to sexually exploit and abuse women and girls on a daily basis.

77.     Hadden provided birth control to Jane Doe 16, but just enough to last a short period of time, and he would instruct her to make frequent future appointments when it came time to refill the "prescriptions", so she could undergo further inappropriate, wholly unnecessary,

medically unwarranted vaginal examinations. Hadden's intent was to have unfettered access to the minor child's body, her breasts, and her vagina.

78.     During this exploitative and abusive second visit, Hadden spent a long time doing the medically unnecessary and inappropriate PAP smear and vaginal examination, during which Hadden stimulated Jane Doe 16's "g-spot" for several seconds and inserted multiple fingers into her vagina.  Hadden also performed another medically unnecessary, unwarranted, prolonged, and inappropriate breast exam of Jane Doe 16 during this second visit, wherein Hadden again squeezed, fondled, massaged, pulled, tugged, and pinched Jane Doe 16's breasts and nipples. On this occasion, Jane Doe 16 noticed that Hadden had a partial erection.

79.     Hadden "diagnosed" Jane Doe 16 with "fibrocystic breasts", however, there were no imaging studies performed which would have led to this bogus diagnosis, and Hadden's "diagnosis" was done for the sole purpose of justifying the groping and fondling of the minor child's breasts. There is no medical standard of care that involves the groping, massaging, fondling, caressing, pulling and tugging on the breasts of a minor female child.

80.     Because of her young age, and due to the fact that Hadden was the first gynecologist that Jane Doe 16 saw, Jane Doe 16 had no reason to suspect or understand that any of the "tests" and "examinations" Hadden performed were abnormal or unusual because Jane Doe 16 had nothing to compare them to.[26]

81.     Following the second abusive and exploitative vaginal examination, Jane Doe 16 did not return to defendant Hadden for gynecological treatment and services.

---

[26]   The lack of medical literacy and knowledge is a significant reason that fewer than one in ten victims of sexual assault in medicine report the assault, which is significantly lower than the overall rate of 36% of cases of rape or sexual assault in the U.S. reported to police by female victims. *See Sexual Violations of Patients by Physicians*, *supra* note 3, at 504.

82.     At all times relevant to Jane Doe 16's experiences with Hadden, Hadden was well aware of the cognitive dissonance that his patients – who he was sexually abusing – would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them – especially as a minor like Jane Doe 16,  who was literally brought into this world into the hands of Hadden 16 years earlier.

83.     Hadden used his history with Jane Doe 16 and her mother to his disgusting advantage while exploiting his position of trust and authority bestowed on him by the Columbia Defendants, to his own depraved benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing routine medical procedures.

84.     As a result, Hadden was able (and enabled by the Corp. Entities Defendants) to sexually abuse countless female patients of the Columbia Defendants in a serial fashion, while carrying out his sick and disturbing fantasies surrounding doctor sexual abuse. Columbia University's (and its related entities) active concealment, lies, verbal, non-verbal, and written statements to the plaintiff in particular, and the public at large, were designed to cause, and did cause, plaintiff to forbear on pursing both civil and criminal legal action against the Defendants named here. As a result of the grooming, mental impact, psychological harm, physical trauma, and intentional acts of psychological manipulation that were inflicted upon the plaintiff,  by the Corp. Entities Defendants, the plaintiff suffered cognitive dissonance and a qualified deficit that was designed to cause, and did cause, plaintiff to be unable to protect her own legal rights and interests. Finally, on account of Defendants' collective fraud, and fraudulent concealment, committed against Jane Doe 16, the plaintiff did not know, could not have reasonably known,

and was not reasonably aware of any possible cause of action that she had against the Columbia Defendants until she spoke with counsel on or about August 30, 2018.

***Plaintiff Jane Doe 29:***

85.     Jane Doe 29 was born in 1990.

86.     At the time of her first visit with Hadden, Jane Doe 29 was a full-time high-school student and a minor under the laws of the State of New York.

87.     Jane Doe 29 was repeatedly sexually exploited and abused by Hadden.

88.     The Corp. Entities Defendants enabled Jane Doe 29's abuse by their acts and omissions.

89.     Beginning with Jane Doe 29's initial office visit, for what was purported to be treatment for acne, and contraceptives, Hadden began subjecting her to a course of predatory grooming, boundary violating, mental, emotional and physical sexual abuse. During the visits, Hadden assailed Jane Doe 29 with a barrage of wily, inappropriate, invasive and exploitative questions and statements about her family, as well as her appearance, her body, sexual history and sexual activity, questioning Jane Doe 29 about her virginity and eliciting intimate and inappropriate details about how close she had been to experiencing sexual intercourse with a male. Hadden's approach to grooming Jane Doe 29 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear-mongering, and overtly offensive. While Hadden was actively and verbally breaking down Jane Doe 29's boundaries, he peppered her with a series of irrelevant and wholly medically inappropriate questions for prolonged periods of time while ogling and groping her breasts.

90.    A chaperone was present but would leave the examination room during the verbal and physical exploitation and assaults. Despite the fact the chaperones witnessed Hadden's verbal and physical sexual abuse firsthand, nothing was done to prevent or stop Hadden's sexual exploitation and abuse of a minor child. During the initial office visit, Hadden directed Jane Doe 29 to remove all her clothes, and when nobody was present, proceeded to question her about whether or not she masturbated. Hadden proceeded to give Jane Doe 29, wholly unwelcome, unwarranted, unsolicited, graphic and explicit sexual "tips and advice" about different methods of masturbation and how she could "pleasure" herself.

91.    Hadden conducted serial, medically unnecessary and unwarranted Pap smears and vaginal examinations. Hadden recommended Jane Doe 29 be administered HPV injections. During the administration of the first HPV injection, Hadden instructed Jane Doe 29, to drop her pants and underclothing, expose her buttocks, and bend over his desk, so he could administer the shot in Jane Doe 29's buttock. Hadden never told the patient that HPV shots are to be administered in arms, as per the medical guidelines and standards. When Jane Doe 29 presented for her second injection, she was seen by a nurse - not Hadden - and Jane Doe 29 asked the nurse if she should remove her pants for the injection. Upon making this inquiry, the nurse looked at Jane Doe 29 as if she "was nuts". Jane Doe 29 proceeded to have a discussion with the nurse about the fact that Hadden had refused to administer the first injection in her arm, which was the appropriate site. Although the nurse was apprised of this information, she offered no support to the minor child, Jane Doe 29, nor did the nurse do anything further. The actions and statements made by the nurse caused Jane Doe 29 to question her own judgment and forebear from any further reporting or inquiry into what had been done to her.

92.     Jane Doe 29 returned for her third HPV shot, and when she questioned Hadden about the need to have the injection administered in her buttocks, instead of her arm, Hadden advised her that the shot would "less painful" if given in the buttocks, told her to "just do it", and once again, forced Jane Doe 29 to remove her pants, and expose her buttocks, so Hadden could administer the final injection.

93.     During Jane Doe 29's visits, Hadden performed prolonged, medically inappropriate, unnecessary and unwarranted breast examinations, wherein he groped, squeezed, fondled, caressed, massaged, tugged, pulled and pinched Jane Doe 29's breasts. Jane Doe 29 was a minor child with no medical issues or concerns pertaining to her breasts.

94.     Further, Hadden performed prolonged and inappropriate exploration of Jane Doe 29's vagina. Hadden would proceed to rub his ungloved hands up and down her naked body, groping her, spreading her buttocks, examining the crevices of the most intimate parts of her body. Hadden spread her vagina as he leered into all of her private areas, and would penetrate Jane Doe 29 inserting his fingers into her vagina.

95.     Because of Jane Doe 29's young age, the fact that Hadden was the first gynecologist that she had seen, that the nursing staff presented to Jane Doe 29 that these "exams" were all part of a "normal" experience when seeing a gynecologist, Jane Doe 29 was completely befuddled and duped into believing that the exploitation and abuse being committed by Hadden was part of normal gynecological care. Jane Doe 29 has endured indescribable conflict, confusion and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by Hadden.

96.     At all times relevant to Jane Doe 29's experiences with Hadden, Hadden was well aware of the cognitive dissonance that his patients – who he was sexually abusing – would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them.

97.     Hadden used and exploited his position of trust and authority bestowed on him by the Columbia Defendants to his disgusting advantage and his own depraved benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing routine medical procedures.

98.     As a result, Hadden was able (and enabled by the Corp. Entities Defendants) to sexually abuse countless female patients of the Columbia Defendants in a serial fashion, while carrying out his sick and disturbing fantasies surrounding doctor sexual abuse. Columbia University's (and its related entities) active concealment, lies, verbal, non-verbal, and written statements to the plaintiff in particular, and the public at large, were designed to cause, and did cause, plaintiff to forbear on pursing both civil and criminal legal action against the Defendants named here. As a result of the grooming, mental impact, psychological harm, physical trauma, and intentional acts of psychological manipulation that were inflicted upon the plaintiff,  by the Corp. Entities Defendants, the plaintiff suffered cognitive dissonance and a qualified deficit that was designed to cause, and did cause, plaintiff to be unable to protect her own legal rights and interests. Finally, on account of Defendants' collective fraud, and fraudulent concealment, committed against Jane Doe 29, the plaintiff did not know, could not have reasonably known, and was not reasonably aware of any possible cause of action that she had against the Columbia Defendants until she spoke with counsel on or about December 6, 2018.

***Plaintiff Jane Doe 79:***

99.     Jane Doe 79 was born in 1979.

100.    Jane Doe 79 was repeatedly sexually exploited and abused by Hadden.

101.    The Corp. Entities Defendants enabled Jane Doe 79's abuse by their acts and omissions.

102.    Beginning with Jane Doe 79's initial office visit, for what was purported to be, gynecologic and obstetric care and treatment, Hadden began subjecting Jane Doe 79 to a course of predatory grooming, boundary violating, mental, emotional and physical sexual exploitation and abuse. Hadden assailed the Plaintiff with a barrage of wily, inappropriate, invasive, intrusive and exploitive questions and statements about her body, physique and physical appearance, her sexual history, sexuality and pornography. Hadden's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. While Hadden was actively and verbally breaking down the Plaintiff's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping Plaintiff's breasts and unclothed body.

103.    A Chaperone was present in the room during some of the verbal and physical assaults and witnessed Hadden's verbal and physical sexual abuse firsthand, yet did nothing to prevent Hadden's sexual exploitation and abuse of the Plaintiff. Other times, a Chaperone was not present - or would leave the room prior to the completion of the physical "examination", at which point Hadden would continue to physically sexually exploit and abuse the Plaintiff. This included, but is not limited to, the performance of serial, prolonged, medically unnecessary and inappropriate breast examinations, even throughout the Plaintiff's subsequent pregnancy. The

breast exams Hadden conducted consisted of his groping, fondling, massaging, squeezing, pulling, tugging and pinching of Jane Doe 79's breasts and nipples, with ungloved hands, while asking inappropriate questions about sexual positions the Plaintiff engaged in.

104.    Hadden conducted serial, prolonged, medically unnecessary and inappropriate vaginal examinations and PAP smears, informing Jane Doe 79 that as a result of "abnormal" PAP smear results, she would be required to be seen every six (6) months, to undergo further vaginal examinations and PAP smears. Hadden conducted the vaginal examinations and PAP smears with ungloved hands. Hadden further "advised" the patient that she had a "retroverted" uterus, which was nothing more than a sham 'diagnosis' routinely employed by Hadden for the purpose of excusing his desire to stick his hands deeply inside the vaginas of his unsuspecting victims, "feel around" for prolonged periods of time, and provide the appearance that he was doing something other than engaging in an abject digital-rape of the patient. Following this charade, Hadden would then engage his victims in a dialogue about sexual positions that may feel better, or more intense, for them on account of their wholly made up medical condition. None of this had any basis in medicine. And all of it was simply a ruse concocted by a wily and skillful, serial, sexual felon who, with the help of Columbia University, was given a license to sexually exploit and abuse women and girls on a daily basis.

105.    Hadden performed "scoliosis" checks, ordering Jane Doe 79 to stand before him, completely naked, turn around so her back was to Hadden, bend over and touch her toes.  At one of Jane Doe's 79's visits, Hadden performed a medically unnecessary, and unwarranted rectal exam, which upon information and belief, had no medical purpose. While Hadden "examined" the patient, he would engage in idle chatter, as a form of distraction, so he could extend the

length of time he was groping the Plaintiff's naked body, all in furtherance of his never-ending sexual exploitation and grooming of female patients.

106.     In or around 2007, Hadden induced Jane Doe 79 to undergo a LEEP procedure, which he informed her was necessary, due to the "abnormal" PAP smears. The procedure was conducted in Hadden's office, at the Fort Washington location, in a manner that caused Jane Doe 79, severe, excruciating and unnecessary pain and agony. Jane Doe 79 agreed to undergo the LEEP procedure, even though she had not been provided with a copy of any of test results. Hadden further informed Jane Doe 79 that she required frequent monitoring, vaginal exams and PAP smears. Due to Jane Doe 79's trust in Hadden, because he was her doctor, a medical professional, from a renowned institution, she believed he was being truthful.

107.     Throughout Jane Doe 79's first pregnancy, Hadden continued to perform medically unnecessary and unwarranted vaginal examinations. The Plaintiff had gone beyond her due date, causing her to have to be induced, suffering through 30 hours of labor before her baby could be delivered. Jane Doe 79 has endured indescribable conflict, confusion and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by Hadden.

108.     At all times relevant to Jane Doe 79's experiences with Hadden, Hadden was well aware of the cognitive dissonance that his patients – who he was sexually abusing – would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them.

109.     Hadden used and exploited his position of trust and authority bestowed on him by the Columbia Defendants to his disgusting advantage and his own depraved benefit, and in

furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing routine medical procedures.

110.    As a result, Hadden was able (and enabled by the Corp. Entities Defendants) to sexually abuse countless female patients of the Columbia Defendants in a serial fashion, while carrying out his sick and disturbing fantasies surrounding doctor sexual abuse. Columbia University's (and its related entities) active concealment, lies, verbal, non-verbal, and written statements to the plaintiff in particular, and the public at large, were designed to cause, and did cause, plaintiff to forbear on pursing both civil and criminal legal action against the Defendants named here. As a result of the grooming, mental impact, psychological harm, physical trauma, and intentional acts of psychological manipulation that were inflicted upon the plaintiff,  by the Corp. Entities Defendants, the plaintiff suffered cognitive dissonance and a qualified deficit that was designed to cause, and did cause, plaintiff to be unable to protect her own legal rights and interests. Finally, on account of Defendants' collective fraud, and fraudulent concealment, committed against Jane Doe 79 the plaintiff did not know, could not have reasonably known, and was not reasonably aware of any possible cause of action that she had against the Columbia Defendants until she spoke with counsel on or about February 20, 2020.

