# EXHIBIT C

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Government,

-against-

ROBERT HADDEN,

                Defendant.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/4/22

20 CR. 468 (RMB)

**ORDER**

Defendant's motion, dated November 22, 2021, seeks the suppression of evidence obtained from the Defendant's home in Englewood, New Jersey.[1] In the alternative, Defendant seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

The Court incorporates by reference the arguments counsel have raised in their motion papers and at oral argument which was held on January 20, 2022. Based upon the written and oral record in this case, the Court denies the motion to suppress and finds that an evidentiary hearing is not warranted.[2]

I. Background

On September 8, 2020, Hadden was indicted for enticing women, including a minor, to travel interstate for the purpose of sexually abusing them during gynecological and obstetric examinations, in violation of 18 U.S.C. §§ 2422(a), for a period of almost 20 years from in or about 1993 to in or about 2012 (Dkt. 1) (the "Enticement Offense"). Section 2422(a) criminalizes the knowing inducement or enticement of "any individual to travel in interstate or foreign commerce

---

[1] Redacted versions of the motion papers and exhibits were filed on the public docket. Unredacted versions of the motion papers and exhibits were filed under seal.

[2] Any arguments not specifically mentioned, have been considered and rejected by the Court.

1

. . . to engage . . . in any sexual activity for which any person can be charged with a criminal offense . . . ." 18 U.S.C. § 2422(a). The Indictment states that "the defendant, abused dozens of his patients, including multiple minors. Hadden did so through a process that entailed developing a relationship with his victims and causing them to trust him, before engaging in a course of increasingly abusive conduct, which Hadden attempted to mask under the guise of legitimate medical care." (Dkt. 1 at 2, ¶ 5.) A Superseding Indictment, which added an additional victim and an additional count, was issued on July 14, 2021. (Dkt. 102.)

On September 8, 2020, Magistrate Judge Lena Dunn Wettre, District of New Jersey, issued a search warrant (the "First Warrant") to search the Defendant's home in Englewood, New Jersey, which was executed the next day, September 9, 2020. (See Defendant's Motion to Suppress the Seizure and Searches of Items from Defendant's Family Home dated November 22, 2021 ("Def. Mot.") at 10 and Ex. A, Dkt. 133.) The First Warrant authorized law enforcement "to search for and seize instrumentalities, evidence, and fruits of violations of Title 18, United States Code, Section 2242 (enticement and inducement to engage in interstate travel)." The warrant included a typo by stating "2242": the Indictment offenses were under Section "2422".

On April 8, 2021, Magistrate Judge Stewart Aaron of the Southern District of New York issued a second warrant (the "Second Warrant") which, among other things, corrected typographical errors in the First Warrant, including designating "Title 18, United States Code, Section 2422" as the offense for which the warrant was issued. (Government's Memorandum in Opposition to the Defendant's Suppression Motion, dated December 8, 2021 ("Govt. Response"), Ex. B at 153, Dkt. 137.)

On September 8, 2021, Magistrate Judge Stewart Aaron of the Southern District of New York issued another warrant (the "Third Warrant"). (See Def. Mot., Ex. D.) The Third Warrant

authorized the search of the Electronic Devices "for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2252A (possession, receipt, and distribution of child pornography) and 2252 (possession, transportation, receipt, distribution, production, and reproduction of material involving the sexual exploitation of minors)." (Govt. Response, Ex. D at 29.)

The defense argues: 1) that the First (and Second) Warrant application(s) failed to establish probable cause to believe that evidence of a crime would be found at the Hadden home; 2) that the First (and Second) Warrant(s) are constitutionally infirm because they fail to particularly identify the evidence to be seized and they authorize an overbroad search; and 3) the execution of the search violated the Fourth Amendment because the agents seized materials far exceeding the scope of the First (and Second) warrants. (Def. Mot. at 3.)  And, the defense argues that because the Third Warrant was based on the alleged unconstitutional First (and Second) Warrant(s), it and its fruits, must be suppressed.  (Def. Mot. at 48-49.)