***Plaintiff Jane Doe 82***

111.    Plaintiff Jane Doe 82 was born in 1975.

112.    Jane Doe 82 was repeatedly sexually exploited and abused by Hadden.

113.    The Corp. Entities Defendants enabled Jane Doe 82's abuse by their acts and omissions.

114.     Beginning with Jane Doe 82's initial office visit, for what was purported to be, gynecologic and obstetric care and treatment, Hadden began subjecting her to a course of predatory grooming, boundary violating, mental, emotional and physical sexual exploitation and abuse. During these visits, Hadden assailed Jane Doe 82 with a barrage of wily, inappropriate, invasive, intrusive and exploitive questions and statements about her sexual history, sexuality and pornography. Hadden divulged wholly improper and inappropriate personal and intimate information about himself, and his family, including disclosing that his father had a house on Dune Road in the Hamptons - all in furtherance of his never-ending sexual exploitation and grooming of female patients. Hadden's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming and overtly offensive. While Hadden was actively and verbally breaking down Jane Doe 82's boundaries, he forced her to answer inappropriate and improper questions about her sexual partners, and sexual acts she had engaged in, and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and body.

115.     During Jane Doe 82's appointments with Hadden, a chaperone was present while Hadden performed a PAP smear, but once the specimen was handed over to the chaperone, she would exit the exam room, leaving Jane Doe 82 alone with Hadden. Hadden informed Jane Doe 82 that a chaperone was only required to be present at examinations "just for litigation purposes". Following the chaperone's exit, Hadden would begin the hands-on physical examination, at which point, Hadden would physically sexually exploit and abuse Jane Doe 82. This included serial, prolonged, medically inappropriate, and unwarranted breast examinations,

which consisted of Hadden massaging, fondling, squeezing, pulling, tugging and pinching of Jane Doe 82's breasts and nipples, with ungloved hands.

116.    Hadden performed serial, prolonged, medically inappropriate and unwarranted vaginal examinations and PAP smears. Hadden would inappropriately "stroke" the Plaintiff's clitoris and vagina with his fingers. Hadden would use two fingers at every vaginal examination to "feel around for tumors".   Hadden conducted vaginal examinations throughout the Plaintiff's first and second pregnancies.

117.    At every office visit, Hadden would inform Jane Doe 82 that she had a "retroverted" uterus, which was nothing more than a sham 'diagnosis' routinely employed by Hadden for the purpose of excusing his desire to stick his hands deeply inside the vaginas of his unsuspecting victims, "feel around" for prolonged periods of time, and provide the appearance that he was doing something other than engaging in an abject digital-rape of the patient. Following this charade, Hadden would then engage his victims in a dialogue about sexual positions that may feel better, or more intense, for them on account of their wholly made up medical condition. None of this had any basis in medicine. And all of it was simply a ruse concocted by a wily and skillful, serial, sexual felon who, with the help of Columbia University, was given a license to sexually exploit and abuse women and girls on a daily basis.

118.    Hadden performed medically inappropriate, unwarranted and unnecessary "mole checks" where he would require Jane Doe 82 to either lay on the table, unclothed, or stand before him, completely naked, while he rubbed his ungloved hands up and down her body, spreading her buttocks, groping her breasts, and examining her entire body and private areas, all while engaging in idle chatter, or discuss irrelevant topics, in his quest to sexually exploit, sexually

abuse, molest and groom female patients. Hadden informed Jane Doe 82 that her PAP smears were "abnormal", and claimed that she required a LEEP procedure, however, the Plaintiff was never provided any copies of her test results to confirm said diagnosis.

119.    Jane Doe 82 gave birth to her first child in April, 2008. Following the delivery, Hadden informed her that she had sustained a vaginal tear, and told her he had stitched her up "a little extra" so that she would have a "tighter vagina" implying it would provider the Plaintiff with "heightened sexual pleasure". This unauthorized maneuver, formerly referred to as a "husband stitch", or "daddy stitch", involves placing an extra suture in the woman's perineum, which is often performed, as it was here, by an out-of-date misogynist who has zero regard for patient autonomy. This was all done 100% without the Plaintiff's consent, and solely for the purpose of creating a smaller opening to the Plaintiff's vagina for the exclusive benefit of a power-tripping pervert. The fact that Hadden deployed this procedure upon the Plaintiff, is yet another example of Hadden's history of subordinating women as mere sexual objects, who exist solely for his own sexual gratification, with no personal autonomy or independent decision making capacity of their own.

120.    During her first postpartum visit, less than one (1) month after delivery, Jane Doe 82 presented to Hadden's office. Hadden performed a medically unnecessary, unwarranted, inappropriate and improper vaginal examination and PAP smear, despite the fact the Plaintiff had undergone a PAP smear less than one (1) year prior which was reported as normal.

121.    Jane Doe 82 became pregnant with her second child in 2011. Her estimated date of confinement was in the early part of November, 2011. As Jane Doe 82 approached her due date, Hadden insisted there was a need to deliver her baby by or before the Plaintiff's due date.

Jane Doe 82 was medically induced with her first pregnancy as she was two (2) weeks overdue. Jane Doe 82 informed Hadden she wanted to wait for her labor to begin naturally, and could not comprehend why Hadden wasn't willing to follow the same timeline as he did with her first pregnancy. Despite Jane Doe 82's opposition to being induced, Hadden informed her that it was necessary to begin contractions as he had received "concern" from his colleagues regarding the timing of her previous delivery. Without Jane Doe 82's consent or authorization, Hadden forcefully inserted his fist into her vagina, used a "windmill" circular motion, loosening her mucous plug. Jane Doe 82 was caused to suffer excruciating pain and agony. As Hadden forcefully inserted his hand, she saw and felt Hadden thrust his groin towards her pelvic area, in a humping motion, simulating a sex act. Jane Doe 82 felt violated as she witnessed Hadden's facial expression and demeanor, which appeared to be one of pure enjoyment at the pain he had just inflicted on her. Shortly afterwards, Jane Doe 82 began to have contractions, and ultimately delivered her baby.

122.    During Jane Doe 82's postpartum visits, Hadden performed prolonged, medically unnecessary, unwarranted and inappropriate breast examinations, massaging, fondling, squeezing, pulling, tugging and pinching of Jane Doe 82's breasts and nipples, and expressing breast milk. Jane Doe 82 had not expressed any concerns or complaints about her ability to breastfeed her infant, and had, in fact, consulted with a lactation specialist, while she had been hospitalized following the birth of her baby.

123.    Over the course of a 12 year period, Jane Doe 82 underwent over 18 PAP smears. The standard of care for the performance of PAP smears is generally between three (3) to five (5) years. Hadden scheduled Jane Doe 82 for PAP smears and vaginal examinations every six (6) to

nine (9) months, despite the fact that all 14 PAP smear test results, from August, 2002, through July 24, 2012 were reported as normal.

124.    Jane Doe 82 was unknowingly further exposed to Robert Hadden ***after his June 29, 2012 arrest*** for licking the vagina of another patient. Corp. Entities Defendants failed to inform Jane Doe 82, of Hadden's arrest, concealed from Jane Doe 82 that she was being exposed to a known, serial sexual predator. Corp. Entities Defendants misled and gas-lighted Jane Doe 82 by knowingly, and willfully. permitting and allowing a known, serial sexual predator to continue to have unfettered access to unsuspecting patients, including Jane Doe 82, and did absolutely ***nothing*** to stop him.

125.     Jane Doe 82 has endured indescribable conflict, confusion and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by Hadden.

126.    At all times relevant to Jane Doe 82's experiences with Hadden, Hadden was well aware of the cognitive dissonance that his patients – who he was sexually abusing – would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them.

127.    Hadden used and exploited his position of trust and authority bestowed on him by the Columbia Defendants to his disgusting advantage and his own depraved benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing routine medical procedures.

128.    As a result, Hadden was able (and enabled by the Corp. Entities Defendants) to sexually abuse countless female patients of the Columbia Defendants in a serial fashion, while

carrying out his sick and disturbing fantasies surrounding doctor sexual abuse. Columbia University's (and its related entities) active concealment, lies, verbal, non-verbal, and written statements to the plaintiff in particular, and the public at large, were designed to cause, and did cause, plaintiff to forbear on pursing both civil and criminal legal action against the Defendants named here. As a result of the grooming, mental impact, psychological harm, physical trauma, and intentional acts of psychological manipulation that were inflicted upon the plaintiff,  by the Corp. Entities Defendants, the plaintiff suffered cognitive dissonance and a qualified deficit that was designed to cause, and did cause, plaintiff to be unable to protect her own legal rights and interests. Finally, on account of Defendants' collective fraud, and fraudulent concealment, committed against Jane Doe 82, the plaintiff did not know, could not have reasonably known, and was not reasonably aware of any possible cause of action that she had against the Columbia Defendants until she spoke with counsel on or about February 24, 2020.

### Plaintiff Jane Doe 84

129.    Jane Doe 84 was born in 1979.

130.    Jane Doe 84 was repeatedly sexually exploited and abused by Hadden.

131.    The Corp. Entities Defendants enabled Jane Doe 84's abuse by their acts and omissions.

132.    Beginning with Jane Doe 84's initial office visit, for what was purported to be, gynecologic and obstetric care and treatment, Hadden began subjecting Jane Doe 84 to a course of predatory grooming, boundary violating, mental, emotional and physical sexual exploitation and abuse. Jane Doe 84 had grown up in a foreign country, and this was her first consultation with a physician in the U.S. Jane Doe 84 was unfamiliar with the medical standards and practices

in the United States. Hadden took advantage of the Plaintiff's naïveté leading Jane Doe 84 to believe that Hadden's conduct was the accepted standard of practice for an OB/GYN.

133.    Hadden assailed the Plaintiff with a barrage of wily, inappropriate, invasive, intrusive and exploitive questions and statements about her body, physique and physical appearance, her sexual history, sexuality and pornography. Hadden's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. While Hadden was actively and verbally breaking down the Plaintiff's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping Jane Doe 84's breasts and unclothed body.

134.    At times, a chaperone was present in the room, awaiting Hadden's arrival. Other time a chaperone would leave before Hadden's arrival, and would return later and/or leave in the middle of an examination when someone from outside the exam room would ask her to step out, or the chaperone would excuse herself after asking Hadden for his permission. When a chaperon was present during some of the verbal and physical assaults and witnessed Hadden's physical abuse firsthand, the chaperone  did nothing to prevent Hadden's sexual exploitation and abuse of the Plaintiff. Left alone in the room, Hadden would continue to physically sexually exploit and abuse the Plaintiff. This included, but was not limited to, performing serial, prolonged and medically inappropriate breast exams, consisting of Hadden groping, squeezing, pulling, fondling, shaking and pinching the Plaintiff's breasts and nipples, with ungloved hands.

135.    Hadden performed serial, prolonged and medically unwarranted PAP smears, and vaginal examinations at every visit.  Hadden claimed the vaginal examinations were necessary because he was "checking" the Plaintiff's ovaries. When Jane Doe 84 was pregnancy, Hadden

would justify performing unnecessary vaginal examinations to "measure" uterine height. During these vaginal examinations, Hadden would inappropriately, and improperly, touch, rub or stroke Jane Doe 84's clitoris and g-spot, which had and continues to have, no basis in medicine whatsoever.

136.    Hadden would instruct Jane Doe 84 to open her gown, exposing her naked body, and would proceed to do a visual and physical "mole check" inspection of the Plaintiff's body, while making comments about their appearance. Hadden would then palpate both of Plaintiff's breasts, and touch and feel her neck after every pelvic exam. During one visit, in the middle of a pelvic exam, with Hadden sitting on a stool, facing the Plaintiff's pelvic area, and his fingers inserted in the Plaintiff's vagina, Hadden started engaging in irrelevant commentary about how "nice" Jane Doe 84's shoes were, asking where she had purchased them, and replying "that explains the leather quality; looks much better than what we can get here".  Hadden's idle chatter was done for the purposes of distracting the Plaintiff so that he could prolong the length of time he could grope her body.

137.    During all of Jane Doe 84's prenatal visits, Hadden would perform vaginal examinations that the Plaintiff could only describe as "violent" and unnecessarily painful. Hadden informed the Plaintiff that he was "manipulating the membranes" in preparation for labor and delivery, despite the fact the Plaintiff was not even close to her due date.

138.    Jane Doe 84 delivered her first child in early 2011. She returned to Hadden for her first postpartum visit. Despite the fact that Jane Doe 84 made no complaints, nor expressed any concerns, regarding her ability to breastfeed her infant, Hadden insisted on conducing an improper and inappropriate breast examination, in his typical fashion, squeezing, massaging,

fondling, groping, pulling and tugging on Jane Doe 84's breasts and nipples until he manually expressed breast milk.

139.    Jane Doe 84 was approximately 8 weeks pregnant with her second child when she presented to Hadden for prenatal care on July 24, 2012. Hadden again conducted another pelvic examination, and PAP smear. After this visit, Jane Doe 84 received a phone call from Corp, Entities Defendants, asking the Plaintiff if it was "OK" with her to switch doctors because Hadden was "no longer available". Jane Doe 84 was told, by various staff, at various times that Hadden was having "personal issues", was "on leave", and later that Hadden was "no longer with the practice". Jane Doe 84 was never notified that she had been knowingly exposed to a serial sexual predator, ***nearly one month after his June 29, 2012 arrest.***

140.    Jane Doe 84 has endured indescribable conflict, confusion and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by Hadden.

141.    At all times relevant to Jane Doe 84's experiences with Hadden, Hadden was well aware of the cognitive dissonance that his patients – who he was sexually abusing – would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them.

142.    Hadden used and exploited his position of trust and authority bestowed on him by the Corp. Entities Defendants to his disgusting advantage and his own depraved benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing routine medical procedures.

143.    As a result, Hadden was able (and enabled by the Corp. Entities Defendants) to sexually abuse countless female patients of the Corp. Entities Defendants in a serial fashion, while carrying out his sick and disturbing fantasies surrounding doctor sexual abuse. Columbia University's (and its related entities) active concealment, lies, verbal, non-verbal, and written statements to the plaintiff in particular, and the public at large, were designed to cause, and did cause, plaintiff to forbear on pursing both civil and criminal legal action against the Defendants named here. As a result of the grooming, mental impact, psychological harm, physical trauma, and intentional acts of psychological manipulation that were inflicted upon the plaintiff,  by the Corp. Entities Defendants, the plaintiff suffered cognitive dissonance and a qualified deficit that was designed to cause, and did cause, plaintiff to be unable to protect her own legal rights and interests. Finally, on account of Defendants' collective fraud, and fraudulent concealment, committed against Jane Doe 84, the plaintiff did not know, could not have reasonably known, and was not reasonably aware of any possible cause of action that she had against the Columbia Defendants until she spoke with counsel on or about  February 27, 2020.

## TOLLING, CONCEALMENT, AND ESTOPPEL

144.    The applicable statutes of limitation are tolled because of Corp. Entities Defendants' knowing and active concealment, fraud, fraudulent concealment, affirmative verbal statements, non-verbal statements, written statements, publications, and denials, that were directed to the plaintiffs herein, and the public at large, that what Hadden was doing was either unknown to the Corp. Entities Defendants, or was consistent with the standards of bona fide and legitimate medical care and treatment, and was not sexual exploitation and abuse.