A. There is Probable Cause

"In evaluating probable cause in any given case, a judge must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotations omitted). "Due to this subjective standard, a reviewing court generally accords 'substantial deference to the finding of an issuing judicial office [magistrate judge] that probable cause exists,' limiting [the] inquiry to whether the office 'had a substantial basis' for his determination." Id. (quoting United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993)).  And, "[t]he law recognizes no bright-line rule for

3

staleness, which must instead be evaluated on the basis of the facts of each case." Raymonda, 780 F.3d at 114 (citations omitted).

"[I]n a doubtful case, we accord preference to the warrant." United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006). Thus, "[a complainant] who argues that a warrant was issued on less than probable cause faces a heavy burden." Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991).

In his affidavit, sworn to on September 8, 2020 ("Spivack Affidavit"), FBI Agent Spivack set forth his extensive background and experience with the FBI. (Spivack Affidavit at 1-2 ¶ 2, Dkt. 133-2.) He described the investigation and the offenses alleged to have been committed by defendant Hadden. (Id. at 4-13 ¶¶ 9-18.)

Agent Spivack stated, among other things: "Based upon my participation in the investigation, including interviews of over twenty victims who are former patients of Hadden, interviews of nurses who previously worked with Hadden, and my review of law enforcement reports, I have learned that from in or about 1993 up to and including in or about 2012, Hadden sexually abused dozens of women, including minor females under the age of 18 in the context of gynecological and obstetric examinations at doctor's offices and hospitals in Manhattan, New York. In particular, Hadden enticed and induced victims to travel to medical appointments with him, during which he sexually abused them. Hadden used his position as a medical doctor at a prominent institution [Columbia University and Columbia Presbyterian Hospital] to make or attempt to make his victims believe that the sexual abuse he inflicted on them was medically necessary. As a result, some of his victims attended many appointments with Hadden over the course of multiple years because they did not realize that his examinations involved acts of sexual abuse. As a part and in furtherance of his scheme to abuse his patients, Hadden enticed, induced,

4

and caused multiple victims to travel to Hadden's offices in Manhattan, New York from other states, which Hadden knew and intended would result in their subjection to sexual abuse. The investigation has revealed, . . . that Hadden used forms of electronic communication, such as phones, text messages, and email, to communicate with certain of the victims." (Id. at 4-5 ¶¶ 9-10.)

He also described recent indications that Hadden resided at the Englewood home and that electronic devices would be found there, including the following, among other things: subpoenaed information from a financial institution that reflected the mailing address as the Englewood home in August 2020; subpoenaed cellphone subscriber information from a device (the "8659 cellphone") Hadden used to communicate with one of his victims that reflected the subscriber was Hadden's wife and the mailing address as the Englewood home in May 2020; subpoenaed Apple information that reflects Hadden purchased an iPhone in October 2018 and Hadden's mailing address as the Englewood home; subpoenaed information from a financial institution that reflects that in November 2017, Hadden listed the 8659 cellphone and his Columbia email address as his contact information; and subpoenaed information from Google that reflects that in March 2015 Hadden created a Columbia email address and that email address remains active. (Id. at 13-17 ¶¶ 19-21.)

**Judge Wettre found probable cause to search the home**

On April 8, 2021, Agent Spivack submitted a second application for a search warrant for items from the Defendant's Englewood home. In his affidavit, sworn to on April 8, 2021, in addition to correcting the statutory citation errors (typos) in the September 8, 2020 warrant application, Agent Spivack also set forth the items seized from the Defendant's Englewood home pursuant to the First Warrant. (See Govt. Response, Ex. B at 4, 9.)

5

**Judge Aaron also found probable cause to search the items seized from the Defendant's home**

The Court finds that Judge Aaron did more than correct typos in issuing Warrant Two, notwithstanding defense counsel's arguments at oral argument. See Transcript of proceedings held on 1/20/22 ("Tr.") at 9:16-22 (Defense Counsel: "When they go to Judge Aaron, it's presented as this is just a technical change; we had typos in our statutes and, you know, we're just - - everything is the same, we're just correcting the statutes. So, it's difficult to imagine that Judge Aaron, who's presented with that, is going to do a full review in the same way, since it had already been issued by the magistrate in the District of New Jersey."). Judge Aaron affixed his signature on the Second Warrant which states, among other things, "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize . . . the property described above [in Attachment B]." (See Govt. Response, Ex. B at 153.) Attachment B states, among other things, "The items that are the subject of this search and seizure warrant . . . were recovered from a search of Robert Hadden's private residence located at . . . Englewood, New Jersey, which took place on September 9, 2020. The Englewood Items are particularly described . . . and are presently located in the custody of the Federal Bureau of Investigation in the Southern District of New York." Attachment B lists the items seized. (See id. at 155.)