145.    Hadden and the Corp. Entities Defendants concealed, and actively lied about, the legitimacy of Plaintiffs' claims, and the fact that Plaintiffs have valid causes of action against Hadden and the Corp. Entities Defendants at the time that Hadden's sexual assaults and abuse occurred, by making material and knowingly false representations to, and actively concealing material information from, Plaintiffs involving a past or existing fact, including by, among other things: (a) misrepresenting or lulling Plaintiffs into believing that Hadden's acts and/or misconduct were for the purpose of conducting legitimate and medically necessary obstetrics and gynecological services based on appropriate standard of care; and (b) misrepresenting or lulling Plaintiffs into believing that Hadden was unavailable or had simply chosen to voluntarily close his private practice, when Hadden, in fact, had stopped practicing at Corp. Entities because he was arrested, and indicted, for sexually abusing patients.

146.    The material representations to, and fraudulent omissions made to, Plaintiffs by the Corp. Entities Defendants were knowingly false, in that Hadden was actually performing these examinations for his own sexual gratification and pleasure, and Hadden was not "unavailable" or "closed his practice," but instead was under investigation or arrested for committing sexual abuse of his patients on Corp. Entities Defendants' premises.

147.    When Hadden and the Corp. Entities Defendants made the material representations and omitted material facts regarding Hadden's "medical treatment" of Plaintiffs, the Corp. Entities Defendants knew that the statements were false, knew that the examinations were not proper, were inappropriate, illegitimate, and/or  violations of the standard of care by any physician in obstetrics and gynecology.

148.    Hadden and the Corp. Entities Defendants made the material representations and concealed material facts with the intent that the material representations and omitted facts should be acted upon (or not acted upon) by Plaintiffs, in that Plaintiffs should believe that the examinations were proper, appropriate, and legitimate; should not believe that they had been sexually exploited; should not believe that they had been sexually assaulted such that they would not discover that other patients had been similarly sexually exploited and abused; should continue to be seen by Hadden so that Hadden could continue to sexually assault them; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe or be made aware of a possible cause of action that Plaintiffs have against Hadden and the Corp. Entities Defendants.

149.    Plaintiffs acted in reliance upon the material representations and the concealment of material facts in that they: (a) reasonably believed that the examinations were proper, appropriate, legitimate, and within the appropriate standard of care; (b) reasonably did not believe that they had been sexually assaulted; (c) did not believe that they should question and/or report the conduct to appropriate authorities; and (d) did not reasonably believe that they had and were not aware of a possible cause of action that they had against Hadden or the Corp. Entities Defendants.

150.    Hadden and the Corp. Entities Defendants further concealed the fraud by affirmative acts that were designed and/or calculated to prevent inquiry, escape investigation, and prevent subsequent discovery of Corp. Entities Defendants' fraud in that they: (a) prevented and/or condoned the absence of other medical professionals, chaperones, and/or caregivers being in the room during examinations and treatments of Plaintiffs, so that Hadden could sexually assault

Plaintiffs; (b) permitted and/or allowed medical professionals, chaperones and/or caregivers to be in the examination room, who ignored, dismissed and failed to report Hadden's sexual abuse and exploitation of Plaintiffs; (c) failed to comply with or did not abide by or follow the standard of care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients; and (d) violated the independent duty that the Corp. Entities Defendants owed to the Plaintiffs to safeguard their welfare and protect their patients from harm; and (e) failed to report Hadden's sexual exploitation and abuse to the New York State authorities including, but not limited to, the Office of Professional Medical Conduct as mandated under state law.

151.   Instead, the Corp. Entities Defendants took affirmative steps to fraudulently conceal Hadden's misconduct, including, but not limited to, by suppressing complaints made by patients, advising victims and survivors of Hadden's abuse that Hadden was not available or voluntarily closed his practice for reasons other than the truth – which is that he had been accused of sexually exploiting female patients, that he was under an internal investigation for the sexual abuse of patients, that he was under a criminal investigation for the sexual abuse of patients, or had actually been arrested by the police for the sexual abuse of patients. High ranking members of Columbia University were enlisted to help gas-light and defraud Plaintiffs into believing that Hadden's conduct was within the standard of accepted medical practice. In a letter, dated April 24, 2013, signed by Columbia's Chief of General Obstetrics and Gynecology, the Corp. Entities Defendants claim they regret to inform everyone that "Dr. Robert Hadden has closed his practice at Columbia University Medical Center" [as if to say this was his "choice"] and that the Columbia Defendants would like to "offer you the opportunity to continue your care

at our facility with one of his excellent partners". Again, the use of a salutation before Hadden's name, and reference to his "excellent partners" implies not only that Hadden remains honorable and worthy of our respect, but also that he remains "a partner" to these other "excellent" physicians at Columbia University. All the while, Corp. Entities Defendants omit the key detail that Hadden was no longer there because he was caught surreptitiously licking a patient's vagina during a bogus pelvic examination, was caught with lewd imagery on his office computers, had images of another patient's anatomy on his personal cell phone which he took without her knowledge or consent, had a 20 year history of sexually exploiting and abusing female patients, was known to sexually assault a pregnant patient in 1993, was arrested at their medical clinic by the New York City Police Department for sexual assault in 2012, and was under an active criminal investigation by the Manhattan District Attorney's Office—an investigation that ultimately led to Hadden's felony conviction for assaulting multiple patients under the guise of medical care and treatment. Further, Corp. Entities Defendants intentionally failed to disclose the reason Hadden's practice had closed, and then continued to display his name, professional profile, and phone number on Columbia University's website, up to and including 2015, just prior to Hadden's felony guilty plea in the criminal prosecution by the Manhattan District Attorney's Office. The failure to comply with state agency directives that Corp. Entities Defendants, and/or Columbia , report to Hadden's patients Hadden's loss of his license and sexual abuse of patients.

152.    The actions, inactions, and plain lies perpetrated by the Corp. Entities Defendants constitute affirmative fraudulent concealment of Hadden's conduct.

153. The statute of limitations for each of Plaintiffs' causes of actions was equitably tolled, and Corp. Entities Defendants are equitably estopped from asserting the statute of limitations as a defense, by reason of their affirmative, egregious, intentional, and wrongful conduct.

154. As part of Corp. Entities Defendants' wrongful attempt to conceal Hadden's long and documented history of sexually abusing female patients from public scrutiny and the criminal prosecutors, Corp. Entities Defendants implemented various measures to keep the bad news under wraps, with the objective and effect of making Hadden's conduct harder to detect, and suppressing the voice of the countless victims and survivors who were unknowing exposed to his abuse. These measures had the effect of practically ensuring that patients, who came into contact with Hadden, including the Plaintiffs, were also sexually abused and assaulted. Corp. Entities Defendants violated their own independent duty to protect their patients by: (a) permitting Hadden to remain in a position of authority and trust after the Corp. Entities Defendants knew or should have known that he sexually molested his patients; (b) scheduling female patients for appointments with Hadden, including appointments without a nurse or chaperone present, despite being aware of his improper conduct; (c) failing to ensure that a qualified, vigilant nurse or chaperone was present at all times to protect patients from sexual exploitation and abuse by Hadden; holding out Hadden to Plaintiffs, and other patients, and the public at large as a trustworthy person of good moral character who was capable and worthy of being granted unsupervised access to female patients; (d) failing to disclose, and actively concealing, Hadden's record, and ongoing complaints of misconduct, sexual exploitation, sexual abuse, harassment, and molestation, and his propensity to commit such acts towards patients; (e)

concealing Hadden's known history of sexual exploitation and abuse of patients, from the patients themselves, to the point where the patients weren't even given the opportunity to make their own, informed choice, about who their provider was, and thereby effectively removing from the patients any opportunity they may have had to protect themselves from what was, to the Corp. Entities Defendants, a known serial sexual predator, but what appeared to be, from the patients' perspective, a qualified, safe, and competent OBGYN at a world renowned medical institution; (f) failing to investigate, or otherwise confirm or deny relevant facts about Hadden's history of sexual abuse, including prior complaints, claims, and investigations relating to sexual abuse suffered at his hands; (g) failing to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Hadden; and (h) failing to implement systems or procedures to supervise or monitor doctors, chaperones, and other agents of the Corp. Entities Defendants to ensure that they did not molest or abuse patients in Corp. Entities Defendants' care and, further, that they report all reasonable suspicions of sexual assault or battery to law enforcement as mandated by N.Y. Soc. Servs. Law §§413, 420.

155.    Corp. Entities Defendants' knowing and active concealment of Hadden's sexual abuse of patients is all the more egregious given the fact that low levels of patient health literacy[27] predominate the area of women's reproductive health, and that many of the patients exposed to Hadden were from low socioeconomic backgrounds.[28]

---

[27]   "Health literacy is defined as the degree to which individuals have the 'capacity to obtain, process, and understand basic health information and services needed to make appropriate health decisions.'" *Health Literacy and Women's Reproductive Health*, *supra* note 15, at 1237.

[28]   While "[m]ore rigorous studies are clearly warranted," some studies have shown as high as "78% of women had less than adequate health literacy skills," and limited health literacy "is likely to be common in reproductive health practices." *Id.* at 1253.

156.     Patients with inadequate health literacy often feel shame and are too embarrassed to ask their physicians questions regarding their medical care.[29]

157.     Many are so embarrassed by their lack of health literacy that they do not even tell their spouse, or partner, about being sexually abused by their doctors,[30] which further exacerbates and contributes to the problem that fewer than one in ten victims of sexual assault in medicine report the assault.[31]

158.     At all times relevant to this action, Hadden was an agent, apparent agent, servant, and employee of the Corp. Entities Defendants and operated within the scope of his employment and his negligence is imputed to each of the Corp. Entities Defendants. Further, Hadden's sexual exploitation and abuse of women under the guise of medical care and treatment was wholly foreseeable by the Corp. Entities Defendants. Not only are there national recommendations that chaperones be provided in all clinics with OBGYN care is offered, but the Corp. Entities Defendants themselves foresaw the potential that women receiving such care would be sexually exploited and abused, and so they enacted their own Policies and Procedures regarding the provision of chaperones during OBGYN examinations. Unfortunately, their Policies and Procedures proved to be inadequate, unenforced, or just simply wholly ignored by their medical staff.

159.     Defendants engaged in, joined in, and conspired with each of the other defendants and wrongdoers in carrying out the tortuous and unlawful activities described herein. Each

---

[29]   *See The Gap Between Physicians and Patients*, *supra* note 16, at 464.

[30]   *See id.*

[31]   *See Sexual Violations of Patients by Physicians*, *supra* note 3, at 504. "Reasons for failing to report may include shame, fear of not being believed, not being aware of the abuse, … and being confused as to whether abuse occurred." *Id.*

defendant is legally responsible for the occurrences herein alleged, and Plaintiffs' damages, as herein alleged, were proximately caused by all defendants.

160.    On account of the fraud, and fraudulent concealment, committed by the Corp. Entities Defendants against Jane Doe 16, Jane Doe 29, Jane Doe 79, Jane Doe 82, and Jane Doe 84, the Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of any possible cause of action that they had against the Corp. Entities Defendants until they contacted counsel at various times in 2018.

161.    Plaintiffs could not, with due diligence, have discovered the full scope of the Corp. Entities Defendants' and Hadden's misconduct, which is directly attributable to the Corp. Entities Defendants' efforts to conceal such misconduct. Tellingly, even after nearly 10-years of actual litigation, six (6) motions to compel, and countless notices for the depositions of the Corp. Entities defendants, not a single piece of document discovery related to the cover-up of Robert Hadden's abuse has been disclosed to the plaintiffs by Corp. Entities. All applicable statutes of limitation have been tolled by operation of the doctrine of equitable estoppel. Under the circumstances presented herein, the Corp. Entities Defendants were under an ongoing duty and responsibility to disclose to the plaintiffs the nature and significance of Hadden's pattern and practice of sexual abuse under the guise of legitimate and medically necessary obstetrics and gynecologic services, but did not do so.  Corp. Entities Defendants are therefore estopped from relying on any statute of limitations. The Corp. Entities Defendants' fraudulent concealment, knowingly false statements, and material omissions which were designed and calculated to make patients forbear form filing a civil case, or report their sexual exploitation and abuse to the criminal authorities, is common to all Plaintiffs.

### FIRST CAUSE OF ACTION Title IX 20 U.S.C. § 1681

162.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

163.    Title IX of the Education Amendments Act of 1972 states, **"No person in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..."** 20 U.S.C. § 1681, *et seq.*

164.    Plaintiffs "persons" under Title IX. COLUMBIA UNIVERSITY and/or its related CORP. ENTITIES receive federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

165.    COLUMBIA UNIVERSITY and CORP. ENTITIES are required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

166.    ROBERT HADDEN's conduct described above constitutes sexual harassment, sexual abuse, and sexual assault, and also constitutes sex discrimination under Title IX.

167.    COLUMBIA UNIVERSITY and CORP. ENTITIES owe a duty to protect their patients, including the plaintiffs herein, from sexual exploitation and abuse, and their conduct and indifference as described above constitutes sexual harassment, sexual abuse, and sexual assault, and also constitutes sex discrimination under Title IX.

168.    The COLUMBIA UNIVERSITY and CORP. ENTITIES Defendants were on notice of ROBERT HADDEN's conduct as described above. The COLUMBIA UNIVERSITY and CORP. ENTITIES Defendants nonetheless failed to carry out their duties, responsibilities and/or obligations to investigate and take corrective and mandatory action under Title IX. As a

direct and proximate result of Defendants' actions and/or inactions, Plaintiffs herein were damaged.

**SECOND CAUSE OF ACTION**
**COMMITTING & ENABLING GENDER VIOLENCE**
**IN VIOLATION OF NEW YORK CITY**
**VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION LAW**
**N.Y.C. ADMIN. CODE § 10-1101, *et seq.***

169.    ROBERT HADDEN's acts of misconduct committed against each Plaintiff, as set-forth herein, including the sexual harassment, exploitation, molestation and physical abuse of the Plaintiffs, constitutes gender-violence and a form of sex discrimination in that one or more of ROBERT HADDEN's acts would constitute a misdemeanor or felony under both Federal and New York State Law, that has as an element of the use of force, attempted use of force, or threatened use of physical force against the person of another, committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction, presented a serious risk of physical injury to each of the plaintiffs, and result in injury to each plaintiff. Further, each plaintiff herein experienced and had a fear of serious and imminent physical harm as a result of Hadden and the Columbia Defendants' misconduct, sexual exploitation, and sexual abuse as set forth herein.