In light of the findings of two magistrate judges - - Judges Wettre and Aaron - - and the substantial deference due to their judicial findings of probable cause to search the Defendant's home and the items seized, this Court finds no basis to overturn the warrants and the underlying findings of probable cause. See United States v. Raymonda, 780 F.3d at 113. The Court bases its affirmance of probable cause for the issuance of the First and Second Warrant upon the sufficient nexus between the alleged criminal activities of the defendant and the Englewood

6

premises and the items searched. See United States v. Morgan, 690 F.Supp.2d 274, 284 (S.D.N.Y. 2010).

B. The Warrants are not Overbroad

"[A] warrant is overbroad if its description of the objects to be seized ... is broader than can be justified by the probable cause upon which the warrant is based." United States v. Lustyik, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (internal quotation marks omitted). "To satisfy the Fourth Amendment's particularity requirement, a warrant must (1) identify the specific offense for which the police have established probable cause, (2) describe the place to be searched, and (3) specify the items to be seized by their relation to designated crimes." United States v. Wells, 2021 WL 5401494, at *5 (S.D.N.Y. Nov. 18, 2021) (internal quotation marks omitted). "Courts in this Circuit have reasoned that the absence of a time frame does not render warrants unconstitutionally general where the crimes under investigation were complex and concerned a long period of time, and not simply one or two dates of criminal activity." United States v. Elkorany, 2021 WL 3668086, at *4 (S.D.N.Y. Aug. 17, 2021) (internal quotation marks omitted).

The warrants are not overbroad. As previously noted, the Spivack Affidavit set forth the alleged offenses committed by Hadden; that Hadden's offenses were committed over a course of years and during the course of his employment at Columbia; that Hadden used forms of electronic communication, such as phones, text messages, and emails to communicate with certain of the alleged victims, and that such communication devices and other records pertaining to these offenses may be found at the Defendant's residence. Moreover, the First and Second Warrants set forth a time frame circumscribing the search for electronic data, i.e., January 1, 1993 through December 31, 2012. This corresponded to the timeframe of the alleged offenses. The First and Second Warrants also included, among other things, the search and seizure of physical evidence,

7

including, among other things, records and information relating to Columbia University and Columbia Presbyterian Medical Center. The Second Warrant specified the items seized pursuant to the First Warrant.

During oral argument, defense counsel acknowledged that electronic communications are certainly relevant. See Tr. at 13:6-8 (Defense Counsel: "We have a hands-on sexual abuse case, with this layer of sort of a discrete electronic part which is email and text communications with the victims."); Tr. at 13:23-25, 14:1 (Defense Counsel: "And here, I think they may even have had probable cause to try to look [at] his current cell phone and the cell phone from 1995 that they knew the serial number of to try to find emails and texts. . .").

Warrants that authorize "the seizure of any and all evidence of specified crimes, including but not limited to illustrative categories of documents and records are often found to be proper. Courts routinely validate such warrants in the face of particularity challenges, reasoning that an illustrative list, coupled with a reference to the crimes for which evidence is sought, supplies sufficiently limiting guidance." United States v. Mendlowitz, 2019 WL 1017533, at *10 (S.D.N.Y., Mar 2, 2019) (internal quotation marks omitted).