170.    ROBERT HADDEN's acts committed against Plaintiffs, as set-forth herein, including the sexual harassment, exploitation, molestation and abuse of the Plaintiffs constitute gender-violence and a form of sex discrimination, and racial discrimination, in that ROBERT HADDEN's conduct caused a physical intrusion or physical invasion of a sexual nature upon

Plaintiffs under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

171.   Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., not only knew of ROBERT HADDEN's propensity to commit such acts, but also *enabled and assisted* ROBERT HADDEN in the commission of those act by providing ROBERT HADDEN with access to the COLUMBIA and CORP. ENTITIES' female students and patients, including each of the plaintiffs herein, as well bestowing upon Hadden a special authority over those patients by virtue of his role as physician and member of the Department of Obstetrics and Gynecology. The CORP. ENTITIES defendants are every bit as liable, and responsible, for the sexual exploitation and abuse that was inflicted upon the plaintiffs as Hadden himself. Robert Hadden, and others like him, are merely symptoms of a much larger problem that is faced by institutions throughout the United States. The real issue that our society must reckon with is that our trusted institutions are the source of the problem when it comes to serial sexual abuse. Sexual abuse can happen at any institution. Whether or not an abuser becomes a serial sexual predator is directly related to how, and if, the administrators at the institution deal with the problem. If the institution takes action and disciplines, reports, or

terminates the perpetrator, the abuse stops. But when the culture of the institution is so toxic that the abuse is overlooked, ignored, enabled, or covered up, the abuse most surely continues and worsens. Therefore, Columbia University and the corporate defendants are liable for the serial sexual abuse committed by Robert Hadden, in their medical clinics and hospitals, because the institutions not only created the environment in which this kind of abuse can occur, but even went a step further by concealing the acts and existence of this known, serial sexual predator from their unsuspecting patients, the authorities, and the public at large. The university, corporate defendants, administrators and supervisors themselves—who failed to do their jobs and deal with a sexual predator employee—are the ones who created the toxic culture and sexually abusive environment, not Robert Hadden. The following facts and history about Columbia and Corp. Entities enabling and cover-up is known: (a) in or around 1993, a nurse, who had forgotten her stethoscope in the exam room, returned to retrieve it, and finding the door closed, knocked. Hearing no response, she opened the door slightly, only to witness Hadden, sitting at the base of a young, Spanish-only speaking patient's body, with his head beneath the drape that covered the patient's naked body,   so he wasn't visible to the patient, but was visible to the nurse, who witnessed "his eyes fully closed", "his face red and tight", "moving his fingers up and down and in and out of the patient's vagina". When this nurse reported Hadden's actions, to two supervisors employed by the Corp Entities' Defendants, nothing happened and Hadden was allowed to continue his abuse unabated. The nurse was merely told to "stay with your doctor" and "make sure he doesn't get himself in trouble"; (b) a former patient, survivor and whistleblower, who was exposed and abused by Hadden at a prenatal visit in October, 1993, for a high risk pregnancy, wrote a letter to the hospital's then Acting Chairman named Harold E. Fox,

dated May 30, 1994, detailing the abuse to which she had been subjected, and received a written response back from Chairman Harold E. Fox, dated June 14, 1994. Despite Fox's assertions that he would "have a discussion with" Hadden, nothing was done - no investigation was conducted, no suspension was issued, and the survivor never heard from Corp. Entities Defendants or any of their staff members again. Defendants claimed in a recent newspaper article that they didn't even keep a copy of the patients letter, or their Chairman's letter back to the patient; (c) chaperones did not remain with the patients during physical examinations to avoid seeing the sexual exploitation and abuse that Hadden inflicted on women, and when the chaperones did remain in the room, they were not focused on the patient, but would have their back turned to the patient, or be looking out the window, or stare off into space. Some chaperones, who knew they were required to remain in the room with the patients, were ordered to leave by Hadden. Each time it happened, the chaperones complied with Hadden's directive—whose authority over them was provided by the toxic culture and abusive environment that was created by the Corp. Entities; (d) The Corp. Entities Defendants were well aware, as was their staff, nurses, assistants, chaperones, and even Hadden's colleagues, that Hadden was known as "a shark" who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going; (e) in or around 1996, a patient, and former employee of Corp. Entities, complained to a receptionist, after Hadden had rubbed his penis on her arm and she noticed his erection, that Hadden was "a pervert", that she would not be making any future appointments, and would not pay for the visit, to which the receptionist responded, "I know", and "I'm sorry", while looking down at her desk and avoiding eye contact with the Plaintiff; (f) Another patient queried a nurse as to why she was not provided a gown for modesty purposes, and the nurse responded with a

"rolling of her eyes" as if to say, "not again"; Yet another patient experienced a chaperone being ordered out of the room by Hadden prior to her physical exam, and the chaperone's facial expression was one of "I know I shouldn't be leaving", and knew that she was doing something wrong by leaving Hadden alone with the patient; in or around 1993, at the Audubon Clinic, a minor patient was examined by Hadden, without a chaperone present in the room. After Hadden had assaulted the teenager, a chaperone entered, instructed the girl to remove all her clothing, not aware that Hadden already violated the child while performing an invasive and unnecessary vaginal and breast exam. The minor informed the chaperone that "he already did this", to which the chaperone responded that it was impossible because an individual had to be present during ob/gyn examinations. Instead of reporting Hadden, the chaperone made the child go through the exam with Hadden a second time; (g) another patient called the police after Hadden tried to lick her vagina during a postpartum office visit, on Friday, June 29, 2012. Shortly after the call, Hadden was arrested in Corp. Entities Defendants' office, and on their premises. The police spoke with Mary D'Alton, the Chairperson of the Department of OBGYN, and John Evanko, Hadden's superior. It appears that Corp. Entities contacted a criminal defense lawyer on Hadden's behalf, got his arrest vacated, and allowed Hadden to return to the office the following week (in or around the beginning of July, 2012), where Hadden continued to sexually assault, sexually abuse and sexually exploit more unsuspecting female patients, many of whom were pregnant.

172.    By ignoring and concealing Hadden's abuse of patients, dismissing patients and medical personnel complaints about Hadden's abuse, and failing to take any action against ROBERT HADDEN, such as firing him, reporting him to the police, and/or reporting him to the

New York State Medical Board and Office of Professional Medical Conduct as mandated by law, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA- PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., enabled, caused, and directly committed the abuse themselves, upon hundreds of female COLUMBIA UNIVERSITY and CORP. ENTITIES' patients, including each of the Plaintiffs herein.

173.    As a proximate result of ROBERT HADDEN's acts, as well as the Columbia Defendants' enabling, complicity, and direct cooperation in the commission of those acts, over a period of greater than 20-years, Plaintiffs are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief against all Defendants. Plaintiffs are also entitled to an award of attorney's fees and costs against all Defendants.

174.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**THIRD CAUSE OF ACTION**
**COMMITTING AND ENABLING SEXUAL HARASSMENT,**
**PREDATORY GROOMING, SEXUAL EXPLOITATION**
**and SEXUAL ABUSE**

175.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

176.    ROBERT HADDEN, in sexually harassing, grooming, exploiting and abusing the Plaintiffs, and others as herein set-forth, including intending to subject Plaintiffs to numerous instances of sexual exploitation, abuse and molestation during Plaintiffs' time with Defendants at Defendants' COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning in or around 1992, and lasting for the duration of Plaintiffs' tenures with these Defendants through in or around August of 2012 including, but not limited to, instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas and breasts, all while ROBERT HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them were intended to cause harmful or offensive contact with Plaintiffs' persons, or intended to put Plaintiffs in imminent apprehension of such contact.

177.    In doing the things herein stated, Plaintiffs were put in imminent apprehension of a harmful or offensive contact by ROBERT HADDEN and actually believed ROBERT HADDEN had the ability to make harmful or offensive contact with Plaintiffs' persons.

178.    Plaintiffs did not, and could not, consent to ROBERT HADDEN's intended harmful or offensive contact with Plaintiffs' persons, or intent to put Plaintiffs in imminent apprehension of such contact.

179.    In doing the things herein stated, ROBERT HADDEN and Defendants violated Plaintiffs' Rights of protection from bodily restraint or harm, and from personal insult. In doing the things herein stated, ROBERT HADDEN violated his duty to abstain from injuring the person of Plaintiffs or infringing upon their rights.

180.     As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

181.     Plaintiffs are informed and based thereon state that the conduct of Defendants was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

182.     Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**FOURTH CAUSE OF ACTION**
**COMMITTING AND ENABLING CRIMINAL**
**AND CIVIL SEXUAL BATTERY**

183.     Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

184.     During Plaintiffs' time as patients with Defendants COLUMBIA UNIVERSITY, TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", ROBERT HADDEN intentionally, recklessly and wantonly did acts which were intended to, and did result in harmful

and offensive contact with intimate parts of Plaintiffs' persons, including but not limited to being subjected to numerous instances of sexual abuse and sexual exploitation by ROBERT HADDEN, during Plaintiffs' time with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning on or around 1992, and lasting for the duration of his tenure with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" to in or around 2012, including but not limited to instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas, clitorises, anuses, buttocks, breasts, nipples, and other parts of their anatomy, all while ROBERT HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them. Worse yet, Robert Hadden engaged in acts of sadism wherein he would intentionally, and needlessly inflict pain upon the unsuspecting patient to doing various, medically inappropriate things like suddenly pinching and twisting their nipples during breast exams—while looking into their eyes to see the fear, horror or pain on their faces. Hadden would, of course, excuse his misconduct by telling patients that it was a necessary part of the breast examination in order to properly check for breast cancer, which he did to each of the plaintiffs herein. Hadden is also reported as having performed unnecessary cervical biopsies, breast biopsies, inserted his entire hand fully inside patients' vaginas, sutured perineal tears, and even performed a cesarean section on a woman, all (intentionally) without the use of any anesthesia. In each instance, Hadden would explain why doing this barbaric procedures, without any of analgesic, was consistent with the standards of accepted medical practice.

185.    ROBERT HADDEN did the aforementioned acts with the intent to cause harmful or offensive contact with intimate parts of Plaintiffs' persons, and would offend a reasonable

sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' persons that would offend a reasonable sense of personal dignity.

186.    Because of ROBERT HADDEN's position of status and authority over Plaintiffs, and Plaintiffs' physical, mental and emotional states (some of whom were pregnant, trying to get pregnant, or recent mothers), Plaintiffs did not give consent, and could not consent, to such acts and abuse.

187.    As a direct, legal and proximate result of the acts of ROBERT HADDEN, Plaintiffs sustained serious and permanent injuries to their persons, all of his damage in an amount to be shown according to proof and within the jurisdiction of the Court.

188.    As a direct result of the sexual abuse by ROBERT HADDEN, Plaintiffs have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over Plaintiffs including teachers, and supervisors, and in intimate, confidential and familial relationships, due to the trauma of the sexual abuse inflicted upon them by Defendants. This inability to interact creates conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual exploitation, abuse and molestation by ROBERT HADDEN, Plaintiffs suffered immensely, including, but not limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, nervousness, and self-medicating behavior.

189.    The conduct of ROBERT HADDEN and Columbia Defendants, was oppressive, malicious and despicable in that it was intentional and done with a conscious disregard for the rights and safety of others, including the Plaintiffs herein, and was carried out with a conscious

disregard of Plaintiffs' right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against ROBERT HADDEN in an amount appropriate to punish and set an example of ROBERT HADDEN and send a message to others similarly situated that they must avoid doing similar things.

190.    Further, "CORP ENTITIES" had an independent duty to protect their patients. Despite this duty, the "CORP ENTITIES" defendants permitted and enabled ROBERT HADDEN to commit these criminal and sadistic acts upon unsuspecting patients. Therefore "CORP ENTITIES" are liable to Plaintiffs herein, as a direct and proximate result of the negligence, carelessness, and wanton recklessness of Defendant "CORP. ENTITIES" and that of their agents, servants and/or employees through their failure to timely and properly train, supervise, monitor, discipline, terminate, and report ROBERT HADDEN to the Criminal Authorities and the New York State Office of Professional Medical Conduct — as well as their failure to take any disciplinary action against ROBERT HADDEN internally.

191.    As a direct and proximate result of the aforementioned sexual batteries, Plaintiffs have sustained in the past, and will continue to suffer in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

192.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

### FIFTH CAUSE OF ACTION
### COMMITTING AND ENABLING CRIMINAL
### AND CIVIL SEXUAL ASSAULT

193.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

194.    At all times material hereto, the acts of ROBERT HADDEN described herein above placed Plaintiffs in reasonable fear of harmful and injurious contact, including but not limited to further and continued intentional and malicious sexual assault, molestation, battery, abuse, and rape.

195.    At all times material hereto, ROBERT HADDEN acted with reckless disregard for the safety and well-being of Plaintiffs.

196.    At all times material hereto, ROBERT HADDEN acted willfully, wantonly, maliciously, and recklessly.

197. At all times material hereto, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and the "CORP. ENTITIES", had a duty to warn and protect their patients, including the plaintiffs herein, and all the while ROBERT HADDEN was under the direct supervision, employ and/or control of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and the "CORP. ENTITIES". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and the "CORP. ENTITIES" failed to protect each of the plaintiffs herein causing them to suffer fear of harm, apprehension of injury, and physical and emotional trauma at the hands of ROBERT HADDEN, a known serial sexual predator; and failed to train and supervise chaperones in issues and areas known to have a high level of sexual misconduct. *Supra* ¶42

198.    As a direct and proximate result of the aforementioned sexual assaults, Plaintiffs

sustained in the past, and will sustain in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

199.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**SIXTH CAUSE OF ACTION**
**UNFAIR AND DECEPTIVE BUSINESS PRACTICES**
**(NY General Business Law §349)**

200.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

201.    N.Y. GEN. BUS. LAW §349 declares unlawful any deceptive act or practice in the conduct of any business, trade, or commerce in New York.

202.    The Columbia Defendants engaged in deceptive business practices in the advertising, marketing, sale, and provision of medical services by concealing sexual harassment and sexual abuse by Defendant Hadden, failing to adequately investigate, vet, and evaluate individuals employed by the Columbia Defendants, and failing to design, implement, and oversee policies regarding sexual harassment and sexual abuse.

203.    In particular, Columbia and NYPH Defendants engaged in a massive disinformation advertising campaign called "AMAZING THINGS" which was designed to flood television, print and billboard media with the message that "amazing things are happening here". Defendants' campaign was a resounding success, winning awards for artistic and advertising merit. When in reality, what was happening is that the "true story" involving the corporate defendants' 20-year cover-up of the most prolific serial sexual predator in the history of New York State, was starting to become news.

204.    In an effort to counter the bad publicity, squelch the voices of victims and survivors, and avoid further damage to their reputation, Columbia University, NYPH, and their related CORP. ENTITIES spent what is believed to be in excess of a hundred million dollars to flood the airwaves with disinformation, and drown out the emerging voices of actual patients who were sexually exploited and abused under the guise of medical care at defendants' medical clinics and hospitals—women who were putting themselves, their relationships, and their careers at risk by coming forward to report on Columbia University's sexual predator named Robert Hadden. The efforts of these women were noble: to and try to hold the institution accountable so that no person would ever have to endure being sexually exploited and abused by her doctor ever again. The efforts of the corporate defendants is reprehensible: to silence, gas-light, and discredit victims and survivors of sexual exploitation and abuse in order to protect the reputation of the institution that enabled and allowed the abuse to occur for over 20 years.

205.    Not only did defendants' unlawful, unfair and deceptive business practices, injure the Plaintiffs here, it also injured other institutions who have been transparent about similar cases of sexual abuse, and gave defendants an unfair advantage over its competition both inside, and outside of New York. As a result, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN benefited financially to the detriment of both the Plaintiffs herein, as well as defendants' competitors, who had to comply with the law.

206.    Unless the defendants are restrained, and called out for their misconduct, Plaintiffs will continue to suffer from irreparable harm from Columbia Defendants' unfair and unlawful business practices. As will all other medical institutions who operate in a legal and

ethical manner. Accordingly, Plaintiffs seek compensation and restitution for all amounts improperly obtained by the Columbia Defendants through their unfair and unlawful business practices, as well as disgorgement of all ill-gotten gains.