C. Warrant Execution Was Appropriate

"Courts have [ ] indicated that the drastic remedy of the suppression of all evidence seized is not justified unless those executing the warrant acted in flagrant disregard of the warrant's terms." United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (internal quotation marks omitted). "Government agents 'flagrantly disregard' the terms of a warrant . . . only when (1) they effect a widespread seizure of items that were not within the scope of the warrant, and (2) do not act in good faith." United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000) (internal citations omitted). "Like all activities governed by the Fourth Amendment, the execution of a search

8

warrant must be reasonable and law enforcement officers therefore must execute a search warrant, including when applicable review of recovered electronic communications, within a reasonable time." United States v. Wey, 256 F. Supp. 3d 355, 383-84 (S.D.N.Y. 2017) (citing Lustyik, 57 F.Supp.3d at 230).

A search must be consistent with the warrant. The Second Circuit Court of Appeals has not required specific search protocols or minimization undertakings as predicates for upholding digital search warrants. See United States v. Galpin, 720 F.3d 436, 451 (2d Cir. 2013). "[I]n the absence of controlling precedent requiring search protocols, it cannot be said the agents acted in bad faith." United States v. Rosario, 2021 WL 5647879, at *7 (S.D.N.Y. Dec. 1, 2021).

The First and Second Warrants support off site review of the electronic devices and electronically stored information seized or copied in order to locate evidence, fruits, and instrumentalities of the offenses. During the oral argument, defense counsel argued that the government was still executing the warrant more than a year after the seizure. See Tr. at 14:10-12 (Defense Counsel: "they're still executing the warrant a year and a half later, basically, which I think, in and of itself, sort of signifies the rabbit-hole nature of their execution of the warrant."). The government acknowledged both that the review of the material was not yet complete and that some of the material seized and reviewed thus far was not responsive. See Tr. at 36:4-6 (AUSA: "It's true that there isn't a vast volume of material that has been identified as responsive pursuant to these warrants that [the government] would seek to introduce at trial."). And, by letter dated March 11, 2022, the government advised the Court that it "has concluded its responsiveness review for evidence of enticement . . . pursuant to the First and Second Englewood Warrants." See Government Letter dated March 11, 2022, at 2, Dkt. 161. The government also stated that "its responsiveness review . . . pursuant to the Glen Cove and Third Englewood Warrants remain

9

ongoing." Id. The government also advises that "in the interests of an expeditious trial and orderly pretrial schedule, the government has decided not to use any evidence identified as responsive pursuant to the Glen Cove and Third Englewood Warrants after the date of this letter [March 11, 2022] in its case-in chief at trial absent extraordinary circumstances." Id.

The Court finds that neither the items seized nor the time that has elapsed during the responsiveness review warrants suppression. This conclusion is bolstered by the evidence and disturbance caused by the COVID pandemic during which the review was conducted. See, e.g., United States v. Almaleh, 2022 WL 602069, at *20 (S.D.N.Y. Feb. 28, 2022) (35 devices seized; rolling production made to defense; final log and copies of forensic images made approximately 20 months after execution of warrant); United States v. Sosa, 379 F.Supp.3d 217, 222 (S.D.N.Y. 2019) (finding delays of 10 and 15 months were reasonable, where search was ultimately completed three months prior to defendant's scheduled trial).

### D. Third Warrant is Also Valid

Defense counsel argues that "the third warrant is a fruit of that first warrant, right. They only obtain the third warrant based on what they're finding from the first warrant. So it's a direct fruit of that one. And we're seeking the suppression of that as a fruit of this warrant." Tr. at 30:11-15. Because the Court finds there was probable cause for the search of the Defendant's home, and, that probable cause was established in the First and Second Warrants, which were neither overbroad nor impermissibly executed, there is no basis to find that the issuance of the Third Warrant was improper.

### II. Conclusion and Order

Defendant's motion to suppress evidence seized from his home (Dkt. 133) is denied. Additionally, there is no basis to hold a Franks hearing as the Court does not find there were intentional and/or material misrepresentations or omissions in the warrant affidavits. "A Franks

hearing is warranted if the defendant can make a preliminary showing that (a) the warrant affidavit contains a false statement, (b) the false statement was included intentionally or recklessly, and (c) the false statement was integral to the probable cause finding." United States v. Caraher, 973 F.3d 57, 62 (2d Cir. 2020). No such showing has been made.

Dated: New York, New York
      May 4, 2022

                                          **RICHARD M. BERMAN, U.S.D.J.**