207.    Plaintiffs also seek preliminary and permanent injunctive relief enjoining the Columbia Defendants from continuing their unfair and unlawful business practices, as well as an injunction stopping defendants' misuse of *U.S. News'* dubious college and university ranking system that has no objective basis, or verifiable standards.[32] The Columbia and NYPH Defendants have willfully and knowingly violated N.Y. GEN. BUS. LAW §349, and as such Plaintiffs are entitled to treble damages. The Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**COMMITTING AND ENABLING NEGLIGENT**
**INFLICTION OF EMOTIONAL DISTRESS**

208.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

209.    Defendants ROBERT HADDEN and "CORP. ENTITIES" owed a duty to Plaintiffs to not cause them emotional distress, the initiation of post-traumatic stress disorder, or other harm during the course of gynecological and/or obstetric examinations and other related treatment, which were and are of a very personal nature to the patients. Further, defendant "CORP. ENTITIES" owed a separate duty to protect their patients from harm, even from unknown third parties.

210. Defendant ROBERT HADDEN, was negligent as to the effect of his conduct in

---

[32] See, Malcolm Gladwell blogpost "Did Columbia University Cheat Its Way to the Top of the US News Rankings?" at https://malcolmgladwell.bulletin.com/columbia-university-web-illusions-us-news-rankings

performing unwanted sexual acts upon Plaintiffs, during the course and scope of his purported medical treatment of the Plaintiffs, and under the guise of legitimate medical care and treatment.

211.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees were negligent as to the effect of their conduct in allowing and enabling defendant ROBERT HADDEN to perform unwanted sexual acts on the Plaintiffs herein, as well as countless other patients, during the course and scope of his purported medical treatment of their patients.

212.    Defendant "CORP. ENTITIES," as well as their agents, servants, and/or employees were further negligent and careless in failing to attend to Plaintiffs in a timely and proper manner after they were sexually assaulted by ROBERT HADDEN, and on multiple occasions after these facts were brought to the attention of defendants' own medical personnel upon the premises of defendant "CORP. ENTITIES".

213.    Defendants ROBERT HADDEN and "CORP. ENTITIES", as well as their agents, servants, employees and/or lawyers, were further negligent and careless in failing to timely and properly investigate the reports, claims, verbal complaints, written complaints, and legal filings about the sexual assaults being committed upon patients by ROBERT HADDEN, and even made false, disparaging and degrading oral and written statements about the lack of veracity of plaintiffs, and countless other women.

214.    As a direct and proximate consequence of Defendants' negligence, Plaintiffs have suffered physical, emotional, and psychological injuries, along with pain and suffering.

215.    Accordingly Compensatory damages are necessary under these facts as to all defendants.

## EIGHTH CAUSE OF ACTION

### COMMITTING AND ENABLING INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS

216.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

217.   Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., ROBERT HADDEN, and their agents, servants, and/or employees' conduct toward Plaintiffs, as described herein, was outrageous and extreme.

218.   A reasonable person in Plaintiffs' position would not expect or anticipate the sexual harassment, exploitation, molestation and abuse by ROBERT HADDEN, or Defendants' collective knowledge, and callous indifference, thereof. Plaintiffs had placed their trust, faith and confidence in Defendants, which, by virtue of ROBERT HADDEN and Co-Defendants' wrongful conduct, turned to fear, abuse, shame and humiliation.

219.   A reasonable person would not expect or anticipate Defendants placing ROBERT HADDEN—who was known to Defendants to have physically and sexually abused other female-patients—in such a position of trust and care of the Plaintiffs, and other patients, which enabled ROBERT HADDEN to commit wrongful and abhorrent acts of sexual abuse, including the

misconduct described herein, with female patients, including Plaintiffs. Plaintiffs placed great

trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct,

turned to fear, abuse, shame and humiliation.

220.    A reasonable person would not expect or anticipate that the Defendants, their

agents, servants, and/or employees would be incapable of, or indifferent to, supervising or

preventing ROBERT HADDEN from sexually exploiting and abusing patients, including

Plaintiffs. Plaintiffs placed great trust, faith and confidence in Defendants, which, by virtue of

Defendants' wrongful conduct, turned to fear, abuse, shame and humiliation.

221.    "CORP. ENTITIES DEFENDANTS" and defendant Hadden's infliction of

emotional distress upon Plaintiffs has the character of outrage associated with a crime, and was

criminal, which entitles Plaintiffs to an award of punitive damages against defendants.

222.    The sexual assaults, and Plaintiffs' injuries from the assaults, were caused in

whole or in part, by the Columbia Defendants' gross negligence, wanton, willful, and/or reckless

conduct, which consisted of, among other things, the following: allowing Defendant Hadden to

continue to see patients for nearly twenty years after being notified in 1994 that he was a

dangerous sexual predator; failing to adequately supervise Defendant Hadden; covering-up the

serial sexual abuse committed by Defendant Hadden from the plaintiffs, other patients, the

public, state officials, and law enforcement; allowing Defendant Hadden to continue to see

patients for six (6) week after being notified that defendant Hadden had been arrested for licking

a patient's vagina during an examination in 2012; failing to report the reasonable suspicion of

abuse of children and adults, in the care of the Columbia Defendants, by Defendant Hadden;

failing to adequately investigate, supervise, and evaluate Defendant Hadden; failing to train and

supervise chaperones in issues and areas known to have a high level of sexual misconduct. *Supra* ¶42; and failing to design, implement, enforce, and/or oversee policies and procedures regarding sexual exploitation and abuse that would have prevented the injuries and assaults suffered by Plaintiffs herein.

223.    Defendants' conduct described herein was deliberately indifferent, wanton, grossly reckless, premeditated, intentionally deceitful, reckless, intentional and malicious and done for the purpose of causing or with the substantial certainty that Plaintiffs would suffer humiliation, mental anguish, and emotional and physical distress.

224.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, and many of which have been unable to return to see a gynecologist in over a decade on account of the extreme trauma that was inflicted upon them by the defendants.

225. In subjecting Plaintiffs to the wrongful treatment herein described, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY

OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression. Plaintiffs are informed, and on that basis state, that these willful, malicious, and/or oppressive acts, as stated herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court and Jury, against Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN.

### NINTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD and FRAUDULENT CONCEALMENT

226.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

227.   By holding ROBERT HADDEN out as an agent of Defendants, and by allowing him to undertake the medical care of female patients such as Plaintiffs, Defendants entered into a confidential, fiduciary, and special relationship with Plaintiffs.

228.   By holding themselves out as a preeminent university medical center, thereby enticing over thousands of OBGYN patients to seek medical care and treatment through Defendants' hospitals, medical centers, and clinics, Defendants entered into a confidential, fiduciary and special relationship with Plaintiffs.

229.   Defendants breached their confidential, fiduciary duty and special duties to Plaintiffs by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiffs in matters relating to Plaintiffs' safety, security and health. In particular, in breaching such duties as stated, Defendants were able to sustain their status as an institution of high moral repute, and preserve their reputation, all at the expense of Plaintiffs' further injury and in violation of Defendants' mandatory duties. By virtue of their confidential, fiduciary, and special relationship with Plaintiffs, Defendants had the duty to obtain and disclose material information relating to sexual misconduct of ROBERT HADDEN to Plaintiffs, the public, the school community, the state medical board, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that ROBERT HADDEN and his enablers had engaged in with patients.

230.   By virtue of their confidential, fiduciary and special relationship with Plaintiffs, Defendants additionally owed Plaintiffs a duty to:

  Investigate or otherwise confirm or deny such claims of sexual abuse;

Refuse to place ROBERT HADDEN and other molesters, sexual predators, and enablers in positions of trust and authority within Defendants' institutions;

Refuse to hold out ROBERT HADDEN and other molesters to the public, the community, parents and law enforcement agencies as being in good standing, reputable and, trustworthy in keeping him and his position as a physician, faculty member and authority figure; and

Refuse to assign ROBERT HADDEN and other molesters and enablers to positions of power within Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and over female patients.

231.    Defendants' violations of their respective duties include:

Failing, on countless occasions, to conduct a reasonable investigation of ROBERT HADDEN;

Failing to issue warnings to the Plaintiffs, other patients, and medical staff about ROBERT HADDEN;

Failing to conduct a reasonable investigation of ROBERT HADDEN's enablers and protectors;

Failing to issue warnings to the Plaintiffs, other patients, and medical staff about the existence of ROBERT HADDEN's enablers;

Enabling ROBERT HADDEN to be supervised by untrained and unskilled chaperones, who were consistently derelict in their duty to report ROBERT HADDEN's sexual abuse to law enforcement;

Enabling ROBERT HADDEN attend to patients without any chaperones or supervision at all;

Not adopting and implementing policies and procedures to prevent ROBERT HADDEN from routinely having Plaintiffs and patients in his unsupervised control;

Failing to report written complaints, verbal complaints, and other allegations regarding ROBERT HADDEN's sexual exploitation and abuse of patients prior to or during his employment or agency at Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES";

Assigning, and continuing to assign, ROBERT HADDEN to duties which placed him in positions of authority and trust over female patients, positions in which ROBERT HADDEN

could easily isolate, sexually exploit, and sexually abuse the Plaintiffs herein, as well as other patients; and

Enabling ROBERT HADDEN to serially sexually assault female patients for a period of over twenty (20) years upon Defendants' medical facilities, clinics and/or premises.

232.   Defendants engaged in suppression, concealment, gas-lighting, and disinformation regarding ROBERT HADDEN's known, tortious, exploitative and despicable acts for the purpose of causing Plaintiffs to forbear from enforcing their rights in the criminal and civil justice system.

233.   Defendants' concerted and collective misconduct reasonably caused Plaintiffs to forbear on Plaintiffs' Rights.

234.   Defendants affirmatively misrepresented, actively concealed, and failed to disclose information relating to sexual misconduct of ROBERT HADDEN to Plaintiffs, other patients, the public at large, state regulators, and law enforcement.

235.   Defendants' misrepresentations, suppression and concealment of facts were intended to, and did, mislead Plaintiffs and others into believing that Defendants had no knowledge of the fact that ROBERT HADDEN was a known serial sexual predator; had no knowledge of Hadden's propensity to commit wrongful and sexually exploitative acts upon female patients, including Plaintiffs herein; had no knowledge of any criminal or civil charges against ROBERT HADDEN; and had no knowledge of other instances of unlawful, or sexual misconduct, asserted against ROBERT HADDEN; and therefore, there was no need for Defendants to take further action or precaution. All of these misrepresentations by defendants were false, and were carried out by "CORP. DEFENDANTS" in an effort to make plaintiffs forebear from asserting their rights in the criminal and civil justice system.

236.    Defendants suppressed and concealed the true facts regarding ROBERT HADDEN's sexual abuse of patients, all in an effort to prevent Plaintiffs, and others, from learning that ROBERT HADDEN was, in fact, sexually harassing, sexually exploiting, molesting and sexually abusing patients under the guise of medical care and treatment. Further, all of Hadden's misconduct and abuse was happening with Defendants' full knowledge, and while Hadden was under Defendants' control, direction, and guidance. In doing so, CORP. DEFENDANTS' scheme was designed to induce the public, the Plaintiffs, and other benefactors and donors, to financially support Defendants' programs and other enterprises; prevent further reports and outside investigations into ROBERT HADDEN's misconduct; prevent discovery of Defendants' own conduct; avoid damage to Defendants' reputation; protect Defendants' power and status in the community; and avoid all civil and criminal liability of Defendants, ROBERT HADDEN, and ROBERT HADDEN's stable of enablers.

237.    Defendants knew or should have known that they misrepresented, concealed and failed to disclose information related to sexual misconduct of ROBERT HADDEN.

238.    Defendants knew or should have known at the time that the facts known to them regarding ROBERT HADDEN's sexual misconduct were material, and that, Defendants had a duty both to protect the Plaintiffs, as well as to disclose these important facts to the Plaintiffs and others.

239.    At all times mentioned herein, Defendants, and in particular Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and ROBERT HADDEN, with knowledge of the tortious and exploitative nature of their own, and ROBERT HADDEN's conduct, knowingly and collectively conspired and provided each other substantial

assistance to perpetrate the misrepresentations, fraud and deceit stated herein—covering up the past allegations of sexual misconduct lodged against ROBERT HADDEN, and allowing and enabling ROBERT HADDEN to remain in his position as a physician and faculty member, so they could maintain their reputations and continue with their positions within the organization.

240. Plaintiffs and others were misled by Defendants' suppressions and concealment of facts, and in reliance thereon, were induced to act or induced not to act, exactly as intended by Defendants. Specifically, Plaintiffs were induced to believe that there were no allegations of criminal or sexual abuse against ROBERT HADDEN, and that HADDEN posed no danger to his patients. This inducement was caused by intentional and knowingly false statements about the cause of ROBERT HADDEN's abrupt, but silent departure as a physician at the hospitals, offices, and medical clinics of CORP. ENTITIES.

241. Plaintiffs justifiably relied on the misleading actions and omissions of Defendants, and at no time did Plaintiffs have knowledge of the falsity of Defendants' representations.

242. By giving ROBERT HADDEN the position of physician and faculty member, Defendants both impliedly and affirmatively represented that ROBERT HADDEN was safe and morally fit to render gynecologic and obstetric care and treatment.

243. When Defendants made these affirmative or implied representations and non-disclosures of material facts, Defendants knew, or should have known, that the facts were otherwise. Defendants knowingly and intentionally suppressed the material facts that ROBERT HADDEN, had on numerous, prior occasions sexually, physically, and mentally abused patients of Defendants, including Plaintiffs, and knew of, or learned of conduct, or should have known of

conduct by ROBERT HADDEN which placed Defendants on notice that ROBERT HADDEN had previously been suspected of, and committed, felonies, including unlawful sexual conduct with patients, and was sexually exploiting and abusing students and patients under his care.

244.    Because of the status of ROBERT HADDEN with CORP. ENTITIES, as a trusted, authority figure to Plaintiffs, Plaintiffs were vulnerable, unsuspecting, and unable to protect themselves against ROBERT HADDEN's sexual exploitation and abuse. As predators do, ROBERT HADDEN sought Plaintiffs out, and was empowered by Plaintiffs' vulnerability.

245.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal, and fail to disclose material information relating to the sexual misconduct of ROBERT HADDEN, the inability or unwillingness of Defendants to supervise or stop ROBERT HADDEN from sexually harassing, exploiting, molesting and abusing Plaintiffs, and their own failure to properly investigate, supervise and monitor his conduct with patients. By so concealing, **Defendants committed at least one act in furtherance of the conspiracy.**

246.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

247.    In addition, when Plaintiffs finally discovered the fraud of Defendants, and continuing thereafter, Plaintiffs experienced recurrences of the above-described injuries. Plaintiffs experienced extreme and severe mental anguish and emotional distress that Plaintiffs had been the victim of Defendants' fraud and conspiracy; that Plaintiffs had not been able to help other female patients to avoid being molested because of the fraud committed by defendants, that Plaintiffs have not been able, because of the fraud, to receive timely medical treatment needed to deal with their injuries and disabilities, and that Plaintiffs have not been able, because of the fraud, to receive timely legal consultations to protect and enforce their legal rights. Further, Plaintiffs have suffered, and continue to suffer, as a result of the sexual harassment, molestation and abuse they were subjected to by the defendants herein.

248.    In subjecting Plaintiffs to the misconduct and wrongful treatment herein, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice, gross recklessness and/or oppression. Plaintiffs are informed, and on that basis state, that Defendants' willful, wanton, malicious, and oppressive acts, as stated herein above, were ratified by Columbia University's and New York Presbyterian Hospital's Administrators, Chairpeople, Corporate Officers, Directors, Trustees, and Presidents. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN.

249.    Finally, Plaintiffs did not know of defendants' fraud and fraudulent concealment involving material facts related to Robert Hadden's history of sexual exploitation and abuse of patients at CORP. ENTITIES medical clinics and hospitals. Nor did Plaintiffs know what the standards of obstetrical and gynecologic care are. The vast majority of victims that Hadden selected to exploit and abuse had little to no prior experience with a gynecologist, and were first-time mothers. As a result, with regard to what Hadden was doing to them, they had nothing to compare it to. Plaintiffs believed at the time that the sexual exploitation and abuse they were being subjected to was, instead, a form of legitimate medical care and treatment. This belief was not only reasonable, it is completely understandable in light of the fact that they were in a place that is supposed to be home to the top doctors in the City of New York, and is regarded as one of the most prestigious Universities and hospitals in the world. Therefore, Plaintiffs' expectations and belief that they were receiving bonafide medical care and treatment is completely reasonable. In fact, the sheer number of Plaintiffs' who've come forward speaks volumes about: (a) how reasonable each of the Plaintiffs herein were being in *not* questioning what was being done to them by Hadden; (b) how skilled Robert Hadden was at sexually exploiting and abusing women under the guise of medical care and treatment; (c) how pervasive Hadden's abuse was at the medical clinics and hospitals of CORP. ENTITIES; (d) how many times the nurses, chaperones, administrator, supervisors (John Evanko and Katarina Eisinger), and chairpeople (Harold E. Fox and Mary E. D'Alton) conspired with Hadden, failed to do their jobs, were inadequately trained in their job, or simply left the room in order to not witness any further abuse —knowing that if they spoke up for the patient, the culture of the institution was such that they wouldn't be listened to, and that they, the nurses themselves, would likely be fired before

Columbia or NYPH ever fired Robert Hadden; and (e) how far the "CORP. ENTITIES" have gone to conceal, lie, gas-light, and cover-up Hadden's sexual abuse of patients over the past 20-years. Due to CORP. DEFENDANTS' fraud and fraudulent concealment, Plaintiffs were caused to believe that what Hadden was doing to them was a form of legitimate medical care and treatment at one of the world's top-University medical clinics. As a result of defendants' affirmative misstatements of material facts, which the defendants knew to be untrue, the Plaintiffs herein, as well as countless other patients, were caused to forbear in filing a civil or criminal complaints against the Defendants. Accordingly, Defendants are equitably estopped from asserting the defense of a statute of limitations, and Plaintiffs' actions are timely.

250.    Compensatory and Punitive damages are necessary under these facts as to all defendants.

## TENTH CAUSE OF ACTION
## COMMITTING AND ENABLING NEGLIGENCE, SEXUAL ASSAULT AND RAPE OF THE PLAINTIFFS

251.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

252.    At all relevant times, the Columbia Defendants were engaged in the business of operating medical clinics and hospital centers in New York. Plaintiffs were patients at the Columbia Defendants' medical centers, and as such were entitled to be protected by the Columbia Defendants, the medical centers, its agents, and its employees, against assault and negligence.

253.    By virtue of a letter issued by one of Defendants' Chairman from the Department of Obstetrics and Gynecology, the Columbia Defendants were on notice of the fact that

Defendant Hadden posed a danger to Plaintiffs and other patients at least as far back as 1994. *See,* CNN Report about the letter that a sexual assault survivor and whistleblower, sent to Dr. Harold Fox, then Acting Chairman of the Department of Obstetrics and Gynecology, dated May 30, 1994, along with the letter response from Chairman Harold Fox, back to sexual assault survivor/whistleblower, dated June 14, 1994, attached as ***Exhibit 'A'***. Plaintiffs were assaulted by Defendant Hadden, an agent, servant, or employee of the Columbia Defendants, causing Plaintiffs to sustain injuries, including, but not limited to: physical injury; pain; suffering; serious psychological distress; serious emotional distress; mental anguish; embarrassment; humiliation; loss of trust in the medical profession, loss of trust in others; and PTSD.

254. Prior to, and after the 1993-1994 incident involving ROBERT HADDEN's sexual harassment, exploitation, molestation and abuse of one of Defendants' patients, through the present, Defendants, knew (and clearly knew) that ROBERT HADDEN had, and was capable of, sexually, physically, and mentally abusing, exploiting and harassing female patients, including each of the Plaintiffs herein.

255. Defendants, and each of them, had special duties to protect the Plaintiffs and other female patients, when such individuals were entrusted to Defendants' care. Plaintiffs' care, welfare and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Plaintiffs. As such, Defendants owed Plaintiffs as women, students, minors, as well as pregnant and non-pregnant female patients, a special duty of care that ethical adults and medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants and Plaintiffs.

256.     Further, Defendant ROBERT HADDEN and defendant "CORP. ENTITIES" owed a duty to Plaintiffs herein to not cause them emotional distress, the initiation of post-traumatic stress disorder, the trigger of past sexual abuse, or other harm during the course of gynecological and/or obstetric examinations and other related treatment, which are of a very personal nature to these patients.

257.     Defendant ROBERT HADDEN, performed unwanted sexual acts without the knowledge or consent of Plaintiffs herein, during the course and scope of his purported medical treatment of the Plaintiffs and other women.

258.     Defendant CORP. ENTITIES, their agents, servants, and/or employees allowed and enabled defendant ROBERT HADDEN to perform unwanted sexual acts on Plaintiffs herein, as well as other patients, during the course and scope of his purported medical treatment of their patients.

259.     Defendant CORP. ENTITIES, as well as their agents, servants, and/or employees failed to attend to Plaintiffs in a timely and proper manner after they were sexually assaulted by ROBERT HADDEN, and after these facts were brought to the attention of the medical personnel upon the premises of defendant CORP. ENTITIES.

260.     Defendants ROBERT HADDEN and CORP. ENTITIES, as well as their agents, servants, employees, administrators and/or legal teams failed to timely and properly investigate the reports, claims and legal filings about the sexual assaults upon patients being committed by ROBERT HADDEN, and made false, disparaging and degrading oral and written statements about the lack of veracity of Plaintiffs and other women.

261.   Defendants allowed ROBERT HADDEN to come into contact with the Plaintiffs and other female students and patients whom they permitted and enabled to have access to Plaintiffs; by concealing from Plaintiffs, the public and law enforcement that ROBERT HADDEN was sexually harassing, molesting and abusing patients; and by holding ROBERT HADDEN out to Plaintiffs as being of high moral and ethical repute, in good standing and trustworthy.

262.   Defendants failed to investigate or otherwise confirm or deny such facts of sexual abuse by ROBERT HADDEN to Plaintiffs, failed to reveal such facts to Plaintiffs, the community and law enforcement agencies, and placed ROBERT HADDEN into a position of trust and authority, holding him out to Plaintiffs and the public as being in good standing and trustworthy.

263.   Defendants failed to prevent ROBERT HADDEN from committing wrongful sexual acts with medical patients, including Plaintiffs. Defendants' past observations, reports, and records of sexual misconduct by ROBERT HADDEN caused Defendants to know, or gave them information where they should have known, of ROBERT HADDEN's incapacity to serve as a physician, and faculty member at Defendants' institutions, providing for the physical care of pregnant and non- pregnant, adult and minor, female patients.

264.   The assault and Plaintiffs' injuries were caused, in whole or in part, by the Columbia Defendants' negligence, which consisted of, among other things, the following: allowing Defendant Hadden to continue to see patients for nearly twenty (20) years after being notified in 1994 that he was a dangerous sexual predator; failing to adequately supervise Defendant Hadden; covering-up the serial sexual abuse committed by Defendant Hadden;

allowing Defendant Hadden to continue to see patients for six week after being notified that Defendant Hadden had been arrested for licking a patient's vagina during an examination; failing to report reasonable suspicion of abuse of children in the care of the Columbia Defendants by Defendant Hadden; failing to adequately investigate, vet, and evaluate Defendant Hadden; and failing to design, implement, enforce, and/or oversee policies regarding sexual harassment and sexual abuse. Consequently, Plaintiffs have been substantially damaged.

265.   As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

266.   Accordingly Compensatory damages are necessary under these facts as to all defendants.

### ELEVENTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION

267.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

268.   By virtue of Plaintiffs' special relationships with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to provide reasonable supervision of ROBERT HADDEN, to use reasonable care in investigating ROBERT

HADDEN's background, and to provide adequate warning to Plaintiffs and other patients of ROBERT HADDEN's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of patients, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES had a duty to protect, supervise, monitor, and prevent the Plaintiffs from being preyed upon by sexual predators, and to supervise and monitor ROBERT HADDEN such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiffs.

269.    As representatives of Defendants COLUMBIA UNIVERSITY, THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, Defendants' agents servants and/or employees expressly and implicitly represented that physicians, faculty and staff, including ROBERT HADDEN, were not a sexual threat to those individuals and others who would fall under ROBERT HADDEN's influence, control, direction, and care.

270.    Defendants, by and through their respective agents, servants and employees, knew or should have known, of ROBERT HADDEN's dangerous and exploitive propensities and that ROBERT HADDEN was an unfit agent and practitioner. Despite such knowledge, Defendants negligently failed to supervise ROBERT HADDEN in his position of trust and authority as a physician, gynecologist, faculty member and authority figure over female patients and young women, where he was able to commit wrongful acts of sexual misconduct against Plaintiffs. Defendants failed to provide reasonable supervision of ROBERT HADDEN, failed to use reasonable care in investigating ROBERT HADDEN, and failed to provide adequate warning to Plaintiffs of ROBERT HADDEN's dangerous propensities and unfitness. Defendants further

failed to take reasonable steps to ensure the safety of patients, including Plaintiffs, from sexual harassment, sexual assault, sexual battery, molestation, and abuse.

271.   At no time during the periods of time set-forth herein did Defendants have in place a reasonable system or procedure to investigate, supervise and monitor ROBERT HADDEN, to prevent pre-sexual grooming and sexual harassment, sexual exploitation, molestation and abuse of those individuals, nor did they implement a system or procedure to oversee or monitor conduct toward patients and others in Defendants' care.

272.   Defendants were aware, or should have been aware, of how vulnerable these patients were to sexual grooming, harassment, exploitation, molestation and abuse by physicians, male- gynecologists in particular, faculty members and other persons of authority within Defendants' entities. Recent news reports about the Dean of Students having sexually exploited and abused an incoming female freshman shows that the exploitation and abuse of women at Columbia University and its affiliated offices, clinics, hospitals, and entities is a systemic problem which Defendants are not capable of handling or managing.

273.   Defendants were put on notice, knew and/or should have known that ROBERT HADDEN had previously engaged in, and was continuing to engage in, unlawful sexual conduct with female patients, minors, and other pregnant and non-pregnant patients, and that he had committed and perpetrated sexual felonies against those patients, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage, in illicit sexual activities with Plaintiffs, and others, under the cloak of the authority, confidence, and trust, bestowed upon him by Defendants.

274.    Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested, groomed, abused, and exploited other student and non-student female patients during his employment with Defendants. Defendants were informed of molestations of patients committed by ROBERT HADDEN prior to Plaintiffs' sexual abuse, and of conduct by ROBERT HADDEN that would put a reasonable person on notice of such propensity to molest, groom, exploit and abuse young female patients.

275.    Even though Defendants knew, or should have known, of the illicit, criminal, and exploitative sexual assaults being perpetrated by ROBERT HADDEN upon defendants' unsuspecting patients, Defendants failed to reasonably investigate, supervise, monitor, and end ROBERT HADDEN's access to female patients. Instead, Defendants simply enabled ROBERT HADDEN to keep exploiting and sexually abusing more and more female patients.

276.    Defendants' conduct was a breach of their duties to Plaintiffs and all female patients, as well as their family members.

277.    Defendants, and each of them, have breached their duty to Plaintiffs by, *inter alia*, failing to adequately monitor and supervise ROBERT HADDEN and stop ROBERT HADDEN from committing wrongful sexual acts with female patients, including Plaintiffs.

278.    As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of

life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

279.   Accordingly Compensatory damages are necessary under these facts as to all defendants.

### TWELFTH CAUSE OF ACTION
### VIOLATION OF MANDATORY DUTY TO REPORT PROFESSIONAL MISCONDUCT, NY SOCIAL SERVICES LAW §§ 413, 420; NY EDUCATION LAW §§ 6527, 6530; and NY PUBLIC HEALTH LAW § 230

280.   Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

281.   Pursuant to NY SOCIAL SERVICES LAW §§ 413, 420, NY EDUCATION LAW §§ 6527, 6530, and NY PUBLIC HEALTH LAW § 230, the Columbia Defendants are under a mandated duty to report the reasonable suspicion of professional misconduct, including the sexual exploitation or abuse of patients by a medical practitioner.

282.   The Columbia Defendants breached their duty to protect their patients, and their duty to report ROBERT HADDEN's sexual exploitation and abuse of patients. As a direct and proximate result of their breach, Plaintiffs herein have suffered injuries, including, but not limited to: physical injury; pain; suffering; serious psychological distress; serious emotional distress; mental anguish; embarrassment; humiliation; loss of trust in the medical profession, loss of trust in others; and PTSD.

283.   Under applicable law, Defendants, by and through their employees and agents, were medical care providers and were under a statutory duty to report known or suspected

incidents of sexual molestation or abuse of patients, or any individuals in their care, to the appropriate authorities, and not to impede the filing or investigation of any such report.

284. Defendants knew, and should have known, that their gynecological physician, ROBERT HADDEN, had sexually molested, abused, exploited, or caused touching, battery, harm, and/or other injuries to female patients including Plaintiffs, giving rise to a duty to report such conduct.

285. Defendants knew, and should have known, in the exercise of reasonable diligence, that an undue risk to patients, including Plaintiffs, existed because Defendants did not comply with mandatory reporting requirements.

286. By failing to report the continuing sexual molestations and abuse by ROBERT HADDEN, which Defendants knew and should have known about, and by ignoring the fulfillment of the mandated compliance with the reporting requirements, Defendants created the risk and danger contemplated by the applicable mandated reporting laws, and as a result, unreasonably and wrongfully exposed Plaintiffs and other patients to sexual molestation and abuse.

287. Further, defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES actively and intentionally impeded the criminal indictment and investigation of ROBERT HADDEN through the intimidation of Assistant District Attorneys, as well as the intimidation of Defendants' own agents, servants, and/or employees, all in an effort to dissuade them from reporting the exploitation and abuse to the authorities and others. In doing so, defendants illegally interjected themselves into the criminal prosecution of ROBERT HADDEN, used force and coercion in an effort to derail the criminal

investigation, and sent high- ranking risk-managers and corporate personnel to accompany and intimidate its nurses and medical chaperones before, during, and after their interviews with the Manhattan District Attorneys office relative to the criminal indictment and prosecution of ROBERT HADDEN.

288.   Plaintiffs were members of the kind and class of people for whose protection the applicable mandated reporting laws were specifically designed and adopted to protect.

289.   Had Defendants adequately reported the molestation of female patients, including Plaintiffs, as required by applicable mandated reporting laws, further harm to Plaintiffs and other individuals would have been avoided.

290.   As a proximate result of Defendants' failure to follow the mandatory reporting requirements, Defendants wrongfully denied Plaintiffs, and other women, the intervention of law enforcement and the appropriate authorities. Such public agencies would have changed the then-existing arrangements and conditions which provided the necessary access and opportunities for the molestation of Plaintiffs by ROBERT HADDEN.

291.   The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiffs by ROBERT HADDEN were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

292.   As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of

life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

293.     Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

### THIRTEENTH CAUSE OF ACTION
### NEGLIGENT HIRING, RETENTION and RATIFICATION

294.     Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

295.     By virtue of Plaintiffs' special relationship with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to not hire and/or retain HADDEN, given his dangerous and exploitive propensities, which Defendants knew, or should have known, about had they engaged in a reasonable, meaningful and adequate investigation of his background prior to his hiring or retaining him.

296.     Defendants expressly and implicitly represented that ROBERT HADDEN was a legitimate gynecologist and obstetrician, and not a sexual threat to female patients.

297.     At no time during the periods of time stated herein did Defendants have in place a reasonable system or procedure to timely and properly investigate, supervise and monitor its hospitals, offices, medical clinics, physicians and healthcare personnel, including ROBERT HADDEN, to prevent sexual grooming, sexual harassment, sexual exploitation, molestation and abuse of female patients, nor did they implement a system or procedure to oversee or monitor conduct toward female patients and/or others in Defendants' care.

298.     Defendants were aware, or should have been aware, and understood how

vulnerable female patients were to sexual grooming, sexual harassment, sexual exploitation, molestation and abuse by faculty members, physicians, and other persons of authority within the control of Defendants prior to Plaintiffs' sexual abuse and exploitation by ROBERT HADDEN.

299.    Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, as well as suspicious circumstances wherein ROBERT HADDEN and other medical staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other medical staff, agents, servants, and/or employees' negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

300.    Defendants were put on notice, and should have known that ROBERT HADDEN had previously engaged, and continued to engage, in unlawful sexual conduct with female patients, and was committing other felonies, for his own deviant sexual gratification, and that it was foreseeable, or should have been foreseeable, that ROBERT HADDEN was engaging in, or would engage in, illicit deviant sexual activities with Plaintiffs, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants, their agents, servants and/or employees.

301.    Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested or was molesting female patients, both before his employment with the within named Defendants, and during that employment. Defendants had knowledge of inappropriate conduct, exploitation and serial molestations committed by ROBERT HADDEN before and

during his employment, yet chose to allow him to remain unsupervised where he serially sexually abused Plaintiffs herein.

302.    Despite the fact that Defendants knew, or should have known, of these sexually exploitive activities being perpetrated by ROBERT HADDEN, Defendants failed to use reasonable care in investigating ROBERT HADDEN and did nothing to reasonably investigate, supervise or monitor and/or terminate ROBERT HADDEN to ensure the safety of patients.

303.    Defendants' conduct in enabling ROBERT HADDEN to serially sexually assault countless female Patients upon its premises was a long-standing, gross, and inexcusable violation of the duty of care owed to Plaintiffs herein.

304.    Because Defendants:

(a)    had actual knowledge of the sexual exploitation, abuse and harassment being committed by HADDEN;

(b)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by State Laws;

(c)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by Federal Laws;

(d)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by medical and academic standards of care;

(e)    failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by basic standards of ethics and decency;

(f)     consciously and intentionally enabled ROBERT HADDEN to continue to sexually exploit, abuse, molest, and harass female patients by failing to take any of the above actions; and

(g)     consciously and intentionally concealed all of ROBERT HADDEN's exploitative, abusive, and harassing behaviors from female patients, the Plaintiffs herein, and the public at large, Defendants have enabled, permitted, and ratified the conduct of ROBERT HADDEN as set forth herein.

305.    Defendants, their agents, servants, and/or employees knew ROBERT HADDEN was

sexually exploiting, abusing, molesting and harassing female patients and refused to take any

action to stop him. Moreover, Defendants, their agents, servants, and/or employees hid this

information so ROBERT HADDEN could continue to work for COLUMBIA UNIVERSITY, its

hospital, offices, medical clinics and facilities. With knowledge of ROBERT HADDEN's sexual

misconduct, no disciplinary action was taken by Defendants and he was inexplicably allowed to

be alone with female patients. Defendants, their agents, servants, and/or employees are thus

responsible for ROBERT HADDEN's acts of sexual exploitation, sexual assault, sexual abuse,

sexual battery, discrimination, and harassment.

306.    Further, defendant "CORP. ENTITIES" prior to the granting or renewing of

privileges or employment of defendants, residents, nurses and others medical personnel involved

in Plaintiffs' care, failed to investigate the qualifications, competence, capacity, abilities and

capabilities of said defendants, residents, nurses and other employees, including but not limited

to obtaining the following information: patient grievances, criminal investigations, governmental

inquiries, negative health care outcomes, incidents injurious to patients, medical malpractice

actions commenced against said persons, including the outcomes thereof, any history of

association, privilege and/or practice at other institutions, and discontinuation of said association, employment, privilege and/or practice at said institution, and any pending professional misconduct proceedings in this State or another State, the substance of the allegations in such proceedings and any additional information concerning such proceedings and the findings of the proceedings and defendant "CORP. ENTITIES" failed to make sufficient inquiry of the physicians, nurses, employees other personnel and institutions which should and did have information relevant to the capacity, capability, ability and competence of said persons rendering treatment, including defendant ROBERT HADDEN - as well as the medical staff with which he was associated - upon Defendants' premises.

307.    Defendant "CORP. ENTITIES" failed to timely and properly educate, train, supervise and/or monitor its agents, servants, and/or employees with regard to the policies and procedures that must be followed when sexual abuse by a physician is suspected or observed, and instead created an environment where sexual misconduct by physicians was tolerated.

308.    Defendant "CORP. ENTITIES" created an environment where its agents, servants and/or employees who suspected - or even witnessed - sexual misconduct by a physician, were more fearful about their prospects for future employment if they said something, than they were about the safety and well-being of the patients who were being sexually abused.

309.    Had defendant "CORP. ENTITIES" made the above stated inquiry, or in the alternative, had it reviewed and analyzed the information obtained and available to it in a timely and proper manner, privileges and/or employment would not have been granted and/or renewed.

310.    Defendant "CORP. ENTITIES" were additionally negligent, grossly reckless, wanton and willful, in failing to supervise, monitor, chaperone and/or investigate defendant

ROBERT HADDEN, and/or failed to create, institute and/or enforce rules, policies, procedures and/or regulations for defendant ROBERT HADDEN's treatment of Plaintiffs and countless other women.

311.    By reason of defendant "CORP. ENTITIES" failures to meet the aforementioned obligations, Plaintiffs were treated by physicians, nurses, medical personnel and other employees who were lacking the requisite skills, abilities, competence, capacity and supervision, as a result of which Plaintiffs sustained significant injuries and complications.

312.    The aforesaid injuries resulting therefrom were caused wholly and solely as a result of the defendant "CORP. ENTITIES"'s negligent and reckless supervision of its agents, servants, and/or employees, and created a foreseeable risk of harm to its patients.

313.    Specifically, on Friday, June 29, 2012 a female patient known as JANE DOE #1 was sexually abused by ROBERT HADDEN who touched his tongue to her vagina during a postpartum vaginal examination. JANE DOE #1, in shock and fear, hurriedly dressed and ran out of Defendants' offices. A short while later, two (2) members of the New York City Police Department presented to the medical office, located at 16 East 60th Street, seeking ROBERT HADDEN. Defendants' staff informed ROBERT HADDEN of the police officers' desire to speak with him. The police officers then proceeded to question ROBERT HADDEN about sexual assault he committed and escorted ROBERT HADDEN out of the main office area. ROBERT HADDEN informed the police that he had called JANE DOE #1 on her cell phone after the assault "to straighten out a situation". The police and the District Attorney's Office then proceeded to engage in a verbal altercation over the telephone - the Police Officers wanted to arrest ROBERT HADDEN but the District Attorney's Office insisted that ROBERT HADDEN

be let go. The District Attorney then overrode the Police and mandated that ROBERT HADDEN be released from their custody. The following week ROBERT HADDEN returned to Defendants' medical offices, and continued to sexually exploit and abuse female patients as if nothing had happened. Despite the knowledge of a female patient running out of the office - and the Police Officers' arrival at Defendants' offices a short-time later in an effort to apprehend ROBERT HADDEN - Defendants took no action against ROBERT HADDEN, wholly failed to investigate the matter, failed to suspend ROBERT HADDEN, failed to report the incident to other people of authority at COLUMBIA and its related CORP. ENTITIES, failed to terminate ROBERT HADDEN, and utterly failed to protect the sanctity of the relationship of trust which is supposed to exist between the Defendants through their agents, servants, employees, and the patients who they are supposed to serve.

314.    Defendant "CORP. ENTITIES"'s negligence and recklessness further lies in having placed Defendant ROBERT HADDEN in a position to cause foreseeable harm, of which Plaintiffs would have been spared, had the defendant "CORP. ENTITIES" taken reasonable care in the supervision and investigation of its employees - including, but not limited to, defendant ROBERT HADDEN, himself.

315.    In a claim for negligent hiring and/or retention, an employer is held liable and responsible for its negligence or recklessness in hiring, retaining and/or supervising an employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the agent, servant or employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their

failure to exercise reasonable care in hiring, retention and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself, as well as its useless and complicit chaperones who failed to report ROBERT HADDEN's conduct.

316.   In a claim for negligent supervision, the employer is held liable and responsible for its negligence or recklessness in failing to timely and properly supervise an agent, servant, and/or employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an agent, servant, or employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their own failure to exercise reasonable care in hiring, retaining, monitoring, investigating, and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself.

317.   As a result of the above referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

318.   As a result of Defendants' reckless conduct, gross indifference, and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil

obligations, and outrageous disregard of moral and professional obligations, both Compensatory and Punitive damages are necessary under these facts as to all Defendants.

### FOURTEENTH CAUSE OF ACTION
### FAILURE TO WARN, TRAIN OR EDUCATE

319.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

320.    Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., owed Plaintiffs a duty to take reasonable protective measures to safeguard Plaintiffs, and other female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN by properly warning, training or educating Plaintiffs and others, including their own medical personnel, medical staff, Administrators, and other agents, servants, and/or employees about how to avoid such a risk and what to do when such inappropriate conduct is witnessed, observed, reported, and/or discovered.

321.    Defendants breached their duty to take reasonable measures to protect Plaintiffs, and other female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, such as the failure to properly warn, train and/or educate Plaintiffs, and other patients, about how to avoid such a particular risk that ROBERT HADDEN posed.

322.    Defendants breached their duty to take reasonable protective measures to safeguard Plaintiffs and other patients from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, by failing to supervise and stop employees of Defendants, such as ROBERT HADDEN, and prevent them from committing sexually abusive and exploitive acts upon female student and patients, including Plaintiffs.

323.    As a result of the above-referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

324.    Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**FIFTEENTH CAUSE OF ACTION**
**GROSS NEGLIGENCE, WANTON, WILLFUL and RECKLESS CONDUCT**

325.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

326.    Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN) owed Plaintiffs, and other female patients, a duty to use due care to ensure their safety and freedom from sexual assault, sexual exploitation, sexual abuse, sexual discrimination, misogyny, racial discrimination, and molestation while interacting with their agents, servants, and/or employees, including ROBERT HADDEN.

327.    By seeking medical treatment from ROBERT HADDEN in the course of his employment, agency, and/or representation of the Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and ROBERT HADDEN was created.

328.    Since at least 1994, the Columbia Defendants were on notice of the fact that Defendant Hadden posed a danger to Plaintiffs and virtually any female patient who walked into a medical office where defendant ROBERT HADDEN was present. See, ***Exhibit 'A'*** (CNN Report about the letter that a sexual assault survivor and whistleblower, sent to Dr. Harold Fox, then Acting Chairman of the Department of Obstetrics and Gynecology, dated May 30, 1994,

along with the letter response from Chairman Harold Fox, back to sexual assault survivor/ whistleblower, dated June 14, 1994).

329.    Defendants' failures to properly protect their patients, and adequately supervise ROBERT HADDEN, especially after they knew or should have known of complaints regarding ROBERT HADDEN's nonconsensual sexual abuse, exploitation, touching and assaults during medical examinations was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

330.    ROBERT HADDEN's conduct in sexually assaulting, sexual exploiting, sexually abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the Defendants, and under the guise of rendering "medical treatment", was so wanton and reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and hundreds of other female patients.

331.    Defendants, their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN and other medical staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other medical staff, agents, servants, and/or employees' negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

332.    Defendants, their agents, servants, and/or employees, failed to timely and properly act upon complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN, and/or other

medical staff, agents, servants, and/or employees, placed patients in compromised and unprotected situations, all of which caused and/or enabled further and additional negligent, careless, reckless, criminal and/or wanton acts and harm to be inflicted upon Plaintiffs, as well as hundreds of other female students and patients.

333.    By reason of Defendants, and/or their agents, servants, and/or employees' failures to meet the aforementioned obligations and duties, Plaintiffs, as well as hundreds of other female students and patients, were subjected to physical and mental injury, mental manipulation, harm, duress, sexual objectification, sexual exploitation, racial discrimination, sexual assault, and sexual abuse.

334.    Defendant ROBERT HADDEN's sexual assaults of Plaintiffs - and hundreds of other named and unnamed patients - as well as Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES's gross negligence, willfulness, and wantonness concerning the improper hiring, retention, blatant coverups and concealments, lack of supervision, abject enabling, and other reckless acts and omissions set forth herein, constitute intentional, extreme, and outrageous conduct of the highest order.

335.    Such grossly reckless conduct is motivated by greed, self-seeking, self-interest, deliberate indifference, deviant sexual desire, and is the product of malicious and evil minds such that the imposition of punitive damages are warranted.

336.    Punitive damages are justified in cases like this to both punish the wrongdoers - and also to hold them out as examples to the rest of the community - such that these Defendants, and others that may be similarly situated, are clearly and explicitly discouraged from engaging in these kinds of grossly deviant and abhorrent behaviors in the future.

337.    For purposes of particularization of the acts and omissions of the within named Defendants which constitute, warrant, and mandate the imposition of punitive damages, it is stated that defendant ROBERT HADDEN - while pretending to render medical care to female patients - serially, and criminally, sexually exploited, assaulted, demeaned, and abused hundreds of female patients at Defendants' medical facilities and clinics. Further, evidence exists that Defendants enabled ROBERT HADDEN to continue to sexually assault, exploit and abuse their patients, including Plaintiffs herein, and instead of terminating him and reporting him to Criminal Authorities and the State Medical Board, they took no action and further enabled him to continue to sexually exploit and abuse even more female patients in new and different ways. Moreover, evidence has surfaced which demonstrates that defendant ROBERT HADDEN has been sexually assaulting, sexually exploiting, and sexually abusing patients on the premises of Defendants and their medical facilities and clinics for over 20 years — as far back as the early 1990's. All the while, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES, knew of the abuse but instead of terminating ROBERT HADDEN and immediately reporting him to law enforcement, they moved him from clinic to clinic in an intentional, but covert, effort to hide and conceal the abuse from their patients, the Plaintiffs herein, and the public at large.

338.    Defendant ROBERT HADDEN should have already been the subject of an internal, Criminal, and State Medical Board Investigation by the time that he sexually assaulted each of the Plaintiffs herein. However, Defendants failed to act on the information they had and enabled defendant ROBERT HADDEN to continue to sexually assault, sexually abuse and

sexually exploit other female patients on its premises - despite a long history of sexually assaulting patients - for in excess of 20 years.

339.    While being allowed to continue preying on young female patients at Defendant COLUMBIA UNIVERSITY and CORP. ENTITIES' hospitals, offices, and medical facilities and clinics without any restrictions, limitations, preceptors, chaperones or additional supervision, defendant ROBERT HADDEN continued to sexually exploit and assault female patients.

340.    While sexually exploiting, abusing and assaulting female patients - seemingly at will due to the utter indifference of Defendants, their agents, servants, and/or employees - Defendant ROBERT HADDEN sexually exploited, abused, and assaulted Plaintiffs and hundreds of other female patients upon Defendants' premises.

341.    Plaintiffs were patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES at the time when defendant ROBERT HADDEN sexually exploited, abused, and assaulted them.

342.    On several occasions, no chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs on the premises of Defendants' medical offices, facilities and clinic.

343.    On other occasions, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs on the premises of Defendants' medical offices, facilities and clinics, and yet stood by and did nothing to protect the Plaintiffs and hundreds of other female patients.

344.    On many occasions, since the early 1990's, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs, and

other female patients, on the premises of Defendants' medical offices, hospitals, facilities and clinics, who then tried to report the illegal conduct of ROBERT HADDEN to supervisors and other administrators of the within named Defendants, but whose reports were wholly and utterly ignored and/or dismissed as not important, and not followed up on by the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

345.    The history of sexual exploitation, sexual assault, and sexual abuse of female patients at the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES at the hands of serial predator ROBERT HADDEN spans a period of over 20-years.

346.    Defendants, their agents, servants, and/or employees had knowledge and/or awareness of the prior sexually exploitive and sexually abusive conduct by ROBERT HADDEN, and chose to do nothing to protect their female patients, including Plaintiffs herein, from being sexually exploited and abused by Defendant ROBERT HADDEN.

347.    As a result of Defendants' gross indifference and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil obligations, and outrageous disregard of moral and professional ethics, duties and standards, Plaintiffs have each become yet another one of the countless sexual assault survivors of Defendant ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

348.    Defendants' indolence and complicity in enabling serial sexual predator ROBERT HADDEN, is abhorrent conduct worthy of punishment.

349.     Defendants' conduct demonstrates a willful disregard of any and all precautions necessary to ensure Plaintiffs' safety.

350.     Defendants' conduct as described above, demonstrated a willful disregard for the substantial and known risks that ROBERT HADDEN posed to Plaintiffs and other female students and patients.

351.     Defendants have breached the duties owed to Plaintiffs, and other female patients, and were grossly negligent when they conducted themselves as described above, said acts having been committed with reckless disregard for Plaintiffs, and other female patients' health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

352.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs and other female patients were damaged.

353.     Accordingly Compensatory and Punitive damages are necessary under these facts as to all Defendants.

**SIXTEENTH CAUSE OF ACTION**
**INVASION OF PRIVACY & HIPAA VIOLATIONS**

354.     Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

355.     Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have intruded upon Plaintiffs' solitude, seclusion or private affairs and concerns by illegally accessing Plaintiffs' protected and private medical records, illegally viewing protected and private healthcare information, and

intruding into their private and personal medical conditions - not for purposes of rendering medical care and treatment - but instead for the sole purpose of gaining a tactical advantage in litigation.[33] Plaintiffs herein have never authorized the access of their medical records, and yet upon information and belief, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have illegally and surreptitiously accessed their records in abject violation of both State and Federal Law. This intrusion is highly offensive to reasonable individuals, such as Plaintiffs, and was totally unwarranted and unjustified, constituting invasion of privacy, and a violation of the Health Insurance Portability and Accountability Act (HIPAA). *See,* attached email, annexed as ***Exhibit "H"***.

356.    Defendants carried out such actions through their agents and/or representatives by querying their medical records, medical archives, and electronic medical records (EMR) for information related to the Plaintiffs, their health related issues, complications, conditions, and treatments.

357.    Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, ROBERT HADDEN, and each of their agents, servants, employees, lawyers, and representatives have accessed, and continue to access, Plaintiffs' private and protected HIPAA information for purposes other than the diagnosis, care and treatment of Plaintiffs.

_____

[33] See, Internal memorandum from Cori Scheiner, Associate Counsel for NY-Presbyterian Hospital's Office of Legal Affairs & Risk Management, sent to Susan Tabickman, Ann Lawson, Vivian Hammer and Joselin Duran, all of NYPH, instructing hospital staff to illegally provide defendants' legal team with protected healthcare information of their patients—without any of the patients' knowledge or consent. Defendants' actions are not only repugnant, but also violative of both New York State and Federal Laws, attached hereto as **Exhibit 'H'** (All identifying patient information has been redacted by our office. The original version is available to the court for an in-camera inspection is necessary).

358.    Specifically, Defendants have accessed, and continue to access, read, and use Plaintiffs' private HIPAA information - without Plaintiffs' knowledge, authorization and consent - in order to try to defend themselves against the myriad of lawsuits they now face for enabling ROBERT HADDEN to sexually exploit and sexually abuse female patients over the past couple decades at their hospitals, offices, and medical clinics.

359.    Defendants have illegally used said information, *inter alia*, in an effort to dissuade Plaintiffs, and other female patients, from filing lawsuits against Defendants. Defendants have also illegally accessed and used Plaintiffs' protected health information for the purpose of obtaining facts and statements from Plaintiffs, and other female patients, such that Defendants will, and are, using said information to try and defend themselves against said lawsuits.

360.    Accordingly, Plaintiffs are entitled to compensatory and punitive damages.

### SEVENTEENTH CAUSE OF ACTION
### VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
### N.Y. Exec. Law §290, *et seq.*

351.    Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

362.    Defendants discriminated against Plaintiffs in a place of public accommodation based on their gender, in violation of the New York State Human Rights Law, N.Y. Exec. Law §290, *et seq.*, by subjecting them to sexual exploitation, sexual abuse, sexual assault, and sexual harassment.

363.    The discrimination suffered by Plaintiffs was severe. Defendants' unlawful and gender-based discrimination against Plaintiffs caused them to suffer emotional and psychological

distress, physical injury, mental anguish, loss of enjoyment of life, humiliation, embarrassment, pain and suffering, and economic damages.

364.    Defendants are liable to Plaintiff for compensatory and punitive damages, attorneys' fees, and costs. Punitive damages are warranted because Defendant Hadden's actions amount to willful or wanton negligence, or recklessness, or because there was a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. ADMIN. CODE §8-101,** *et seq.*

365.    Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

366.    Defendants discriminated against Plaintiffs in a place of public accommodation based on their gender, in violation of the New York City Human Rights Law, N.Y.C. ADMIN. CODE §8-101, *et seq.*, by subjecting them to sexual exploitation, sexual abuse, sexual assault and sexual harassment by one their agents, servants, and employees who were known and documented sexual predators, and enablers of a sexual predator. The discrimination suffered by Plaintiffs was so severe as to be criminal.

367.    Defendants' unlawful discrimination against Plaintiffs caused them to suffer emotional and psychological distress, physical injury, mental anguish, loss of enjoyment of life, humiliation, embarrassment, pain and suffering, economic damages, and PTSD.

368.    Defendants are liable to Plaintiffs for compensatory and punitive damages, attorneys' fees, and costs. Punitive damages are warranted because the Corp. Entities Defendants' actions amount to willful or wanton negligence, or recklessness, or because there

was a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

## NINETEENTH CAUSE OF ACTION
## AIDING AND ABETTING

369.    Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

370.    The Corp. Entities Defendants aided and abetted Defendant Hadden by encouraging, allowing, ratifying, permitting, facilitating, and covering-up, Defendant Hadden's sexual abuse and sexual assault of girls and women when they knew, or should have known, since at least 1994 that Defendant Hadden was a dangerous serial sexual predator who victimized Corp. Entities Defendants' patients, including Plaintiffs.

371.    The Corp. Entities Defendants' aiding and abetting of Defendant Hadden was a substantial factor in bringing about the injuries and losses Plaintiffs have suffered.

372.    The Corp. Entities Defendants' aiding and abetting of Defendant Hadden was long-standing, intentional, malicious, reckless and undertaken in willful and conscious disregard for Plaintiffs' rights and personal autonomy.

373.    The Corp. Entities Defendants are jointly and severally liable with Defendant Hadden to Plaintiffs or, among other things, compensatory damages, punitive damages, statutory damages, attorneys' fees, and costs. Punitive damages are warranted because the Columbia Defendants' actions amount to willful or wanton negligence, or recklessness, or because there was a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

**TWENTIETH CAUSE OF ACTION**
**FALSE ADVERTISING, N.Y. Gen. Bus. Law §350,** *et seq.*

374.     Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

375.     N.Y. Gen. Bus. Law §350 declares unlawful any false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service, in New York.

376.     The Corp. Entities Defendants engaged in false advertising in the marketing, sale, and provision of medical services to Plaintiffs by, among other things, expressly or implicitly holding out their medical centers and medical services to be safe and for their patients safety to be free from sexual abuse and sexual assault when the Corp. Entities Defendants knew or should have known that their medical centers and medical services were not safe, and that their patients were not safe from sexual abuse and sexual assault from Defendant Hadden.

377.     The Corp. Entities Defendants also engaged in false advertising by failing to reveal to Plaintiffs material facts, including, but not limited to, those regarding the safety of their medical centers and medical services by failing to reveal that Defendant Hadden was a dangerous sexual predator who serially sexually assaulted and sexually abused patients.

378.     Plaintiffs were injured as a result of violations of this statute by the Corp. Entities Defendants.

379.     Unless restrained, Plaintiffs will continue to suffer from irreparable harm from the Corp. Entities Defendants false advertising because, despite wanting to receive medical services from the Corp. Entities Defendants, they are unable to do so because they will not be

able to rely on the Corp. Entities Defendants' statements regarding the safety of their medical centers and services.

380.    Plaintiffs seek restitution for all amounts improperly obtained by the Corp. Entities Defendants through their false advertising, disgorgement of all ill-gotten gains, actual damages or fifty dollars in statutory damages, whichever is greater.

381.    Plaintiffs also seek preliminary and permanent injunctive relief enjoining Corp. Entities Defendants from continuing their false advertising.

382.    Corp. Entities Defendants violated N.Y. GEN. BUS. LAW §350 willfully and/or knowingly, and as such Plaintiffs are entitled to treble damages up to one thousand dollars.

383.    The Corp. Entities Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

**TWENTY FIRST CAUSE OF ACTION**
**VIOLATION OF NY PENAL LAW § 130.00 - 130.96, et seq., and NY CPLR § 214-g**
**CHILD VICTIM ACT**
**(On Behalf of Plaintiff Jane Doe 16 and Jane Doe 29)**

384.    Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

385.    Defendant Hadden's actions against Plaintiffs Jane Doe 16 and Jane Doe 29 constituted sexual offenses committed against minors, which violate N.Y. PENAL LAW § 130.00, *et seq.*, and NY CPLR § 214-g.

386.    Defendant Hadden's actions caused Plaintiffs Jane Doe 16 and Jane Doe 29 to suffer injuries, including, but not limited to, physical injury; pain; suffering; serious psychological distress; serious emotional distress; mental anguish; embarrassment; and humiliation.

387.    The Columbia Defendants are both vicariously liable, and directly liable, for Defendant Hadden's actions because defendants had to duty to protect their patients, including each of plaintiffs herein, defendant Robert Hadden's actions were committed in the course and scope of his employment with the Columbia Defendants, and the Columbia Defendants were aware that Defendant Robert Hadden was a serial sexual predator since at least 1994, but encouraged, allowed, ratified, permitted, facilitated, concealed and covered-up, Defendant Hadden's sexual exploitation and abuse of girls and women for decades. See, ***Exhibit 'A'*** (CNN Report about the letter that a sexual assault survivor and whistleblower, sent to Dr. Harold Fox, then Acting Chairman of the Department of Obstetrics and Gynecology, dated May 30, 1994, along with the letter response from Chairman Harold Fox, back to sexual assault survivor/ whistleblower, dated June 14, 1994). Because OB/GYN doctors, such as Hadden, are among the most frequent to commit sexual violations, representing 12.9% of all cases, while only representing 4.6% of the physician population as a whole, there was a heightened duty of care that the defendants owed to Plaintiffs Jane Doe 16 and Jane Doe 29 because they were minors.

388.    Pursuant to NY PENAL LAW § 130.00, *et seq.*, and NY CPLR § 214-g, this claim is not subject to dismissal on the grounds that it is time-barred. This claim was commenced within the CVA statutory look-back period of CPLR § 214-g, relates back to plaintiffs original filing, and is subject to a private tolling agreement executed by and between the parties.

389.    Defendants are liable to Plaintiff Jane Doe 16 and Jane Doe 29 for compensatory and punitive damages. Punitive damages are warranted because the Defendants' actions amount to willful or wanton negligence, or recklessness, or because there was a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

A.    Awarding damages, including general, special, actual, compensatory, nominal, statutory, and punitive damages where applicable, to Plaintiffs in an amount to be determined at trial;

B.    Awarding Plaintiffs their reasonable litigation expenses and attorneys' fees where applicable;

C.    Awarding Plaintiffs pre- and post-judgment interest, to the extent allowable;

D.    Entering a permanent injunction against the Corp. Entities Defendants enjoining the Corp. Entities Defendants from engaging in the wrongful conduct complained of herein pertaining to the hiring, monitoring, retaining, training, and firing of healthcare employees;

E.    Entering a permanent injunction compelling the Corp. Entities Defendants to utilize appropriate methods, policies, safeguards, disclosures, and warnings with respect to the hiring, monitoring, retaining, training, and firing of healthcare employees;

F.    Entering a permanent injunction requiring restitution and disgorgement of the revenues wrongfully retained by the Corp. Entities Defendants as a result of Defendants' wrongful conduct as stated herein;

G.    Entering a permanent injunction prohibiting Corp. Entities and defendant Robert Hadden from illegally accessing protected health information of their patients for any purpose,

including defending themselves from a pending or a potential civil or criminal lawsuit, without a duly executed HIPAA authorization from the patient;

H.    Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs; and

I.    Awarding such other and further relief as the Court deems reasonable and just.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: New York, New York
       May 6, 2022

Law Office of Anthony T. DiPietro, P.C.

By _____
Anthony T. DiPietro, Esq.
Attorney for Plaintiffs
233 Broadway, Suite 880
New York, New York 10279
(212) 233-3600

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 6, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 6, 2022.

Law Office of Anthony T. DiPietro, P.C.

By: _____

Anthony T. DiPietro, Esq.
Attorney for Plaintiffs
233 Broadway, Suite 880
New York, New York 10279
(212) 233-3600